**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **AMY HAMM, on behalf of herself and all others similarly situated,** | § § § | **CLASS AND COLLECTIVE** |
| *Plaintiff*, | § § | **CIVIL ACTION:** |
| **v.** | § § § | |
| **ACADIA HEALTHCARE CO., INC., RED RIVER HOSPITAL, LLC, and OCHSNER-ACADIA, LLC** | § § § § | |
| *Defendants*. | § § | |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

1. Plaintiff Amy Hamm ("Plaintiff") brings this Class and Collective action on behalf of herself and other similarly situated individuals who have worked for Acadia Healthcare Company, Inc., Red River Hospital, LLC, and Ochsner-Acadia, LLC ("Defendants" or "Acadia Healthcare") as non-exempt employees involved with patient care at any time beginning four years before the filing of this complaint until resolution of this action. Throughout the relevant time period of this action, Plaintiff and similarly situated Class and Collective members have been denied payment for hours worked, including overtime, and denied bona fide meal periods. This case implicates the longstanding policies and practices of Acadia Healthcare across all of its healthcare facilities around the country, which fails to properly compensate non-exempt employees for hours worked during meal periods.

2. Employers are not required to pay employees for meal periods if the employer can satisfy its burden of demonstrating the employee received a *bona fide* meal period which primarily benefits the employee. Defendants do not provide bona fide meal periods for its non-exempt workers who are involved with patient care. Non-exempt employees who work for Acadia

Healthcare are required to remain available for work throughout their shift. Hourly-paid workers involved with patient care who work for Defendants are required to remain responsible for patient care throughout their shift and are expected to perform duties while "off-the-clock." Instead of making these hourly employees manually clock out for their on-premises meal periods then clock back in at the end of a meal period, Defendants assume these healthcare workers are able to find a 30-minute block of time to enjoy a bona fide meal period. In fact, this does not occur. Nonetheless, Defendants deduct 30 minutes from patient care workers' shifts for a meal period, when in fact they remain on duty and subject to interruption during that time. Defendants instituted policies and practices that result in healthcare workers being responsible for patient care throughout their shift, even when they attempt to have a bite to eat.

3.      Even when employees are not interrupted during meal periods, employees are still subject to interruption since they remain responsible for their patients and are required to respond to emergency situations at all times while on-premises. Under these policies and practices, non-exempt workers involved in patient care are subject to work throughout their entire shift, including meal periods, and are thus, entitled to compensation for meal periods whether interrupted or not.

4.      Defendants' policies and practices result in non-exempt workers being denied wages due under the Fair Labor Standards Act ("FLSA"), Texas law, and the Louisiana Revised Statutes ("La. R.S."). Defendants violate the FLSA, Texas law, and the La. R.S. by knowingly and willfully requiring Plaintiff, Class and Collective members to perform work and/or remain on-duty in a standby capacity during their meal periods. Defendants have notice that Plaintiff, Class and Collective members expect to be paid for their work on an hourly basis. Defendants receive the value of Plaintiff, Class and Collective members' work performed during their meal periods and while "off-the-clock" without compensating them for their services. Defendants willfully,

deliberately, and voluntarily fail to pay Plaintiff, Class and Collective members for all hours worked.

5.      Defendants, including all of the facilities under Defendant Acadia Healthcare's ownership, management and control nation-wide, violated and continue to violate the FLSA, Texas law, and the La. R.S. due to the mandate that non-exempt employees, such as Plaintiff and the putative Class and Collective members, be paid for all hours work, and be paid at a rate of one and one-half times their regular rate of pay for all hours worked in excess of forty within a single workweek.

6.      In addition, Plaintiff, Class and Collective members are required to work additional time while off-the-clock outside of their scheduled shifts to keep up with the demands of the job. Defendants know and are informed that Plaintiff, Class, and Collective members perform this off-the-clock work, but fail to pay them at the applicable hourly and overtime rates for this work time. This practice likewise violates the FLSA, Texas law, and the La. R.S.

7.      Therefore, Plaintiff files this action to recover on behalf of herself, Class and Collective members, all unpaid wages, compensation, penalties, and other damages owed to them under the FLSA, Texas law, and the La. R.S., individually, as a 29 U.S.C. § 216(b) collective action, and as a class action under Federal Rule of Civil Procedure 23, in order to remedy the sweeping policies which Defendants have implemented and which have deprived Plaintiff, Class and Collective members of their lawfully-earned wages.

## SUBJECT MATTER JURISDICTION AND VENUE

8.      This court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 201, *et seq.*

9.     This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367. Plaintiff's state law claims are not preempted by the FLSA because Plaintiff seeks to recover wages under Texas and Louisiana state law to the extent those state law claims do not overlap with the FLSA's overtime provisions, including gap time claims for regular, non-overtime wages owed and overtime claims that fall outside of the FLSA's statute of limitations.

10.     This court also has subject matter jurisdiction over Plaintiff's state law causes of action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Under CAFA, this court has original jurisdiction over Plaintiff's Rule 23 class action claims because the matter in controversy is believed to exceed $5,000,000, and because Plaintiff and one or more Defendants are citizens of different states. Moreover, the number of proposed class members in Texas and/or Louisiana class is believed to exceed 100.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. Plaintiff resides in this judicial district, and the events giving rise to Plaintiff's claims occurred within this judicial district.

**PARTIES**

12.     Plaintiff Amy Hamm is an individual residing in Destrehan, Louisiana. Plaintiff was employed by Defendants as a nurse at Red River Hospital in Wichita Falls, Texas, and is currently employed by Defendants as a nurse at River Place Behavioral Health in LaPlace, Louisiana.

13.     Defendant Acadia Healthcare Company, Inc., is a Tennessee corporation with its principal place of business in Franklin, Tennessee. Defendant may be served with process by serving its registered agent, the Corporation Trust Company, at 1209 Orange Street, Wilmington, Delaware 19801. Defendant owns, operates, and/or manages behavioral hospitals and health

facilities throughout the United States, including but not limited to River Place Behavioral Health in Louisiana and Red River Hospital in Texas.

14.     Defendant Ochsner-Acadia, LLC is a Delaware limited liability company with its principal place of business in Franklin, Tennessee, and is licensed to do business in Louisiana. Defendant Ochsner-Acadia, LLC operates River Place Behavioral Health, which is a behavioral health hospital in LaPlace, Louisiana. Defendant may be served with process by serving its registered agent C T Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.

15.     Defendant Red River Hospital, LLC is a Delaware limited liability company with its principal place of business located in Wichita Falls, Texas. The company may be served with process by serving its registered agent C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

16.     Upon information and belief, Ochsner-Acadia, LLC and Red River Hospital, LLC are subsidiaries, partners, and/or agents of Defendant Acadia Healthcare Company, Inc.

17.     The FLSA Collective members are people who are or who have been employed by Defendants as non-exempt workers involved with patient care at any location owned and operated by Defendant Acadia Healthcare Company, Inc., during the time period beginning three years preceding the filing of this Complaint.

18.     The Louisiana Class members are people who have been employed by Defendants as non-exempt workers involved with patient care at any location in the state of Louisiana, and who voluntary resigned or were discharged from employment with Defendants, during the time period beginning three years preceding the filing of this Complaint.

19.     The Texas Class members are people who are or who have been employed by Defendants as non-exempt workers involved with patient care at any location in the state of Texas during the period beginning four years preceding the filing of this Complaint.

20.     At all material times, Defendants have been an employer within the meaning of the FLSA under 29 U.S.C. § 203(d).

21.     At all material times, Defendants have been an enterprise within the meaning of the FLSA under 29 U.S.C. § 203(r).

22.     Plaintiff, Class and Collective members were and are employees of Defendants within the meaning of 29 U.S.C. § 203(e).

23.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because Defendants have had and continue to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

24.     Defendants acted as joint employers of Plaintiff, Class, and Collective members because all Defendants jointly, directly or indirectly, controlled the employment terms, pay practices, timekeeping practices, and daily work of Plaintiff, Class, and Collective members.

25.     Here, Defendants have had, and continue to have, an annual gross business volume of not less than $500,000, thereby exceeding the statutory standard. 26 U.S.C. § 203(s)(1)(A)(ii).

26.     In addition to Plaintiff, Defendants have employed numerous other employees, who like Plaintiff, are non-exempt employees engaged in interstate commerce. Further, Defendants are engaged in interstate commerce since they  order supplies across state lines, conduct business deals with merchants across state lines, and process patient credit cards with banks in other states.

27.     At all material times, Plaintiff, Class and Collective members were employees who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

**FACTS**

28.     Defendant Acadia Healthcare Company, Inc. is a multinational behavioral health care provider—it owns, operates, and/or manages more than 500 behavioral hospitals and healthcare facilities throughout the United States, including facilities in Texas and Louisiana.

29.     Defendants employs thousands of hourly non-exempt workers across a network of healthcare facilities around the country.

30.     Defendants employ a payroll policy and practice of not compensating hourly-paid nurses for work performed during their on-premises meal periods, subjecting them to interruptions and requiring them to remain on duty during those meal periods. Non-exempt healthcare workers are superficially given the option to clock out for lunch if they leave Defendants' premises for their meal break, but in reality this rarely occurs due to the high demands of patient care. If a patient care worker does not clock out and leave the premises for their meal break, Defendants apply the automatic time deduction policy. This policy applies to all hourly-paid, non-exempt workers who are responsible for patient care, regardless of the location where those employees work.

31.     Class and Collective members are not effectively permitted to take a 30-minute uninterrupted and bona fide meal period due to the high demands of their jobs during the majority of their shifts. In the rate instances where they attempt a meal break, they remain on duty in that they are required to respond to calls from their patients, doctors, supervisors, patients' families, other facility staff, attend to the normal demands of the job, and otherwise respond to emergencies that might arise in a healthcare facility environment.

32.     Defendants encourage interruptions to Class and Collective members' meal periods by requiring Class and Collective members to respond to calls. Defendants permit management or other healthcare workers to interrupt employees' meal periods at any time they deem necessary.

-7-

In practice, management discourages employees from reporting missed or interrupted meal periods. Employees are rarely paid for such hours, as a result. These policies and practices apply to all hourly-paid, non-exempt staff who are responsible for patient care across all of Defendant Acadia Healthcare's facilities.

33.     Plaintiff is employed by Defendants as a nurse and her regular hourly rate of pay is $35.70 per hour. Plaintiff worked for Defendants at the Red River Hospital location in Wichita Falls, Texas from approximately February 2015 to December 2019. Plaintiff then worked for Defendants at the River Place Behavioral Health in LaPlace, Louisiana from approximately December 2019 to the present. As a nurse, Plaintiff's primary responsibilities include but are not limited to providing patient care and monitoring, administering medicine to patients, interacting with other hospital employees and visitors, monitoring patient vitals, completing charting and patient paperwork, and responding to emergency situations. Plaintiff is subject to Defendants' time, pay, meal period, and overtime policies and practices. Plaintiff routinely performed work during her entire shift, was subject to interruption during attempted meal periods, and was in fact interrupted or denied meal periods on a regular basis. Plaintiff also performed work while "off-the-clock" with Defendants' knowledge and was denied compensation for the time she spent engaged in this off-the-clock work.

34.     Plaintiff, Class, and Collective members' off-the-clock work includes monitoring patients, assisting hospital staff, charting, prepping and organizing equipment, and other various tasks performed before clocking in and after clocking out for their shifts. Plaintiff, Class, and Collective members are not compensated for this work performed outside of their recorded hours. Defendants know and are aware of the work performed while off-the-clock, because such work

occurs due to Defendants' strict overtime policies, and because Class and Collective members have raised the off-the-clock issue with supervisors/managers on multiple occasions.

35.     During the course of her employment, Plaintiff learned that Defendants' policies and practices giving rise to the wage-and-hour violations alleged herein are consistent and universal across Acadia Healthcare's facilities, regardless of location. Acadia Healthcare institutes the same policies and practices across all of their facilities. Defendants institute a common set of payroll, timekeeping, meal break, off-the-clock, and overtime rules across all of their facilities that subjects Class and Collective members to the same uniform course of treatment.

36.     Class and Collective members were and are employed by Defendant and perform work materially similar to Plaintiff.

37.     Plaintiff, Class and Collective members perform their jobs under Defendants' supervision and using materials and technology approved and supplied by Defendants.

38.     Defendant Acadia Healthcare implements the common timekeeping, payroll, meal break, off-the-clock, and overtime policies throughout its healthcare facilities nation-wide, which Class and Collective members are subjected to and required to follow.

39.     Plaintiff, Class and Collective members are required to follow and abide by Defendants' common work, time, pay, meal and rest break, and overtime policies and procedures in the performance of their jobs.

40.     At the end of each pay period, Plaintiff, Class and Collective members receive wages from Defendants that are determined by common systems and methods that Defendants select and control.

41.     Defendants pay Plaintiff, Class and Collective members on an hourly rate basis.

42.     Plaintiff worked more than forty hours in at least one workweek during the period beginning three years before preceding the filing of this Complaint. On average, Plaintiff worked approximately 52 hours per week each workweek.

43.     Each putative Collective member worked more than forty hours in at least one workweek during the period beginning three years preceding the filing of this Complaint.

44.     When Plaintiff, Class and Collective members work more than forty hours in a workweek, Defendants do not pay them one and one-half times their regular hourly rate due to Defendants' failure to include time worked during meal periods into the total hours worked in a given work week. This unpaid time is compensable under the FLSA, Texas Common Law, and the La. R.S. because (1) Plaintiff, Class, and Collective members are not completely relieved of their duties, (2) they are interrupted or subject to interruption with work duties during any attempted meal period, and/or (3) they entirely skip the meal periods due to work demands.

45.     Throughout the relevant time period, Defendant expected and required Plaintiff, Class and Collective members to be available to work during their entire shifts, even during any attempted on-premises meal or rest breaks. These 30-minute intervals of time constitute compensable time under the FLSA, Texas Common Law, and the La. R.S., which require that employers compensate employees for all time worked.

46.     Defendant has employed thousands of people similarly situated to Plaintiff during the three-year period preceding to the filing of this Complaint.

47.     Defendant's method of paying Plaintiff, Class and Collective members was willful, and was not based on a good faith and reasonable belief that its conduct complied with the FLSA, Texas Common Law, or the La. R.S..

**FLSA COLLECTIVE ACTION ALLEGATIONS**

48.     Plaintiff brings this Complaint as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of the following class of individuals:

> **All current and former hourly, non-exempt employees involved with patient care, including but not limited to nursing staff, nurses, nursing assistants, nurse aides, technicians, clerks, non-exempt therapists, or other non-exempt employees with similar job duties employed at any facility operated by Defendant Acadia Healthcare Company, Inc. during the time period three years prior to the filing of the original Complaint until resolution of this action (the "Collective").**

49.     Defendants have not compensated these employees for the unpaid meal periods as described above.

50.     Per 29 U.S.C. § 216(b), this action may be brought as an "opt-in" collective action for the claims asserted by Plaintiff because her claims are similar to the claims possessed by Collective members.

51.     Plaintiff has actual knowledge that Collective members have been denied compensation for hours worked, including meal periods worked or interrupted. In addition, Plaintiff has actual knowledge that Collective members have also been denied overtime pay for this work and would therefore likely join this collective action if provided a notice of their rights to do so, together with a clear statement that opting to join such an action would not result in termination or other forms of retaliation.

52.     Plaintiff is similarly situated to Collective members. Like Plaintiff, Defendants subjected Collective members to its common practice, policy, or plan of refusing to pay overtime for all work performed in clear violation of the FLSA.

53.     Other patient care staff similarly situated to Plaintiff work, or have worked, for Defendants but were not paid overtime at the rate of one and one-half times their regular hourly rate when those hours exceeded forty per workweek for meal periods during which they were not

completely relieved of their duties that were interrupted, interruptible, or entirely missed due to work demands.

54.     Although Defendants permitted and/or required Collective members to work in excess of forty hours per workweek, Defendants have denied them full compensation for their hours worked over forty for meal periods that were interrupted due to work demands, or subject to interruption.

55.     Collective members perform or have performed the same or similar work as Plaintiff involving patient care.

56.     Collective members regularly work or have worked in excess of forty hours during a workweek.

57.     Collective members are not exempt from receiving overtime compensation under the FLSA.

58.     Defendants' failure to pay overtime compensation as required by the FLSA resulted from generally applicable policies and practices and did not depend on the personal circumstances of Collective members.

59.     Although Plaintiff and Collective members may have different job titles and/or work in different departments or facilities, this action may be properly maintained as a collective action on behalf of the defined class because, throughout the relevant time period:

        a.  Defendants maintain common scheduling systems and policies with respect to Plaintiff and Collective members, control the scheduling systems and policies implemented throughout their facilities and retain authority to review and revise or approve the schedules assigned to Plaintiff and Collective members;

    b.   Defendants maintain common timekeeping systems and policies with respect to Plaintiff and Collective members;

    c.   Defendants maintain common overtime policies and practices with respect to Plaintiff and Collective members;

    d.   Defendants maintain common payroll systems and policies with respect to Plaintiff and Collective members, control the payroll systems and policies applied to Plaintiff and Collective members, and set the pay rates assigned to Plaintiff and Collective members; and

    e.   Defendants control the meal period work policies and practices at issue in this litigation and have the ability to deprive Plaintiff and Collective members of wages owed for meal period work they performed.

60.    The specific job titles or precise job responsibilities of each Collective member does not prevent collective treatment.

61.    Collective members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek for interrupted, interruptible, or missed meal periods.

62.    Although the exact amount of damages may vary among Collective members, the damages for Collective members can be easily calculated, summed, and allocated based on a simple formula.

63.    Plaintiff and Collective members' claims arise from a common nucleus of operative facts; namely, the continued and willful failure of Defendants to comply with its obligation to legally compensate their employees. Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all Collective members. Defendants have a plan, policy or

practice of not paying Plaintiff and Collective members for interrupted, interruptible, or missed meal periods, and for work that is performed while off-the-clock.

64.     As such, the collective of similarly situated Plaintiffs is properly defined as stated above. Plaintiff estimates the Collective, including both current and former employees over the relevant time period, will include upwards of 100 people or more. The precise number of Collective members should be readily available from Defendants' personnel, scheduling, time and payroll records, and from input received from Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b). The names and addresses of the Collective members are discoverable from Defendants' records. Given the composition and size of the Collective, notice may be provided via First Class Mail, e-mail, text message, and other modes of notice similar to those customarily used in representative actions.

## RULE 23 CLASS ACTION ALLEGATIONS

65.     Plaintiff brings causes of action as a class action on behalf of herself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). The **Texas Class** that Plaintiff seeks to represent is defined as follows:

> **All current and former hourly, non-exempt employees, providing patient care, including but not limited to nursing staff, nurses, nursing assistants, nurse aides, technicians, clerks, non-exempt therapists, or other employees with similar job duties employed by any hospital or healthcare facility owned and operated by Acadia Healthcare Company, Inc. in the state of Texas at any time beginning four years preceding the filing of this Complaint until resolution of this action (the "Texas Class").**

66.     This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

-14-

67.    <u>Numerosity</u>:  The potential members of the class are so numerous that joinder of all the members of the Class is impracticable. Plaintiff is informed and believes that the number of Texas Class members exceeds 40. This volume makes bringing the claims of each individual member of the class before this Court impracticable. Likewise, joining each individual member of the Texas Class as a plaintiff in this action is impracticable. Furthermore, the identities of the Texas Class will be determined from Defendants' records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Texas Class and Defendants.

68.    <u>Commonality</u>:  There are questions of law and fact common to Plaintiff and the Texas Class that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, but are not limited to:

      i.   Whether Defendants had a policy and practice of requiring patient care workers to remain on duty during meal periods by subjecting them to interruption;

      ii.   Whether workers' remaining available to tend to patient health and safety issues provides a valuable service to Defendants;

      iii.   Whether Defendants directed, required, requested, and/or permitted Plaintiff and Texas Class members to work during unpaid meal periods;

      iv.   Whether Defendants knew or should have known that Plaintiff and Texas Class members were not compensated for work performed during unpaid meal periods;

    v.   Whether agreements existed between Plaintiff and Texas Class members concerning payment for work performed during unpaid meal periods, and whether Defendants breached such agreements;

   vi.   Whether Defendants directed, required, and/or permitted Plaintiff and Texas Class members to work while off-the-clock;

  vii.   Whether Defendants knew or should have known that Plaintiff and Texas Class members were not compensated for work performed while off-the-clock;

 viii.   Whether agreements existed between Plaintiff and Texas Class members concerning payment for work performed during unpaid meal breaks and for work performed while off-the-clock, and whether Defendants breached such agreements;

   ix.   Whether Defendants derived a benefit from the patient care workers being required to respond to the needs of patients during their unpaid meal periods pursuant to professional codes of conduct and Defendant's policies;

    x.   Whether valuable services were rendered to Defendants by the Plaintiff and Texas Class members during unpaid meal period times, and whether Defendants accepted the benefit of Plaintiff's and Texas Class members' unpaid services;

   xi.   Whether Defendants are unjustly enriched by Plaintiff's and Texas Class members' unpaid work; and

xii.   The proper measure of damages, including whether the reasonable value
of such services can be based on the agreed upon hourly rate of pay.

69.   <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Texas Class because Plaintiff's claims arise from the same course of conduct and legal theories as the claims of the Texas Class members. Like the Texas Class members, Plaintiff worked as a non-exempt employee involved in patient care for Defendants during the relevant time period. Like the Texas Class members, Plaintiff was subject to the identical company-wide policy requiring patient care staff to remain on duty during meal periods and were subject to interruption during such times. Like the Texas Class members, Plaintiff was subject to the same professional code of conduct and company timekeeping and payroll policies requiring patient care staff to tend to the care of their patients even during the unpaid meal periods. The other facts outlined above likewise apply equally to both the Plaintiff and Texas Class members.

70.   <u>Adequacy of Representation</u>:  Plaintiff seeks relief for the past and prospective state law violations that were perpetrated by Defendants. In that sense, Plaintiff does not have any conflicts of interest with other Texas Class members and will prosecute the case vigorously on behalf of the Texas Class. Counsel representing Plaintiff is competent and experienced in litigating complex cases and large class actions, including wage and hour cases. Plaintiff will fairly and adequately represent and protect the interests of the Texas Class members.

71.   <u>Superiority of Class Action</u>:  A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all proposed Texas Class members is not practicable, and questions of law and fact common to the Texas Class predominate over any questions affecting only individual members of the Texas Class. Each proposed Texas Class member has been damaged and is entitled to recovery by reason of

Defendants' illegal policies and/or practices. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

72.     In the alternative, the Texas Class may be certified because the prosecution of separate actions by the individual members of the Texas Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Texas Class which would establish incompatible standards of conduct for Defendants.

73.     If each individual Texas Class member was required to file an individual lawsuit, Defendants would necessarily gain an unconscionable advantage because Defendants would be able to exploit and overwhelm the limited resources of each member of the Texas Class with Defendants' vastly superior financial legal resources.

74.     Requiring each individual Texas Class member to pursue an individual remedy would also discourage the assertion of lawful claims by the Texas Class members who would be disinclined to pursue these claims against Defendant because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being.

75.     The **Louisiana Class** that Plaintiff seeks to represent is defined as follows:

> **All former hourly, non-exempt employees, providing patient care, including but not limited to nursing staff, nurses, nursing assistants, nurse aides, technicians, clerks, non-exempt therapists, or other employees with similar job duties employed by any hospital or healthcare facility owned and operated by Acadia Healthcare Company, Inc. in the state of Louisiana at any time beginning three years preceding the filing of this Complaint until resolution of this action (the "Louisiana Class").**

76.     This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

77.     Numerosity:  The potential members of the class are so numerous that joinder of all the members of the Class is impracticable. Plaintiff is informed and believes that the number of Louisiana Class members exceeds 40. This volume makes bringing the claims of each individual member of the class before this Court impracticable. Likewise, joining each individual member of the Louisiana Class as a plaintiff in this action is impracticable. Furthermore, the identities of the Louisiana Class will be determined from Defendants' records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Louisiana Class and Defendants.

78.     Commonality:  There are questions of law and fact common to Plaintiff and the Louisiana Class that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, but are not limited to:

    i.   Whether Defendants had a policy and practice of requiring patient care workers to remain on duty during meal periods by subjecting them to interruption;

    ii.  Whether Defendants directed, required, requested, and/or permitted Plaintiff and Louisiana Class members to work during unpaid meal periods;

    iii. Whether Defendants knew or should have known that Plaintiff and Louisiana Class members were not compensated for work performed during unpaid meal periods;

-19-

iv.   Whether Defendants' automatic time deduction policy constituted an unlawful deduction of wages;

v.   Whether Defendants directed, required, requested, and/or permitted Plaintiff and Louisiana Class members to work while off-the-clock;

vi.   Whether Defendants knew or should have known that Plaintiff and Louisiana Class members were not compensated for work performed while off-the-clock;

vii.   Whether Defendants derived a benefit from Louisiana Class members being required to respond to the needs of patients during their unpaid meal periods pursuant to professional codes of conduct and Defendants' policies;

viii.   Whether Defendants intentionally interfered with and exercised dominion and/or control over wages and compensation due to Plaintiff and Louisiana Class members;

ix.   Whether Plaintiff and Louisiana Class members had the legal right to possess wages for work performed during unpaid meal periods and/or work performed while off-the-clock;

x.   Whether Defendants were unjustly enriched by Plaintiff and Louisiana Class members' unpaid work; and

xi.   The proper measure of damages, including whether the reasonable value of such services can be based on the agreed hourly rate of pay.

79.   <u>Typicality</u>:   Plaintiff's claims are typical of the claims of the Louisiana Class because Plaintiff's claims arise from the same course of conduct and legal theories as the claims

of the Louisiana Class members. Like the Louisiana Class members, Plaintiff worked as a non-exempt employee involved in patient care for Defendant during the relevant time period. Like the Louisiana Class members, Plaintiff was subject to the identical company-wide policy requiring patient care staff to remain on duty during meal periods and were subject to interruption during such times. Like the Louisiana Class members, Plaintiff was subject to the same professional code of conduct and company timekeeping and payroll policies requiring patient care staff to tend to the care of their patients even during the unpaid meal periods. The other facts outlined above likewise apply equally to both the Plaintiff and Louisiana Class members.

80.     <u>Adequacy of Representation</u>:  Plaintiff seeks relief for the past and prospective state law violations that were perpetrated by Defendants. In that sense, Plaintiff does not have any conflicts of interest with other Louisiana Class members and will prosecute the case vigorously on behalf of the Louisiana Class. Counsel representing Plaintiff is competent and experienced in litigating complex cases and large class actions, including wage and hour cases. Plaintiff will fairly and adequately represent and protect the interests of the Louisiana Class members.

81.     <u>Superiority of Class Action</u>:  A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all proposed Louisiana Class members is not practicable, and questions of law and fact common to the Louisiana Class predominate over any questions affecting only individual members of the Louisiana Class. Each proposed Louisiana Class member has been damaged and is entitled to recovery by reason of Defendants' illegal policies and/or practices. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

82.     In the alternative, the Louisiana Class may be certified because the prosecution of separate actions by the individual members of the Louisiana Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Louisiana Class which would establish incompatible standards of conduct for Defendants.

83.     If each individual Louisiana Class member was required to file an individual lawsuit, Defendant would necessarily gain an unconscionable advantage because Defendants would be able to exploit and overwhelm the limited resources of each member of the Louisiana Class with Defendants' vastly superior financial legal resources.

84.     Requiring each individual Louisiana Class member to pursue an individual remedy would also discourage the assertion of lawful claims by the Louisiana Class members who would be disinclined to pursue these claims against Defendants because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being.

**FIRST CAUSE OF ACTION**
**Violations of 29 U.S.C. § 207**
**Failure to Pay Overtime Compensation for On-Duty Meal Periods**
**(FLSA Collective Action)**

85.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

86.     Plaintiff and Collective members, Defendants' employees, are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

87.     The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times their regular hourly rate for all hours worked in excess of forty hours per week.

88.     Throughout the relevant time period, Defendants exercise a policy permitting management to interrupt employees' meal periods at any time it deems it necessary. Under this policy, Defendants require Plaintiff and Collective members to be available to work and/or to be

on duty during their meal periods. As a result, Plaintiff and Collective members perform work during their meal periods for which they were not compensated.

89.     Plaintiff and Collective members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of overtime wages owed for hours worked and from which Defendants derive a direct and substantial benefit.

90.     Defendants cannot satisfy their burden of proof to demonstrate Plaintiff and Collective members receive bona fide meal periods.

91.     Defendants violate and continue to violate the FLSA when they it fails to pay Plaintiff and Collective members under 29 U.S.C. § 207 as non-exempt employees. Because of these violations, Plaintiff and Collective members have suffered a loss of wages.

92.     Defendants' failure to pay overtime to Plaintiff and Collective members, in violation of the FLSA, was willful and not based on a good faith belief that its conduct did not violate the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Accordingly, a three-year limitations period should apply to Plaintiff and Collective members' claims.

93.     Because of Defendants' willful violation, Plaintiff and Collective members are also due an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

94.     Plaintiff and Collective members are further entitled to reasonable attorneys' fees and costs of the action in addition to any judgment awarded.

<u>**SECOND CAUSE OF ACTION**</u>
**Violations of 29 U.S.C. § 207**
**Failure to Pay Overtime Compensation for "Off-the-Clock" Work**
**(FLSA Collective Action)**

95.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

96.     Throughout the relevant time period, Defendants suffer and/or permit Plaintiff to work additional time outside of her shift for work-related tasks. These tasks include, but are not limited to, conducting shift change reports, monitoring patients, assisting hospital personnel, reviewing or completing charting, and other tasks or services for the benefit of Defendants.

97.     Plaintiff is actively discouraged from logging time outside the parameters set by Defendants. However, due to the demands of the job, Plaintiff routinely performs work-related tasks outside of her scheduled shift, before she clocks in and after she clocks out. Upon information and belief, Defendants treat all putative Collective members similarly with respect to "off-the-clock" work.

98.     Defendants are and have been aware of this off-the-clock work because such work is due to the strict overtime policies set by Defendants, and also because Plaintiff and other putative Collective members have informed their supervisors and other managerial employees of the systematic off-the-clock work problems.

99.     Accordingly, consistent with the policies and procedures set up by Defendants, Plaintiff performs work for which she is not compensated. Defendants' policies and practices favor Defendants at the expense of Plaintiff and putative Collective members.

100.     Defendants violated and continue to violate the FLSA when they fail to pay Plaintiff and putative Collective members for "off-the-clock" work under 29 U.S.C. § 207 as non-exempt employees. Because of these violations, Plaintiff and putative Collective members suffer wage losses during weeks where the total time worked (logged and unlogged) exceeds forty hours.

101.     Defendants' failure to pay overtime to Plaintiff and putative Collective members, is willful and not based on a good faith belief that their conduct did not violate the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of

29 U.S.C. § 255(a). Accordingly, a three-year limitations period should apply to Plaintiff and putative Collective members' claims.

102. Because of Defendants' willful violation, Plaintiff and putative Collective members are also due an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

103. Plaintiff and putative FLSA Class members are further entitled to reasonable attorneys' fees and costs of the action in addition to any judgment awarded.

<u>**THIRD CAUSE OF ACTION:**</u>
**Quantum Meruit**
**(Texas Class Action)**

104. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

105. Plaintiff and Texas Class members perform valuable services for Defendants during their unpaid meal periods (a common scheme perpetrated by Defendants that is applicable to the entire Class).

106. These services have a reasonable value of no less than the agreed upon hourly rate.

107. Defendants accept and retain the benefit of Plaintiff's and Texas Class members' performance of these valuable services.

108. No written contract exists between Plaintiff and Defendants, and Texas Class members and Defendants, regarding the provision of services during unpaid meal periods.

109. Defendants have reasonable notice and/or knowledge that Plaintiff and Texas Class members expect to be compensated for services rendered for Defendants.

110. Defendants fail to pay Plaintiff and Texas Class members the reasonable value of the services performed during unpaid meal periods.

111.     Plaintiff and Texas Class members are entitled to recover damages under this claim for the last four years, to the extent same does not overlap with or duplicate the FLSA damages alleged herein.

112.     Plaintiff and Texas Class members are entitled to attorneys' fees and costs under this claim pursuant to Texas Civil Practice and Remedies Code § 38.001.

## FOURTH CAUSE OF ACTION:
**Money Had and Received**
**(Texas Class Action)**

113.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

114.     Defendants receive money from its patients and their agents for the work performed by Plaintiff and Texas Class members during their unpaid meal periods, while Defendants refuse to pay Plaintiff and Texas Class members for such work.

115.     Defendants hold money that in equity and good conscience belongs to Plaintiff and Texas Class members due to Defendants' refusal to pay Plaintiff and Texas Class members for all hours worked.

116.     Plaintiff and Texas Class members are entitled to recover damages under this claim to the extent same does not overlap with or duplicate the FLSA damages alleged herein.

117.     Plaintiff and Texas Class members are entitled to declaratory relief finding Defendants violated Texas law.

118.     Plaintiff and Texas Class members are entitled to attorneys' fees and costs under this claim pursuant to Texas Civil Practice and Remedies Code § 37.009.

## FIFTH CAUSE OF ACTION:
**Unjust Enrichment**
**(Texas Class Action)**

119.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

120.     Defendants have been unjustly enriched at the expense of Plaintiff and Texas Class members by refusing to pay for work performed by Plaintiff and Texas Class members during unpaid meal periods.

121.     Defendants knowingly and/or intentionally accept the benefit of the work performed by Plaintiff and Texas Class members during unpaid meal periods, despite Defendants' policy and practice of failing to pay Plaintiff and Texas Class members for such work. In particular, Defendants receive the benefit of the labor and services provided to Defendants' customers (patients) by the Plaintiff and Texas Class members.

122.     Such wrongful conduct demonstrates bad faith and undue advantage on the part of Defendants.

123.     It would be unjust and inequitable for Defendants to retain the benefit of the unpaid work performed by Plaintiff and Texas Class members.

124.     Defendants should be ordered to disgorge those benefits to Plaintiff and the Texas Class.

125.     Plaintiffs are also entitled to declaratory relief finding Defendants violated Texas law.

126.     Plaintiff and Texas Class members are further entitled to attorneys' fees and costs under this claim pursuant to Texas Civil Practice and Remedies Code § 37.009.

### SIXTH CAUSE OF ACTION:
**Violation of La. Civ. Code Art. 2315**
**Conversion**
**(Louisiana Class Action)**

127.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

128.    Defendants intentionally interfered with and exercised dominion and control over wages and compensation that the Louisiana Class members had the legal right to possess as herein alleged.

129.    As a result of Defendants' violations of La. Civ. Code Art. 2315, the Louisiana Class members are entitled to recover the wages unlawfully withheld by Defendants to the extent same does not overlap with or duplicate the FLSA damages alleged herein, costs of the action, and pre- and post-judgment interest pursuant to La. Civ. Code Art. 2315.

**SEVENTH CAUSE OF ACTION:**
**Violations of La. Rev. Stat. § 23:635**
**Unlawful Deductions**
**(Louisiana Class Action)**

130.    Plaintiff incorporates all allegations contained in the foregoing paragraphs.

131.    La. Rev. Stat. 23:635 prohibits employers from deducting any sum from their employees' wages, unless permitted by law.

132.    Defendants unlawfully made deductions from the wages of the Louisiana Class members as herein alleged.

133.    Defendants' knowing and intentional retention of these wages were willful violations of La. Rev. Stat. 23:635.

134.    As a result of Defendants' willful violations of La. Rev. Stat. 23:635, the Louisiana Class members are entitled to recover from Defendants their unpaid wages to the extent same does not overlap with or duplicate the FLSA damages alleged herein, penalty wages, reasonable attorneys' fees, and pre- and post-judgment interests under La. Rev. Stat. § 23:635.

**EIGHTH CAUSE OF ACTION:**
**Violations of La. Civ. Code Art. 2298**
**Unjust Enrichment**
**(Louisiana Class Action)**

135.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

136.     Additionally, and in the alternative, Defendants have enriched themselves without cause as a result of refusing to pay the Louisiana Class members all wages to which they are entitled.

137.     Defendants' enrichment was at the Louisiana Class members' expense because they would have received the money owed had Defendants not intentionally and willfully violated federal and state wage laws through its payroll and timekeeping practices as described herein.

138.     The Louisiana Class members allege unjust enrichment in the alternative to their Louisiana state-law conversion claims.

139.     As a result of Defendants' willful violations of La. Civ. Code Art. 2298, the Louisiana Class members are entitled to recover their unpaid wages to the extent same does not overlap with or duplicate the FLSA damages alleged herein, and pre- and post-judgment interest under La. Civ. Code Art. 2298.

## **RELIEF SOUGHT**

140.     Plaintiff and Collective members are entitled to recover their unpaid overtime wage compensation pursuant to the FLSA.

141.     Plaintiff and Collective members are also entitled to an amount equal to all of their unpaid wages due under the FLSA as liquidated damages.

142.     Plaintiff and Collective members are entitled to recover attorneys' fees and costs as required by the FLSA. 29 U.S.C. § 216(b), Texas Civil Practice and Remedies Code § 37.009 and § 38.001, and La. Rev. Stat. § 23:635.

143.     Plaintiff and Texas Class members are entitled to recover damages flowing from the reasonable value of the services they provided, all monies held by Defendants that rightfully

belong to Plaintiff and Texas Class members, the value by which Defendants were unjustly enriched by receiving the unpaid labor, attorney's fees and costs, pre-judgment and post-judgment interest as provided by Texas law, and such other relief the Court deems fair and equitable (to the extent same does not duplicate or overlap with the damages owed pursuant to the FLSA).

144.    Plaintiff and Texas Class members are entitled to declaratory relief stating Defendants' actions as described herein were and are unlawful.

145.    Plaintiff and Louisiana Class members are entitled to recover damages in an amount equal to their unpaid wages due and/or deductions to their wages unlawfully made, as well as penalty wages, to the extent same does not duplicate or overlap with the damages owed pursuant to the FLSA.

146.    Plaintiff and Louisiana Class members are entitled to declaratory relief stating Defendants' actions as described herein were and are unlawful.

## JURY DEMAND

147.    Plaintiff hereby requests a jury trial on all claims and issues for which Plaintiff is entitled to a jury.

## PRAYER

148.    For these reasons, Plaintiff, Class and Collective members respectfully request that judgment be entered in their favor awarding the following relief:

> i.   An order preventing Defendants from retaliating in any way against Plaintiff and any putative Class or Collective member who joins or elects not to opt-out of the present suit based on their pursuit of these claims alleged herein;

ii.  An order designating this action as a collective action on behalf of the Collective and issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals;

iii. For a declaratory judgment that Defendants violated the Fair Labor Standards Act as alleged herein;

iv.  An order finding Defendants violated the FLSA willfully;

v.   An order awarding Plaintiff and the Collective all unpaid overtime wages due under the FLSA with interest thereon;

vi.  An order awarding Plaintiff and the Collective an equal amount as liquidated damages as allowed under the FLSA;

vii. An order awarding Plaintiff and the Collective reasonable attorneys' fees, costs, and expenses of this action as provided by the FLSA;

viii. An order certifying this case as a Class Action under Rule 23 of the Federal Rules of Civil Procedure for all state-law causes of action asserted;

ix.  An order finding that Defendants violated Texas law;

x.   An order finding that Defendants violated Louisiana law;

xi.  An order awarding Plaintiff and the Texas Class all unpaid regular wages due under Texas law to the extent same does not duplicate regular wages due under the FLSA;

xii. An order awarding Plaintiff and the Texas Class all unpaid overtime wages due under Texas law to the extent same does not duplicate overtime wages due under the FLSA;

xiii.   An order awarding Plaintiff and the Texas Class disgorgement of Defendants' ill-gotten gains as described herein;

xiv.   An order awarding Plaintiff and the Texas Class all attorneys' fees, costs and disbursements as provided by Texas law;

xv.   An order awarding Plaintiff and the Texas Class pre- and post-judgment interest as provided by Texas law; and

xvi.   An order awarding Plaintiff and the Louisiana Class payment of all unpaid wages, including regular wages and overtime wages, due under Louisiana law to the extent same does not duplicate wages due under the FLSA;

xvii.   An order awarding Plaintiff and the Louisiana Class payment of all penalty wages that may be available under Louisiana law;

xviii.   An order awarding Plaintiff and the Louisiana Class all attorneys' fees, costs and disbursements as provided by Louisiana law;

xix.   An order awarding Plaintiff and the Louisiana Class pre- and post-judgment interest as provided by Louisiana law; and

xx.   Such other and further relief to which Plaintiff, Class and Collective members may be entitled at law or in equity.

Dated: May 22, 2020

/s/ Daniel Centner
Joseph C. Peiffer (La. Bar No. 26459)
Daniel Centner (La. Bar No. 33055)
PEIFFER WOLF CARR KANE &
CONWAY, APLC

-32-

1519 Robert C. Blakes, Sr. Drive
New Orleans, Louisiana 70130
T: 504-523-2434
JPeiffer@pwcklegal.com
DCentner@pwcklegal.com

Carolyn H. Cottrell (CA Bar No. 166977)
To be admitted *pro hac vice*
David C. Leimbach (CA Bar No. 265409)
To be admitted *pro hac vice*
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100; Fax: (415) 421-7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com

William M. Hogg (TX Bar No. 24087733)
To be admitted *pro hac vice*
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
3700 Buffalo Speedway, Suite 960
Houston, Texas 77098
Tel: (713) 338-2560; Fax: (415) 421-7105
whogg@schneiderwallace.com

*Counsel for Plaintiff, Class, and Collective Members*