## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AMY HAMM,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  20-1515** |
| **ACADIA HEALTHCARE**<br>**CO., INC., ET AL.,**<br>    **Defendants** | **SECTION: "E"** |

## ORDER AND REASONS

Before the Court is Defendants' motion to dismiss Red River Hospital, LLC, and Acadia Healthcare Company, Inc., for lack of personal jurisdiction.[1] Plaintiff opposes this motion.[2] The Court granted Plaintiff's request for limited jurisdictional discovery and allowed the parties to provide supplemental memorandums,[3] which both parties submitted.[4] For the following reasons, Defendants' motion to dismiss is granted without prejudice as to both Red River Hospital, LLC, and Acadia Healthcare Company, Inc., for lack of personal jurisdiction.

## BACKGROUND

This is a Fair Labor Standards Act ("FLSA") case filed by Plaintiff Amy Hamm on behalf of herself and those similarly situated. On May 22, 2020, Plaintiff filed a complaint against Acadia Healthcare Company, Inc. ("Acadia"), Ochsner-Acadia LLC ("Ochsner-Acadia"), and Red River Hospital LLC ("Red River").[5] Plaintiff brings causes of action for violations of 29 U.S.C. § 207 for failure to pay overtime compensation for on-duty meal

---

[1] R. Doc. 22. Defendants do not dispute the Court has personal jurisdiction over Ochsner-Acadia. R. Doc. 22. Ochsner-Acadia has filed an answer. R. Doc. 21.
[2] R. Doc. 27. Defendants filed a reply in support of their motion to dismiss at R. Doc. 31.
[3] R. Doc. 32.
[4] R. Docs. 41, 43. Defendants replied to Plaintiff's supplemental memorandum at R. Doc. 46.
[5] R. Doc. 1.

periods and failure to pay overtime compensation for "off-the-clock" work, among other wage-based causes of action.[6]

Plaintiff brings her complaint as a class action on behalf of herself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). Plaintiff brings causes of action for two separate classes—one made up of similarly situated persons in Louisiana ("Louisiana Class"), and the other made up of similarly situated persons in Texas ("Texas Class"). The Louisiana Class members are "people who have been employed by Defendants as non-exempt workers involved with patient care at any location in the State of Louisiana, and who voluntary resigned or were discharged from employment with Defendants, during the time period beginning three years preceding the filing of this Complaint."[7] The Texas Class members are those "who are or who have been employed by Defendants as non-exempt workers involved with patient care at any location in the State of Texas during the period beginning four years preceding the filing of this Complaint."[8]

Plaintiff also brings her complaint as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of "[a]ll current and former hourly, non-exempt employees involved with patient care, including but not limited to nursing staff, nurses, nursing assistants, nurse aides, technicians, clerks, non-exempt therapists, or other non-exempt employees with similar job duties employed at any facility operated by Defendant Acadia Healthcare Company, Inc. during the time period three years prior to the filing of the original Complaint until resolution of this action (the "Collective Action")."[9]

---

[6] *See* R. Doc. 1.
[7] *Id.* at ¶ 18.
[8] *Id.* at ¶ 19.
[9] *Id.* at ¶ 48.

Plaintiff brings causes of action for violations of 29 U.S.C. § 207, failure to pay overtime compensation for on-duty meal periods (FLSA Collective Action); violations of 29 U.S.C. § 207, failure to pay overtime compensation for "off-the-clock" work (FLSA Collective Action); quantum meruit (Texas Class Action); money had and received (Texas Class Action); unjust enrichment (Texas Class Action); violation of Louisiana Civil Code Article 2315, conversion (Louisiana Class Action); violations of Louisiana Revised Statute § 23:635, unlawful deductions (Louisiana Class Action); and violations of Louisiana Civil Code Article 2298, unjust enrichment (Louisiana Class Action).[10]

## **FACTS**

The Court finds the following facts to be true for the purposes of deciding this motion. Acadia is a Delaware corporation with its principal place of business in Franklin, Tennessee.[11] Acadia is one the members of Ochsner-Acadia.[12] Acadia is the sole member of Red River Holding Company, LLC, which is the sole member of Red River.[13]

Acadia is the sole member of Acadia JV Holdings, LLC.[14] Acadia JV Holdings, LLC is the sole member of Acadia LaPlace Holdings, LLC.[15] Acadia LaPlace Holdings, LLC owns River Place Behavioral Health in LaPlace, Louisiana.

Red River is a Delaware limited liability company with its principal place of business in Texas.[16] Red River operates Red River Hospital in Wichita, Texas.[17] Plaintiff

---

[10] *Id.* at 22-29.

[11] Plaintiff alleges Acadia is a Tennessee Corporation with its principal place of business in Tennessee. R. Doc. 1 at ¶ 13. Defendants provided the sworn declaration of Christopher Howard attesting Acadia is a publicly owned corporation organized under the laws of the State of Delaware and registered to do business in the State of Tennessee. R. Doc. 22-3 at ¶ 2. Plaintiff does not offer evidence to dispute this.

[12] R. Doc. 43-2 at 2.

[13] R. Doc. 43-2 at 2.

[14] R. Doc. 43-2 at 2.

[15] R. Doc. 43-2 at 2.

[16] R. Doc. 1 at ¶ 15; R. Doc. 22-2 at ¶¶ 2, 3.

[17] R. Doc. 22-2 at ¶ 3.

alleges, and Defendants agree,[18] she was employed by Red River as a nurse at Red River Hospital in Wichita Falls, Texas, from approximately February 2015 to December 2019.[19]

Ochsner-Acadia is a Delaware limited liability company with its principal place of business in Tennessee.[20] Acadia is one the members of Ochsner-Acadia.[21] Ochsner-Acadia operates River Place Behavioral Health in LaPlace, Louisiana.[22]

Plaintiff alleges she has been employed by River Place Behavioral Health from approximately December 2019 to present.[23] Ochsner-Acadia presents sworn testimony that it is not Plaintiff's "employer" at River Place Behavioral Health facility in LaPlace, Louisiana, and that Plaintiff's employer at River Place Behavioral Health is Acadia LaPlace Holdings, LLC.[24] In his sworn declaration, Christopher Howard, the Executive Vice President, General Counsel and Secretary of Acadia, as well as Vice President and Secretary of Ochsner-Acadia and Acadia LaPlace Holdings, LLC attests Acadia LaPlace Holdings, LLC currently employs Plaintiff as a Nurse Supervisor at River Place Behavioral Health and that Ochsner-Acadia has never employed Plaintiff in any capacity.[25] Plaintiff provides no evidence to refute Howard's sworn declaration. The Court finds Acadia LaPlace Holdings, LLC is Plaintiff's current employer, and she has never been employed by Ochsner-Acadia.

---

[18] Defendants agree Plaintiff worked at Red River Hospital, but do not specify a time frame.

[19] R. Doc. 1 at ¶ 33. Defendants acknowledge Plaintiff was employed as a Nurse Supervisor at Red River Hospital in Wichita Falls, Texas. R. Doc. 22-1 at 1. Defendants provide the sworn declaration of Jon Lasell, Chief Executive Officer for Red River Hospital, LLC, attesting Red River has never employed Plaintiff for the purpose of working in Louisiana, but not disputing that Plaintiff was employed by Red River to work in Texas. R. Doc. 22-2 at ¶ 10.

[20] R. Doc. 1 at ¶ 14; R. Doc. 22-3 at ¶ 13.

[21] R. Doc. 43-2 at 2.

[22] R. Doc. 1 at ¶ 14; R. Doc. 21 at ¶ 14.

[23] R. Doc. 1 at ¶ 33. Defendants acknowledge Plaintiff is currently employed as a Nurse Supervisor at River Place Behavioral Health in LaPlace, Louisiana. R. Doc. 22-1 at 1.

[24] R. Doc. 22-1 at fn. 1; R. Doc. 22-3 at ¶ 15.

[25] *Id.*

## LEGAL STANDARD

When a non-resident defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of proving personal jurisdiction exists.[26] If the district court rules on the motion without an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction.[27] In determining whether the plaintiff has made a *prima facie* showing of personal jurisdiction, the district court must take the allegations of the complaint as true, except as controverted by opposing affidavits, and all conflicts in the facts must be resolved in favor of plaintiff.[28] The district court may consider matters outside the complaint, including affidavits, when determining whether personal jurisdiction exists.[29] "[U]ncontroverted allegations in the complaint are deemed true and factual conflicts in the parties' declarations are resolved in the plaintiff's favor."[30] "However, the court cannot assume the truth of the allegations in a plaintiff's complaint that are contradicted by sworn affidavit."[31] A finding that the plaintiff has made a *prima facie* showing of jurisdictional facts does not, however, end the inquiry: ultimately, "the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at a trial."[32]

To exercise personal jurisdiction over a non-resident defendant, two requirements must be satisfied. "First, the forum state's long-arm statute must confer personal

---

[26] *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).

[27] *See id.*

[28] *Id. See also Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

[29] *Adams v. Unione Mediterranean Di Sicurta*, 220 F.3d 659 (5th Cir. 2000), citing *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996).

[30] *Tinsley*, 1998 WL 59481 at *3 (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 204 (5th Cir. 1989)).

[31] *Tinsley v. Commissioner of I.R.S.*, 1998 WL 59481 at *3 (N.D. Tex. Feb. 19, 1998) (citing *Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)).

[32] *Traveler's Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1986) (internal quotation marks and citation omitted).

jurisdiction. Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment."[33] Because Louisiana's long-arm statute confers personal jurisdiction to the limits of constitutional due process, these two inquiries become one and the same.[34]

The Due Process Clause of the Fourteenth Amendment "operates to limit the power of a State to assert *in personam* jurisdiction over a nonresident defendant."[35] For a court's exercise of personal jurisdiction over a non-resident defendant to be constitutional under the Due Process Clause, (1) "that defendant [must have] purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant [must] not offend 'traditional notions of fair play and substantial justice.'"[36]

A court may exercise general jurisdiction over a non-resident defendant when that defendant's contacts with the forum state are "continuous and systematic," regardless of whether such contacts are related to the plaintiff's cause of action.[37] Stated differently, "[g]eneral jurisdiction will attach, even if the act or transaction sued upon is unrelated to the defendant's contacts with the forum state, if the defendant has engaged in 'continuous and systematic' activities in the forum state."[38] In *Goodyear Dunlop Tires Operations, S.A. v. Brown*, the Supreme Court stated that, "for an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation it is an equivalent place, one in which the corporation is fairly regarded as at home."[39] That is,

---

[33] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006) (citation omitted).
[34] *Luv N' care*, 438 F.3d at 469; La. R.S. 13:3201(B).
[35] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984).
[36] *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (citation omitted).
[37] *Id.* (citing *Helicopteros*, 466 U.S. at 413–14).
[38] *721 Bourbon, Inc. v. House of Auth, LLC*, 140 F. Supp. 3d 586, 592 (E.D. La. 2015) (citations omitted).
[39] 564 U.S. 915, 924 (2011).

the corporation must have substantial, continuous, and systematic contacts with the forum state so as to "render [it] essentially at home in the forum state."[40] "It is, therefore, incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."[41] Plaintiff does not assert general jurisdiction over Defendants Acadia and Red River.[42]

When the defendant's contacts are less pervasive, as in this case, a court may exercise specific jurisdiction over a non-resident defendant "in a suit arising out of or related to the defendant's contacts with the forum."[43] Specific jurisdiction exists, for example, when a non-resident defendant "has 'purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'"[44] Specific jurisdiction exists when a non-resident defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[45] "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state."[46] The Fifth Circuit has enunciated a three-factor analysis to guide courts in assessing the presence of specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the

---

[40] *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (citing *Goodyear*, 564 U.S. 915).

[41] *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (citing *Daimler AG*, 134 S. Ct. at 760; *Helicopteros*, 466 U.S. at 411–12).

[42] *See* R. Doc. 27, 43.

[43] *Luv N' care*, 438 F.3d at 469.

[44] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (quoting *Alphine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 215 (5th Cir. 2000)).

[45] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

[46] *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[47]

To make a prima facie showing of specific jurisdiction, the plaintiff need only satisfy the first two factors.[48] "Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a prima facie case for specific jurisdiction has been presented."[49] Establishing a prima facie case still requires the plaintiff to show the nonresident defendant's "purposeful availment of the benefits and protections of and minimum contacts with the forum state."[50] The Court must consider each Defendants contacts separately.

## **LAW AND ANALYSIS**

### I.    **Acadia is not subject to the personal jurisdiction of this Court.**

Plaintiff asserts the Court has specific jurisdiction over Acadia.[51] Plaintiff makes three arguments as to why she has made a prima facie showing that this Court has specific jurisdiction over Acadia: (1) Acadia is subject to specific jurisdiction in Louisiana because it is Plaintiff's joint employer subject to liability under the FLSA;[52] (2) Acadia has sufficient minimum contacts with Louisiana and Plaintiff's wage-based causes of action

---

[47] *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002); *Luv N' care*, 438 F.3d at 469.

[48] *Athletic Training Innovations, LLC v. eTagz, Inc.*, 955 F. Supp. 2d 602, 613 (E.D. La. 2013). *See also 721 Bourbon*, 140 F. Supp. 3d at 592–93; *Luv N' care*, 438 F.3d at 469. If the plaintiff makes a prima facie showing, the burden of proof with respect to the third factor shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Autogenomics, Inc. v. Oxford Gene Tech.*, 566 F.3d 1012, 1018–19 (Fed. Cir. 2009). *See also Athletic Training Innovations*, *supra*, at 613.

[49] *Panda*, 253 F.2d at 868.

[50] *Id.* (citing *Burger King*, 471 U.S. at 474 ("[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State.")).

[51] R. Doc. 27

[52] R. Doc. 27 at 10-16; R. Doc. 43 at 12-13.

arise out of those contacts,[53] and (3) Acadia is subject to jurisdiction in Louisiana because Oschsner-Acadia, its subsidiary or agent, is subject to jurisdiction in Louisiana.[54]

The Moving Defendants seek to dismiss Acadia for lack of specific jurisdiction because Plaintiff's claims do not "arise out of or result from [Acadia's] forum-related contacts," as Plaintiff's allegations are based on claims for unpaid wages and the only entity that employed Plaintiff in Louisiana is non-party Acadia LaPlace Holdings, LLC.[55] The Defendants also argue joint employer status under the FLSA does not confer personal jurisdiction over Acadia and that Acadia is not subject to personal jurisdiction based on its subsidiary or agency relationship with Ochsner-Acadia.

### A. Joint employer status under the FLSA does not confer personal jurisdiction over Acadia.

Plaintiff argues Acadia is subject to personal jurisdiction in Louisiana because it qualifies to be her joint employer under the FLSA.[56] Under the FLSA, an "[e]mployer includes any person acting directly or indirectly in the interest of an employer in relation to an employee."[57] The Fifth Circuit has specifically rejected 'formalistic labels or common-law notions of the employment relationship' in the FLSA context."[58] "To determine whether an individual or entity is an employer [under the FLSA], the court considers whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained

---

[53] Id. at 6-12.
[54] R. Doc. 27 at 16-18; R. Doc. 43 at 3-5.
[55] R. Doc. 22-1 at 3-4; R. Doc. 22-3 at ¶¶ 10 and 15; R. Doc. 31-1 at ¶ 3.
[56] R. Doc. 27 at 2; R. Doc. 43 at 6.
[57] 29 U.S.C. § 203(d).
[58] *Solis v. Universal Project Management, Inc.*, 2009 WL 4043362 at *6 (S.D. Tex. Nov. 19, 2009).

employment records."[59] In determining whether an entity related to the employer may be liable under Title VII as a joint employer, the Fifth Circuit has used a four-factor test under which a court should consider: "(1) the interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control."[60] In this case, the Court need not determine whether Acadia qualifies as Plaintiff's joint employer under the FLSA because joint employer status is not determinative of the Court's specific jurisdiction over Acadia.

To support her argument that Acadia's status as her joint employer under the FLSA confers personal jurisdiction over Acadia in Louisiana, Plaintiff cites two cases from district courts in the Fifth Circuit. In *Willshire v. HK Management*, a Title VII case, the court conducted an analysis to determine whether the defendant was the plaintiff's joint employer under Title VII.[61] The court determined the plaintiff had provided *prima facie* evidence that defendant was a joint employer. The court applied Fifth Circuit case law explaining how to determine when separate business entities are sufficiently interrelated for an employee whose Title VII rights have been violated to file a charge against both entities.[62] The trial court denied the defendant's motion to dismiss based on lack of personal jurisdiction.[63] The court, in dicta, remarked the defendant's status as a joint employer, subject to being sued under Title VII, "would lead to specific jurisdiction."[64] Similarly, in *Bishop v. Consolidated Natural Gas, Inc.*, the plaintiff asserted a Title VII claim against her employer and its parent company, alleging the two entities acted as a

---

[59] *Gray v. Powers*, 673 F.3d 355 (5th Cir. 2012) (internal quotations omitted).
[60] *Willshire v. HK Management*, 2004 WL 2974082 at *2 (N.D. Tex. Dec. 16, 2004) (citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983).
[61] *Willshire*, 2004 WL 2974082 at *3.
[62] *See Trevino v. Celanese Corp.*, 701 F.2d 397, 403 (5th Cir. 1983).
[63] *Willshire*, 2004 WL 2974082 at *3.
[64] *Id.*

single integrated employer with respect to the practices at issue.[65] The parent company defendant filed a motion to dismiss, which the court denied and stated, in dicta, that "specific jurisdiction would be triggered if [the defendant] were a joint employer and played an integral role in denying [the plaintiff] the promotional opportunity at issue in this employment discrimination lawsuit."[66]

Other circuit and trial courts have come to a different conclusion. In *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*, certain managers brought a collective action against their employer under the FLSA, alleging they were wrongfully classified as exempt employees and were not paid minimum wage or premium overtime compensation.[67] In discussing the applicable standard of review for a motion to dismiss for lack of personal jurisdiction, the trial court noted there must be minimum contacts with the forum state and went on to analyze whether the defendant's contacts were sufficient.[68] In determining whether specific personal jurisdiction existed, plaintiffs argued defendant purposely directed its activities to the forum state because of the control it exerted over its subsidiary.[69] Plaintiffs also argued defendant was subject to the personal jurisdiction of the court because the defendant was their joint employer under the FLSA.[70] After considering defendant's contacts with the forum, the court held the parent corporation did not have sufficient contacts with Pennsylvania for Pennsylvania to exercise personal jurisdiction over it.[71] In coming to this conclusion, the court discussed multiple cases considering whether specific jurisdiction turns on whether

---

[65] *Bishop v. Consolidated Natural Gas, Inc.*, 2000 WL 6263 at *3 (E.D. La. Jan. 5, 2000).
[66] *Bishop v. Consolidated Natural Gas, Inc.*, 2000 WL 6263 at *3 (E.D. La. Jan. 5, 2000).
[67] 735 F.Supp.2d 277 (W. D. Pa. 2010).
[68] *Id.* at 308-310.
[69] *Id.* at 325.
[70] *Id.*
[71] 735 F.Supp.2d 277 (W. D. Pa. 2010).

the defendant is a joint employer under the FLSA.[72] The court declined to find personal jurisdiction based on joint employer status. The Court was persuaded by a group of cases recognizing "joint employer theory and similar concepts are relevant for determining liability, but are not for determining whether a court may exercise personal jurisdictional over a party."[73] The court, having determined the joint employer issue was not relevant to the specific jurisdiction analysis, instead based its decision on the defendant parent company's contacts under the minimum contacts analysis.[74]

In *Vogt v. Greenmarine Holding, LLC*, another out-of-circuit case, the plaintiffs argued the proper test for personal jurisdiction is whether defendants constitute a single employer so as to be liable under the Worker Adjustment and Retraining Notification Act.[75] The court rejected the argument finding "it is improper to conflate an issue of subject matter jurisdiction with personal jurisdiction," and that "[l]iability and jurisdiction are two separate inquiries."[76] Further, the court specifically rejected plaintiff's argument that an analysis of personal jurisdiction "should be altered where a federal statute premises liability on corporate affiliation."[77] Accordingly, the court analyzed the defendants' motion to dismiss for lack of personal jurisdiction under the minimum contacts test and granted the defendants' motion to dismiss.[78]

In *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, a Seventh Circuit case discussed in *In re Enterprise*, the court considered a

---

[72] *Id.* at 326.
[73] *Id.* at 328.
[74] *Id.*
[75] 2002 WL 534542 at *3 (N.D. Ga. Feb. 20, 2002).
[76] *Id.* at 3 (citing *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934 (7th Cir. 2000)).
[77] *Vogt,* 2002 WL 534542 at *3.
[78] *Id.*

plaintiff's argument that when a federal statute premises liability on corporate affiliation, personal jurisdiction follows.[79] The Seventh Circuit determined this argument "ignores the process by which courts determine whether specific personal jurisdiction exists and confuses liability and jurisdiction."[80] The court stated the proper inquiry instead is to engage in three distinct steps: "(1) identify the contacts the defendant has with the forum; (2) analyze whether these contacts meet constitutional minimums and whether exercising jurisdiction on the basis of these minimum contacts sufficiently comports with fairness and justice; (3) determine whether the sufficient minimum contacts, if any, arise out of or are related to the causes of action involved in the suit."[81] Following this analysis, the court ultimately held that "[c]orporate affiliation with and the provision of standard administrative services to [defendant] are not sufficient minimum contacts to exercise specific personal jurisdiction over [parent company defendants]."[82] The court reasoned "[t]he laws on which the suit are based would be irrelevant because a state or federal statute cannot transmogrify insufficient minimum contacts into a basis for personal jurisdiction by making these contacts elements of a cause of action, since this would violate due process."[83] Further, "the analysis of personal jurisdiction is not altered where a federal statute premises liability on corporate affiliation."[84]

In *Garcia v. Peterson*, an FLSA case within this circuit, plaintiffs argued that "specific jurisdiction depends on whether they have adequately alleged employer status

---

[79] 230 F.3d 934, 944 (7th Cir. 2000).
[80] *Id.*
[81] *Id.*
[82] *Id.* at 947.
[83] *Id.* at 944-45.
[84] *In re Enterprise*, 735 F.Supp.2d 277 at 327 (citing *Vogt v. Greenmarine Holding, LLC,* 2002 WL 534542 at *3 (N.D. Ga. Feb. 20, 2002).

under the economic realities test."[85] The court found that whether the defendant was considered the plaintiffs' employer under the FLSA using the economic realities test was not irrelevant, "but it is also not determinative, as the employer test was not crafted to determine if exercising jurisdiction over a defendant 'employer' meets a due process inquiry."[86] Further, the court held that it should consider the defendants' contacts that may be part of the economics reality test, but only "to the extent they are the types of minimum contacts considered [in] the due process inquiry."[87]

The Court has found no Fifth Circuit case holding that joint employer status under the FLSA is a substitute for the minimum contacts test in determining whether a Court may exercise personal jurisdiction over an out of state defendant. This Court is persuaded that "joint employer theory and similar concepts are relevant for determining liability [as an employer under the FLSA], but not for determining whether a court may exercise personal jurisdiction over a party."[88] The Court finds the well-reasoned decisions of other courts to be persuasive and holds that joint employer status under the FLSA does not confer personal jurisdiction.

### B. Acadia does not have sufficient minimum contacts with Louisiana and, to the extent it does have contacts with Louisiana, Plaintiff's causes of action do not relate to arise out of those contacts.

The Fifth Circuit has enunciated a three-factor analysis to guide courts in assessing the presence of specific jurisdiction:

(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-

---

[85] 319 F.Supp.3d 863, 880 (S.D. Tex. 2018).
[86] 319 F.Supp.3d 863, 881 (S.D. Tex. 2018).
[87] *Id.*
[88] *In re Enterprise*, 735 F.Supp.2d 277.

related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[89]

To determine whether a defendant has sufficient minimum contacts with the forum state, the Court should ask whether defendants "purposely avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[90] A court may exercise specific jurisdiction over a non-resident defendant only "in a suit *arising out of or related to* the defendant's contacts with the forum."[91]

Defendants provided Christopher Howard's sworn declaration that Acadia is a Delaware corporation with its principal place of business in Tennessee; Acadia is not registered to do business in Louisiana; Acadia does not maintain an office in Louisiana; Acadia does not own any real property in Louisiana; Acadia does not maintain any bank accounts in Louisiana; Acadia has never appointed an agent for service of process in Louisiana; and Acadia has never sued anyone in Louisiana or otherwise affirmatively sought the benefit of the judicial system in Louisiana.[92] Defendants also provided Kim Brady's sworn declaration that Acadia has never employed Plaintiff; that Plaintiff's employer is Acadia LaPlace Holdings, LLC; that Acadia does not control the operations of River Place Behavioral Health; that Acadia does not possess the power to hire or fire hourly employees at River Place Behavioral Health; that Acadia does not supervise or control the work schedules or conditions of employment for hourly employees at River Place Behavioral Health; and that Acadia does not maintain employment records for

---

[89] *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002); *Luv N' care*, 438 F.3d at 469.

[90] S*ayers Construction, LLC v. Timberline Construction, Inc.*, 976 F.3d 570, 573 (5th Cir. 2020) (quoting *Hanson v. Denckla*, 357 U.S. 255, 253 (1958)).

[91] *Luv N' care*, 438 F.3d at 469 (emphasis added).

[92] R. Doc. 22-3.

hourly employees at River Place Behavioral Health.[93] Defendants argue this evidence shows Acadia does not have the requisite minimum contacts with Louisiana for the Court to exercise personal jurisdiction over it and that Plaintiff's causes of action did not arise out of Acadia's activities in Louisiana. Plaintiff provided no evidence to dispute the sworn declarations provided by the Defendants.

Plaintiff alleges Acadia implemented timekeeping, payroll, meal break, and off-the-clock policies and practices at its facilities in Louisiana that give rise to the FLSA and Louisiana state law wage-and-hour violations described in Plaintiff's complaint, and, as a result, these contacts are related to Plaintiff's injuries.[94] Plaintiff argues that because Acadia is employing its policies at Ochsner-Acadia facilities in Louisiana, Acadia has sufficient contacts with the forum.

First, Plaintiff argues Acadia implements human resources policies and practices in Louisiana directly affecting and injuring Plaintiff, Louisiana Class members, and Collective members.[95] As evidence, Plaintiff provides Acadia's human resources policies, specifically "Rest and Meal Breaks" and "Attendance" policies she alleges are instituted at River Place Behavioral Health and Red River, two facilities in which Plaintiff has worked.[96] Plaintiff argues these policies are relevant, because her wage-based causes of action arise out of the "Rest and Meal Breaks" and "Attendance" policies. Plaintiff provides no explanation of how her causes of action arise out of these policies. The Rest and Meal Breaks policy requires that every effort be made to provide an unpaid meal break for employees and that they should be paid when that break is unavoidably missed

---

[93] R. Doc. 31-1.
[94] R. Doc. 27 at 5-6.
[95] R. Doc. 43 at 6.
[96] R. Doc. 43-2 at 4-6; R. Doc. 43-4.

or interrupted.[97] The Attendance policy has no discernible relationship to the wage-based causes of action brought by Plaintiff.[98]

Plaintiff next argues Acadia's written policies, used in Louisiana, provide specific hiring criteria and required trainings for Plaintiff, Class members, and Collective members.[99] As evidence, Plaintiff provides Acadia's Employee Handbook, which sets out specific terms for hiring and transferring workers at Acadia's facilities.[100] Plaintiff's wage-based claims do not relate to or arise out of Acadia's specific terms for hiring and transferring workers. The only relevance of the policies may be to Plaintiff's joint employer argument, which the Court has determined is not the appropriate test for determining personal jurisdiction.

Plaintiff also argues Acadia's policies require Class members, and Collective members to adhere to a uniform standard of conduct regarding ethics and legal compliance.[101] As evidence, Plaintiff provides Acadia's Code of Conduct, which applies to "all Acadia employees, Medical Staff, . . . contractors, subcontractors, agents, and other persons who provide patient and/or patient care items or services . . . on behalf of Acadia."[102] Plaintiff argues this shows that Acadia promulgates policies and procedures throughout its healthcare facilities, including those in Louisiana and Texas, that control the conditions of Plaintiff, Class members, and Collective members' employment and therefore are related to Plaintiff's causes of action.[103] Plaintiff's wage-based causes of action do not arise out of and are not related to Acadia's imposition of its Code of Conduct.

---

[97] R. Doc. 43-4 at 2.
[98] R. Doc. 43-4 at 4-5.
[99] R. Doc. 43 at 8.
[100] R. Doc. 43-3.
[101] R. Doc. 43 at 10.
[102] *Id.*
[103] *Id.*

In opposition, Defendant argues "[s]uch minimal contacts consisting of general policy assistance and support with at best a tangential relationship to the specific time keeping practices at the individual facilities operated by subsidiary entities that form the basis of Plaintiff's claims cannot establish the minimal contacts necessary for personal jurisdiction."[104] Defendants point out that the allegations in Plaintiff's complaint differ from the handbook and human resources policies provided by Plaintiff in opposition to the motion to dismiss.[105] In her complaint, Plaintiff states Class members and Collective members are effectively not permitted to take 30-minute uninterrupted and bona fide meal periods due to the high demands of their jobs during the majority of their shifts.[106] Defendant compares the allegation in the complaint to the handbook provided to the Plaintiff, which states that employees "should record the beginning and end of [their] workday, the beginning and end of meal breaks and any departure from work for personal reasons."[107] In the handbook, there is no mention of 30-minute time increments, which leads the Court to believe the 30-minute policy Plaintiff references in her complaint did not originate with Acadia. Defendant provides sworn testimony that Acadia does not have complete authority over general policy at River Health Behavioral Place, and that Ochsner-Acadia, as operator of the facility, exercises complete authority over those operations.[108] In support of this argument, Defendants point to Acadia's Supplemental Response to Plaintiff's Requests for Admission Related to Personal Jurisdiction, in which

---

[104] R. Doc. 46 at 8.
[105] R. Doc. 46 at 8.
[106] R. Doc. 1.
[107] R. Doc. 43-3 at 25.
[108] R. Doc. 41 at 7.

Acadia denied that River Place Behavioral Health is operated by Acadia.[109] Plaintiff does not provide any evidence controverting these facts.

Plaintiff argues that, because Acadia has the power to fire local supervisory employees, such as the CEO of Red River Hospital in Wichita, Texas, Acadia exercises firing and hiring power over Plaintiff, Class members, and Collective members. Even if Acadia has the power to fire the CEO of Red River Hospital, this does not equate to Acadia having the power to fire an individual in Plaintiff's position. Plaintiff's wage-based claims do not arise out of or relate to Acadia's power to fire a Red River Hospital CEO or other supervisory employees.

Plaintiff argues Acadia is subject to personal jurisdiction in Louisiana because it regularly sends its employees to Louisiana to conduct business.[110] Plaintiff argues Acadia employs regional employees who provide oversight and operational support to Acadia's facilities in Louisiana.[111] Plaintiff argues Acadia has employed at least three individuals who "exercise regional oversight and provide operational support to facilities in Louisiana," including Marta McClanahan, Erin McCarthy, and former employee Tanya Dillon-Page.[112] As evidence, Plaintiff provides the sworn declaration of William Hogg, Plaintiff's attorney, attaching an email from counsel for Acadia stating that the "Regional Vice President from before May 2017 until April 2019 was Tanya Dillon- Page," and that her job duties were the same as current Regional Vice President's, Erin McCarthy.[113] The email also states Dillon-Page visited Louisiana approximately 2-3 times per year.[114]

---

[109] R. Doc. 43-2 at 2.
[110] R. Doc. 43 at 3.
[111] R. Doc. 43 at 11.
[112] R. Doc. 43 at 12.
[113] R. Doc. 43-7 at 4.
[114] R. Doc. 43-7 at 4.

Plaintiff argues "these agents helped implement Acadia's human resources, meal break, and timekeeping policies and practices that are at issue in this case," and therefore Plaintiff's injuries arise out of or are related to the employees alleged contacts with Louisiana.[115]

Defendant offers sworn evidence that there are currently only two employees who travel to Louisiana, a Human Resources Business Partner, Marta McClanahan, and a Regional Vice President, Erin McCarthy, both of whom are employees of a separate legal entity, Acadia Management Company, LLC.[116] Defendant provides sworn testimony that McCarthy has visited Louisiana once in the last 18 months and McClanahan visits Louisiana approximately once per year.[117] Defendant argues McCarthy and McClanahan's visits to Louisiana cannot be considered systematic and that the employees only provide support to officers of Ochsner-Acadia, which then carries out operations at the hospitals it operates.[118] Further, Defendants provide sworn testimony that the two employees are regional employees of a separate Acadia subsidiary and not of Acadia.[119] Defendants argue "[s]uch minimal contacts consisting of general policy assistance and support with at best a tangential relationship to the specific time keeping practices at the individual facilities operated by subsidiary entitles that form the basis for Plaintiff's claims cannot establish the minimal contacts necessary for personal jurisdiction."[120] In support of this, Defendants provided the Human Resources Business Partner's job description, which states that the role provides strategic and tactical human resources support to a

---

[115] R. Doc. 43 at 4.
[116] R. Doc. 46 at 6.
[117] R. Doc. 46 at 7.
[118] R. Doc. 46 at 7.
[119] R. Doc. 41 at 3.
[120] R. Doc. 46 at 8.

designated customer base of field management and human resources representatives.[121] Plaintiff does not offer any evidence refuting Defendants' evidence.

In further support of their argument, Defendants cite *Stewart v. Marathon Petroleum Company, LP*, in which the court found the defendants' contacts with Louisiana were too removed from the cause of action to justify the exercise of personal jurisdiction.[122] In that case, plaintiffs argued that, because defendants employed a registered sales agent whose territory included Louisiana, among other contacts, there was personal jurisdiction. The court declined to exercise personal jurisdiction over the defendant, finding the employee's connections to the sales agent were too attenuated.[123] Similarly, in the instant case, the Court finds McCarthy and McClanahan's annual visits to Louisiana to be too attenuated a link between Acadia and Plaintiff to justify personal jurisdiction over Acadia in Louisiana.

Plaintiff argues Acadia is subject to personal jurisdiction in Louisiana because Acadia "pays wages to Class and Collective members jointly/collectively with its subsidiaries, as indicated by SEC filings."[124] Specifically, Acadia's 2020 SEC 10-K Form includes the statement that Acadia and its subsidiaries "directly or indirectly owned and operated" six facilities in Louisiana as of December 31, 2019.[125] Defendants argue that multiple courts have found statements like those contained in Acadia's 2020 SEC 10-K Form are based on the "drafting style [] suggested by the Securities and Exchange Commission, or SEC, and [are] not meant to indicate that the publicly-traded Parent Company or any other subsidiary of the Parent Company owns or operates any asset,

---

[121] R. Doc. 43-1 at 1.
[122] 326 F.Supp.3d 284, 292 (E.D. La. July 2, 2018).
[123] *Id.*
[124] R. Doc. 43 at 12; *see also* R. Doc. 27 at 15.
[125] R. Doc. 46 at 14.

business, or property."[126] The Court finds the statements in the SEC 10-K filing do not establish that Acadia pays wages jointly and collectively with its subsidiaries to Class members and Collective members.[127]

Exercising personal jurisdiction in keeping with due process requires evidence that (1) Acadia has purposefully availed itself of the benefits and protections of Louisiana by establishing "minimum contacts" with Louisiana; and (2) the exercise of jurisdiction over Acadia does not offend "traditional notions of fair play and substantial justice."[128] Acadia has not purposefully directed its activities at Louisiana and this litigation does not result from alleged injuries that arise out of or relate to those activities. Acadia has not purposefully availed itself of the privilege of conducting activities within Louisiana, thus invoking the benefits and protections of its laws. Acadia could not reasonably have anticipated that it would be haled into court in Louisiana. The Plaintiff has not met her burden of proving personal jurisdiction exists. Subjecting Acadia to personal jurisdiction in Louisiana would offend 'traditional notions of fair play and substantial justice and, as a result, not comport with due process.

### C. Acadia is not subject to personal jurisdiction based on its parent-subsidiary or agency relationship with Ochsner-Acadia.

Ochsner-Acadia, as the operator of River Place Behavioral Health in LaPlace, acknowledges it is subject to personal jurisdiction in Louisiana and has filed an answer.[129] Plaintiff argues Acadia is subject to specific jurisdiction in Louisiana through its

---

[126] R. Doc. 46 at 15 (quoting *EEOC v. Vicksburg Healthcare, LLC*, 2014 WL 4715463 at *5 (S.D. Miss. Sep. 22, 2014) ("The totality of the Form 10-K fails to support the EEOC's strained contention that [defendant] itself, as opposed to one or more of its subsidiaries, does business in Mississippi.").
[127] The same is true with respect to Red River.
[128] *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir.2002).
[129] R. Doc. 27.

relationship with Ochsner-Acadia, either because Ochsner-Acadia is Acadia's subsidiary or is Acadia's agent. [130]

The Fifth Circuit uses a seven-factor test to determine whether a parent company may be held amenable to personal jurisdiction because of the acts of its subsidiary.[131] Under this test, a court should consider "(1) [the] amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they have common offices and directors; (4) did they observe corporate formalities; (5) did they maintain separate accounting systems; (6) did the parent exercise complete authority over general policy; (7) did the subsidiary exercise complete authority over daily operations."[132] "[T]he mere existence of a parent-subsidiary relationship will not support the assertion of jurisdiction over a foreign parent," unless the parent so dominates the subsidiary that "they do not in reality constitute separate and distinct corporate entities."[133] "[S]o long as a parent and subsidiary maintain separate and distinct corporate identities, the presence of one in a forum state may not be attributed to the other."[134]

Defendant provides the sworn affidavit of Christopher Howard, the Executive Vice President, General Counsel and Secretary of Acadia, as well as Vice Present and Secretary of Ochsner-Acadia, LLC and Acadia LaPlace Holdings, LLC.[135] Howard attests that Red River, Ochsner-Acadia, and Acadia LaPlace Holdings, LLC are "each related to but legally distinct corporate entities from Acadia."[136] Jon Lasell, the CEO of Red River, attests to the

---

[130] R. Doc. 27 at 16-18; R. Doc. 43 at 3-5.
[131] *Id.*
[132] *Dickson Marine*, 179 F.3d at 339.
[133] *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990) (internal quotations omitted).
[134] *Special Indus. v. Zamil Grp. Holding Co.*, 578 F. App'x 325, 332 (5th Cir. 2014) (internal quotation omitted); *see also Jackson v. Tanfoglio Giuseppe, S.L.R.*, 615 F.3d 579, 587 (5th Cir. 2010).
[135] R. Doc. 22-3.
[136] R. Doc. 22-3 at ¶ 11.

same facts.[137] In his declaration, Howard also attests Acadia is not incorporated or registered to do business in Louisiana, Acadia does not maintain an office in Louisiana, Acadia does not own any real property in Louisiana, Acadia does not maintain any bank accounts in Louisiana, and Acadia does not advertise, solicit, or conduct business in Louisiana.[138] Defendants' answers to interrogatories reflect "that while Acadia, Ochsner-Acadia, and LaPlace share three common officers, Acadia does not wholly own Ochsner-Acadia, Acadia maintains a separate headquarters, all corporate formalities were observed, Acadia did not have complete authority over general policy at River Place [Behavioral Health], and Ochsner-Acadia [ ] exercise[d] complete authority over [its] operations."[139]

Defendants also produced the declaration of Kim Brady, the Chief Human Resources Officer for Acadia, in which she attests that Acadia does not possess the power to hire or fire any hourly employees at River Place Behavioral Health or at Red River Hospital, Acadia does not supervise or control the work schedules or conditions of employment for  nursing employees at River Place Behavioral Health or at Red River Hospital, Acadia does not determine the rate of payment for any hourly nursing employees River Place Behavioral Health or Red River Hospital, and Acadia does not maintain the employment records for any hourly nursing employees at River Place Behavioral Health or Red River Hospital.[140]

---

[137] R. Doc. 22-2 at ¶ 11.
[138] R. Doc. 22-3 at 1-2.
[139] R. Doc. 43-2; Acadia's Second Supplemental Responses to Plaintiff's First Set of Interrogatories Related to Personal Jurisdiction at ¶¶ 1, 6–7; Acadia's Supplemental Responses to Plaintiff's First Set of Requests for Admissions Related to Personal Jurisdiction at ¶¶ 3–9, 17–18, 37–43.
[140] R. Doc. 31-1.

The Court will apply the seven-factor test established by the Fifth Circuit in *Dickson Marine* to determine whether Acadia may be subject to personal jurisdiction in Louisiana because of the actions of its subsidiary, Ochsner-Acadia The first factor in the analysis, the amount of stock owned by the parent in the subsidiary, weighs against a finding that Acadia is subject to personal jurisdiction in Louisiana; Acadia is not the sole member of Ochsner-Acadia.[141] The second factor weighs against a finding of personal jurisdiction because Acadia and Ochsner-Acadia have separate headquarters.[142] The third factor is neutral because Acadia and Ochsner-Acadia have some, but not complete, commonality with respect to officers and directors. The fourth factor weighs against a finding of personal jurisdiction because Acadia and Ochsner-Acadia observe corporate formalities.[143] The fifth factor weighs against a finding of personal liability as Acadia and Ochsner-Acadia maintain separate accounting systems.[144] The sixth and seventh factors do not support a finding of personal jurisdiction because Plaintiff has not produced any evidence to show Acadia exercised complete authority over Ochsner-Acadia's general policy or daily operations. Six of the seven factors weigh against a finding that Acadia may be held subject to personal jurisdiction in Louisiana and one is neutral. The Court finds Acadia may not be held amenable to personal jurisdiction in Louisiana because of the acts of Ochsner-Acadia as its subsidiary.

The Fifth Circuit also has held that a principle may be subject to jurisdiction through its agent if there is "evidence of one corporation asserting sufficient control to

---

[141] R. Doc. 43-2 at 2-3.
[142] R. Doc. 22-3 at ¶ 3; R. Doc. 22-2 at ¶ 3.
[143] R. Doc. 22-3 at ¶ 11; R. Doc. 22-2 at ¶ 4.
[144] R. Doc. 22-3 at ¶ 12; R. Doc. 22-2 at ¶ 12.

make the other its agent or alter ego."[145] Defendants argue that Plaintiff has neither pled

nor submitted evidence showing that Acadia sufficiently controlled the conduct of Acadia

LaPlace Holdings, LLC or Oschner-Acadia to make either of them Acadia's agent or alter

ego.[146] Based on the evidence discussed above, Plaintiff has not provided evidence to show

that Acadia has asserted sufficient control to make Ochsner-Acadia or Acadia LaPlace

Holdings, LLC its agent or alter ego and personal jurisdiction over Acadia is not justified

on this ground.

## II.   Red River Hospital, LLC is not subject to the personal jurisdiction of this Court.

Defendants' motion also seeks dismissal of Red River for lack of specific

jurisdiction.[147] Red River is a Delaware limited liability company with its principal place

of business in Texas.[148] Red River operates Red River Hospital in Wichita, Texas.[149]

Plaintiff was employed as a nurse by Red River, to work at Red River Hospital located in

Wichita Falls, Texas, from approximately February 2015 to December 2019.[150] None of

Red River's members is a citizen of Louisiana, Red River is not registered to do business

in Louisiana, Red River does not maintain an office or own real property in Louisiana,

and Red River does not provide services or products in Louisiana.[151] Nevertheless,

Plaintiff argues Red River has sufficient minimum contacts with Louisiana to establish

personal jurisdiction in Louisiana and that her injuries arose out of those contacts.

---

[145] *Alcide v. Nippon Yusen Kanushiki Kaisha*, 465 F.Supp.3d 588, 608 (E.D. La. 2020) (internal quotations omitted) (quoting *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999)).
[146] R. Doc. 31 at 8.
[147] R. Doc. 22.
[148] R. Doc. 1 at ¶ 15; R. Doc. 22-2 at ¶ 2, 3.
[149] R. Doc. 22-2 at paragraph 3.
[150] R. Doc. 1 at ¶ 33.
[151] R. Doc. 22-2.

### A. Red River does not have sufficient minimum contacts with Louisiana and Plaintiff's causes of action do not arise out of Red River's contacts with Louisiana.

Plaintiff argues she transferred from Red River Hospital in Texas to work for River Place Behavioral Health in Louisiana pursuant to Acadia's internal transfer policies.[152] As evidence, Plaintiff provides the Acadia Employee Handbook which includes a statement that, with respect to employee transfers between facilities, employment dates, 401(k) account and paid time off balances transfer with the employee to the new facility.[153] Plaintiff also argues that her transfer from Red River Hospital to River Place Behavioral Health constitutes evidence that Red River had purposeful contacts with individuals or entities within Louisiana because it transferred at least one employee to work in Louisiana.[154] Plaintiff does not allege her wage-based claims arose out of or are related to her transfer from Red River Hospital to River Place Behavioral Health.

Defendants argue that Plaintiff cannot create personal jurisdiction in Louisiana over Red River through her voluntary transfer from Red River Hospital in Texas to River Place Behavioral Health in Louisiana.[155] Defendants cite Fifth Circuit case law noting that, in order for a court to exercise personal jurisdiction over a non-resident defendant, that defendant must have "purposeful contact" with the forum state and that the "unilateral activity" of a plaintiff who claims some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.[156] Defendants argue Red River did not direct Plaintiff to move to Louisiana or to work at River Place Behavioral Health.[157]

---

[152] R. Doc. 43 at 13.
[153] *See* R. Doc. 43-3 at 9.
[154] R. Doc. 43 at 13.
[155] R. Doc. 46 at 4.
[156] *Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012).
[157] R. Doc. 46 at 5.

Plaintiff did not provide any proof that Red River had any role in her transfer. The Plaintiff has not established Louisiana's personal jurisdiction over Red River based on Plaintiff's voluntary transfer.

Defendants further argue there is no personal jurisdiction over Red River because it has no contacts with Louisiana and took no steps to recruit individuals from Louisiana.[158] Defendant offers as evidence the affidavit of Jon Lasell, the Chief Executive Officer for Red River, in which he asserts Red River is not authorized to do business in the State of Louisiana and does not have an office or place of business in the state.[159] Defendant cites *Brumfield v. Transunion, Inc.*[160] In that case, the court found it lacked personal jurisdiction over the defendant because "[defendant] did not make any purposeful contact with Louisiana with respect to this action" and "does not have any offices in Louisiana."[161] In the instant case, Red River has no offices in Louisiana, does not own or operate River Place Behavioral Health, and has not employed Plaintiff for work performed in Louisiana.[162] The Court finds Plaintiff has not shown Red River has sufficient minimum contacts with Louisiana or that Plaintiff's causes of action arose from any contacts.

### B. Red River is not subject to personal jurisdiction as the subsidiary or agent of Acadia.

Plaintiff argues that, because the Court has specific jurisdiction over Acadia, the Court may exercise specific jurisdiction over Red River as Acadia's agent or subsidiary.

---

[158] R. Doc. 41 at 2.
[159] R. Doc. 22-2.
[160] 2020 WL 1083598 (E.D. La. Mar. 6, 2020).
[161] *Id.* at *7-9.
[162] R. Doc. 22-1 at 2.

The Court has found it does not have personal jurisdiction over Acadia. As a result, it cannot have personal jurisdiction over Red River based on it being the subsidiary or agent of Acadia.

## CONCLUSION

Plaintiff argues that "[i]f Acadia is allowed to splinter this collective action, and/or avoid state law liability completely, on a motion to dismiss by claiming it is not subject to personal jurisdiction in *this* District, then Acadia will make identical arguments around the country any time an employee at one of Acadia's facilities brings a wage and hour action against it.," which will ultimately lead to inconsistent rulings and a waste of judicial resources.[163] Plaintiff cites multiple cases in which Acadia is currently being sued in Tennessee, Arkansas, and Florida.[164] Plaintiff provides the citations for these cases, noting the cases in Arkansas and Florida proceeded under similar theories of liability.[165] However, Plaintiff does not provide any proof that Acadia has similar levels of contacts in Louisiana as it does with other states in which lawsuits are pending, only that Acadia proceeded under similar theories of liability.[166] Defendants argue that "allegations that Acadia violated the FLSA through other subsidiaries in other states is not evidence showing that jurisdiction is proper here."[167] Defendants cite *Mason v. AT&T Services, Inc.*, which states "[t]o the extent [plaintiff] refers to other lawsuits filed in this Court, she cannot incorporate pleadings or evidence from a separate action in this case."[168]

---

[163] R. Doc. 27 at 9.
[164] R. Doc. 27 at 9-10. *See Lamar v. Rehabilitation Centers, LLC, et al.*, Case No. 3:20-cv-00129, R. Doc. 1 (M.D. Tenn. Feb. 12, 2020); *Carmilo v. Texarkana Behavorial Associates, L.C. and Acadia Healthcare Company, Inc.,* Case No. 5:19-cv-050760TLB, R. Doc. 8 at 5 (W.D. Ark. Apr. 16, 2019) (admitting jurisdiction is proper in the Western District of Arkansas); *Pace v. Acadia Healthcare Company, Inc.,* Case No. 9:20-cv-80971-RAR, R. Doc. 1 (S.D. Fla. June 19, 2020).
[165] *Id.*
[166] R. Doc. 27 at 10.
[167] R. Doc. 31 at 10.
[168] 2019 WL 4721015 at *9 (N.D. Tex. Aug. 27, 2019).

In the event Plaintiff's arguments fail, Plaintiff indicates she will name the individual officers and executives common to each corporate entity as individual defendants in this action.[169] Plaintiff also states that, if Acadia and Red River are dismissed, she will be forced to file an identical lawsuit that alleges identical facts against related and integrated corporate defendants.[170]

Only Defendants' motion to dismiss is currently before the Court, not the issue of whether Plaintiff may name additional defendants in this action or file actions against the Defendants in other states or the defenses Acadia may raise in proceedings pending in other jurisdictions.

**IT IS ORDERED** that Defendants' Motion to Dismiss Red River Hospital, LLC, and Acadia Healthcare Company, Inc for Lack of Personal Jurisdiction is **GRANTED**.

**IT IS FURTHER ORDERED** that Red River Hospital, LLC and Acadia Healthcare Company, Inc. are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction over them.

**New Orleans, Louisiana, this 31st day of March, 2021.**

_____

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[169] R. Doc. 43 at 15.
[170] R. Doc. 27 at 9.

30