## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **AMY HAMM, on behalf of herself and** | § | |
| **all others similarly situated,** | § | **CIVIL ACTION** |
| | § | |
| *Plaintiff*, | § | **NO. 20-1515** |
| | § | |
| **v.** | § | **SECTION: "E"** |
| | § | |
| **ACADIA LAPLACE HOLDINGS, LLC** | § | |
| **and OCHSNER-ACADIA, LLC,** | § | |
| | § | |
| *Defendants*. | § | |

## FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1.      Plaintiff Amy Hamm ("Plaintiff") brings this Class and Collective action on behalf of herself and other similarly situated individuals who have worked for Acadia LaPlace Holdings, LLC and Ochsner-Acadia, LLC ("Defendants") as non-exempt employees involved with patient care at any time beginning three years before the filing of this complaint until resolution of this action. Throughout the relevant time period of this action, Plaintiff and similarly situated Class and Collective members have been denied payment for hours worked, including overtime, and denied bona fide meal periods. This case implicates the longstanding policies and practices of Defendants across all of its healthcare facilities around the country, which fails to properly compensate non-exempt employees for hours worked during meal periods.

2.      Employers are not required to pay employees for meal periods if the employer can satisfy its burden of demonstrating the employee received a *bona fide* meal period which primarily benefits the employee. Defendants do not provide bona fide meal periods for its non-exempt workers who are involved with patient care. Non-exempt employees who work for healthcare facilities owned/operated by Defendants are required to remain available for work throughout their shift. Hourly-paid workers involved with direct patient care duties who work for Defendants are

-1-

required to remain responsible for patient care throughout their shift and are expected to perform duties while "off-the-clock." Defendants require these healthcare workers to clock out for their 30-minute meal periods. However, these patient care workers are required to remain on-duty and subject to interruption during those unpaid meal breaks. Defendants instituted policies and practices that result in healthcare workers being responsible for patient care throughout their shift, even when they attempt to have a bite to eat.

3.      Even when employees are not interrupted during meal periods, employees are still subject to interruption and remain on-duty since they remain responsible for their patients and are required to respond to emergency situations at all times while on-premises. Under these policies and practices, non-exempt workers involved in patient care are subject to work throughout their entire shift, including meal periods, and are thus, entitled to compensation for meal periods whether interrupted or not.

4.      Defendants' policies and practices result in non-exempt workers being denied wages due under the Fair Labor Standards Act ("FLSA") and the Louisiana Revised Statutes ("La. R.S."). Defendants violate the FLSA and the La. R.S. by knowingly and willfully requiring Plaintiff, Class and Collective members to perform work and/or remain on-duty in a standby capacity during their meal periods. Defendants have notice that Plaintiff, Class and Collective members expect to be paid for their work on an hourly basis. Defendants receive the value of Plaintiff, Class and Collective members' work performed during their meal periods and while "off-the-clock" without compensating them for their services. Defendants willfully, deliberately, and voluntarily fail to pay Plaintiff, Class and Collective members for all hours worked.

5.      Defendants, including all of the facilities under Defendants' ownership, management and control nation-wide, violated and continue to violate the FLSA and the La. R.S.

due to the mandate that non-exempt employees, such as Plaintiff and the putative Class and Collective members, be paid for all hours work, and be paid at a rate of one and one-half times their regular rate of pay for all hours worked in excess of forty within a single workweek.

6.      In addition, Plaintiff, Class and Collective members are required to work additional time while off-the-clock outside of their scheduled shifts to keep up with the demands of the job. Defendants know and are informed that Plaintiff, Class, and Collective members perform this off-the-clock work, but fail to pay them at the applicable hourly and overtime rates for this work time. This practice likewise violates the FLSA and the La. R.S.

7.      Therefore, Plaintiff files this action to recover on behalf of herself, Class and Collective members, all unpaid wages, compensation, penalties, and other damages owed to them under the FLSA and the La. R.S., individually, as a 29 U.S.C. § 216(b) collective action, and as a class action under Federal Rule of Civil Procedure 23, in order to remedy the sweeping policies which Acadia Healthcare Company, Inc. and Defendants have implemented and which have deprived Plaintiff, Class and Collective members of their lawfully-earned wages.

## SUBJECT MATTER JURISDICTION AND VENUE

8.      This court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 201, *et seq.*

9.      This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367. Plaintiff's state law claims are not preempted by the FLSA because Plaintiff seeks to recover wages under Louisiana state law to the extent those state law claims do not overlap with the FLSA's overtime provisions, including gap time claims for regular, non-overtime wages

owed and overtime claims on behalf of potential Class members who do not otherwise file a written consent to join the FLSA Collective.

10.     This court also has subject matter jurisdiction over Plaintiff's state law causes of action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Under CAFA, this court has original jurisdiction over Plaintiff's Rule 23 class action claims because the matter in controversy is believed to exceed $5,000,000, and because Plaintiff and one or more Defendants are citizens of different states. Moreover, the number of proposed class members in the Louisiana class is believed to exceed 100.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. Plaintiff resides in this judicial district, and the events giving rise to Plaintiff's claims occurred within this judicial district.

## PARTIES

12.     Plaintiff Amy Hamm is an individual residing in Destrehan, Louisiana. Plaintiff was employed as a nurse at Red River Hospital in Wichita Falls, Texas (which is an Acadia Healthcare Company, Inc. affiliated facility), and is currently employed by Defendants as a nurse at River Place Behavioral Health in LaPlace, Louisiana.

13.     Defendant Acadia LaPlace Holdings, LLC is a Delaware limited liability company. Upon information and belief, Acadia LaPlace Holdings, LLC's principal place of business is located in Franklin, Tennessee. Acadia LaPlace Holdings, LLC owns River Place Behavioral Health in LaPlace, Louisiana. Defendants admit that Acadia LaPlace Holdings, LLC is one of Plaintiff's "actual employer[s]." Acadia LaPlace Holdings, LLC may be served with process of service through its registered agent, The Corporation Trust Company, Corporate Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

14.     Defendant Ochsner-Acadia, LLC is a Delaware limited liability company with its principal place of business in Franklin, Tennessee, and is licensed to do business in Louisiana. Defendant Ochsner-Acadia, LLC operates River Place Behavioral Health, which is a behavioral health hospital in LaPlace, Louisiana. Defendant Ochsner-Acadia, LLC has appeared in this matter and may be served through its counsel of record.

15.     Upon information and belief, Acadia LaPlace Holdings, LLC and Ochsner-Acadia, LLC are subsidiaries, partners, and/or agents of Defendant Acadia Healthcare Company, Inc. Acadia Healthcare Company, Inc. created a complex web of shell companies, such as Defendants here and dozens of other corporate entities, to superficially "own" more than 500 healthcare facilities around the country. All the while, Acadia Healthcare Company, Inc. directs and controls those shell companies in a manner that suits Acadia Healthcare Company, Inc.'s interests.[1] Acadia Healthcare Company, Inc. drafts and implements human resources, payroll, timekeeping, and meal break policies at these Louisiana healthcare facilities, as well as facilities around the country.

16.     The FLSA Collective members are people who are or who have been employed by Defendants as non-exempt workers involved with patient care at any location owned and operated by Defendants during the time period beginning three years preceding the filing of this Complaint.

17.     The Louisiana Class members are people who have been employed by Defendants as non-exempt workers involved with patient care at any location in the state of Louisiana, and who voluntary resigned or were discharged from employment with Defendants, during the time period beginning three years preceding the filing of this Complaint.

18.     At all material times, Defendants have been an employer within the meaning of the FLSA under 29 U.S.C. § 203(d).

---

[1] Any reference to "Defendants" in this Complaint is not an admission or concession that Acadia Healthcare Company, Inc. or Acadia JV Holdings, LLC are not or were not an employer.

19.     At all material times, Defendants have been an enterprise within the meaning of the FLSA under 29 U.S.C. § 203(r).

20.     Plaintiff, Class and Collective members were and are employees of Defendants within the meaning of 29 U.S.C. § 203(e).

21.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because Defendants have had and continue to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

22.     Defendants acted as joint employers of Plaintiff, Class, and Collective members because all Defendants jointly, directly or indirectly, controlled the employment terms, pay practices, timekeeping practices, and daily work of Plaintiff, Class, and Collective members.

23.     Here, Defendants have had, and continue to have, an annual gross business volume of not less than $500,000, thereby exceeding the statutory standard. 26 U.S.C. § 203(s)(1)(A)(ii).

24.     In addition to Plaintiff, Defendants have employed numerous other employees, who like Plaintiff, are non-exempt employees engaged in interstate commerce. Further, Defendants are engaged in interstate commerce since they order supplies across state lines, conduct business deals with merchants across state lines, and process patient credit cards with banks in other states.

25.     At all material times, Plaintiff, Class and Collective members were employees who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.


**FACTS**

26.     Acadia Healthcare Company, Inc. is a multinational behavioral health care provider—it owns, operates, and/or manages more than 500 behavioral hospitals and healthcare facilities throughout the United States, including facilities in Louisiana.

-6-

27.     Defendants employs hundreds of hourly non-exempt workers across a network of healthcare facilities around Louisiana.

28.     Defendants employ a payroll policy and practice of not compensating hourly-paid nurses for work performed during their meal periods, subjecting them to interruptions and requiring them to remain on duty during those unpaid meal periods. Non-exempt healthcare workers are required to clock out for their 30-minute meal breaks every shift worked, regardless of whether those workers are required to remain on-duty as a matter of their ethical obligations to their patients, as well as pursuant to Defendants' stated policy that patient care workers should always remain responsive to patient needs throughout their shifts. These policies applies to all hourly-paid, non-exempt workers who are responsible for patient care, regardless of the location where those employees work.

29.     Class and Collective members are not effectively permitted to take a 30-minute uninterrupted and bona fide meal period due to the high demands of their jobs during the majority of their shifts. In the rate instances where they attempt a meal break, they remain on duty in that they are required to respond to calls from their patients, doctors, supervisors, patients' families, other facility staff, attend to the normal demands of the job, and otherwise respond to emergencies that might arise in a healthcare facility environment.

30.     Defendants encourage interruptions to Class and Collective members' meal periods by requiring Class and Collective members to respond to calls. Defendants permit management or other healthcare workers to interrupt employees' meal periods at any time they deem necessary. In practice, management discourages employees from reporting missed or interrupted meal periods. Employees are rarely paid for such hours, as a result. These policies and practices apply

to all hourly-paid, non-exempt staff who are responsible for patient care across all of Acadia Healthcare Company, Inc.'s facilities.

31.    Plaintiff is employed by Defendants as a nurse and her regular hourly rate of pay is $35.70 per hour. Plaintiff worked at the Acadia Healthcare Company, Inc. facility Red River Hospital in Wichita Falls, Texas from approximately February 2015 to December 2019. Plaintiff then worked for Defendants at the River Place Behavioral Health in LaPlace, Louisiana from approximately December 2019 to the present. As a nurse, Plaintiff's primary responsibilities include but are not limited to providing patient care and monitoring, administering medicine to patients, interacting with other hospital employees and visitors, monitoring patient vitals, completing charting and patient paperwork, and responding to emergency situations. Plaintiff is subject to Defendants' time, pay, meal period, and overtime policies and practices. Plaintiff routinely performed work during her entire shift, was subject to interruption during attempted meal periods, and was in fact interrupted or denied meal periods on a regular basis. Plaintiff also performed work while "off-the-clock" with Defendants' knowledge and was denied compensation for the time she spent engaged in this off-the-clock work.

32.    Plaintiff, Class, and Collective members' off-the-clock work includes monitoring patients, assisting hospital staff, charting, prepping and organizing equipment, and other various tasks performed before clocking in and after clocking out for their shifts. Plaintiff, Class, and Collective members are not compensated for this work performed outside of their recorded hours. Defendants know and are aware of the work performed while off-the-clock, because such work occurs due to Defendants' strict overtime policies, and because Class and Collective members have raised the off-the-clock issue with supervisors/managers on multiple occasions.

33.     During the course of her employment, Plaintiff learned that Defendants' policies and practices giving rise to the wage-and-hour violations alleged herein are consistent and universal across Acadia Healthcare Company, Inc.'s affiliated facilities, regardless of location. Acadia Healthcare Company, Inc. institutes the same policies and practices across all of their affiliated facilities, and uses proxy/intermediary shell companies, such as Defendants, to superficially "own" the facilities in an attempt to avoid liability. Acadia Healthcare Company, Inc. institutes a common set of payroll, timekeeping, meal break, off-the-clock, and overtime rules across all of its facilities, including the facilities that are superficially "owned" by Defendants, that subjects Class and Collective members to the same uniform course of treatment.

34.     Class and Collective members were and are employed by Defendant and perform work materially similar to Plaintiff.

35.     Plaintiff, Class and Collective members perform their jobs under Defendants' supervision and using materials and technology approved and supplied by Defendants.

36.     Acadia Healthcare implements the common timekeeping, payroll, meal break, off-the-clock, and overtime policies throughout its healthcare facilities nation-wide, which Class and Collective members are subjected to and required to follow.

37.     Plaintiff, Class and Collective members are required to follow and abide by Defendants' common work, time, pay, meal and rest break, and overtime policies and procedures in the performance of their jobs.

38.     At the end of each pay period, Plaintiff, Class and Collective members receive wages from Defendants that are determined by common systems and methods that Defendants select and control.

39.     Defendants pay Plaintiff, Class and Collective members on an hourly rate basis.

40.     Plaintiff worked more than forty hours in at least one workweek during the period beginning three years before preceding the filing of this Complaint. On average, Plaintiff worked approximately 52 hours per week each workweek.

41.     Each putative Collective member worked more than forty hours in at least one workweek during the period beginning three years preceding the filing of this Complaint.

42.     When Plaintiff, Class and Collective members work more than forty hours in a workweek, Defendants do not pay them one and one-half times their regular hourly rate due to Defendants' failure to include time worked during meal periods into the total hours worked in a given work week. This unpaid time is compensable under the FLSA and the La. R.S. because (1) Plaintiff, Class, and Collective members are not completely relieved of their duties, (2) they are interrupted or subject to interruption with work duties during any attempted meal period, and/or (3) they entirely skip the meal periods due to work demands.

43.     Throughout the relevant time period, Defendant expected and required Plaintiff, Class and Collective members to be available to work during their entire shifts, even during any attempted on-premises meal or rest breaks. These 30-minute intervals of time constitute compensable time under the FLSA and the La. R.S., which require that employers compensate employees for all time worked.

44.     Defendants have employed hundreds of people similarly situated to Plaintiff during the three-year period preceding to the filing of this Complaint.

45.     Defendants' method of paying Plaintiff, Class and Collective members was willful, and was not based on a good faith and reasonable belief that its conduct complied with the FLSA or the La. R.S.

## FLSA COLLECTIVE ACTION ALLEGATIONS

46.     Plaintiff brings this Complaint as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of the following class of individuals:

> **All current and former hourly, non-exempt employees involved with patient care, including but not limited to nursing staff, nurses, nursing assistants, nurse aides, technicians, clerks, non-exempt therapists, or other non-exempt employees with similar job duties employed at any facility owned/operated by Defendants during the time period three years prior to the filing of the original Complaint until resolution of this action (the "Collective").**

47.     Defendants have not compensated these employees for the unpaid meal periods as described above.

48.     Per 29 U.S.C. § 216(b), this action may be brought as an "opt-in" collective action for the claims asserted by Plaintiff because her claims are similar to the claims possessed by Collective members.

49.     Plaintiff has actual knowledge that Collective members have been denied compensation for hours worked, including meal periods worked or interrupted. In addition, Plaintiff has actual knowledge that Collective members have also been denied overtime pay for this work and would therefore likely join this collective action if provided a notice of their rights to do so, together with a clear statement that opting to join such an action would not result in termination or other forms of retaliation.

50.     Plaintiff is similarly situated to Collective members. Like Plaintiff, Defendants subjected Collective members to its common practice, policy, or plan of refusing to pay overtime for all work performed in clear violation of the FLSA.

51.     Other patient care staff similarly situated to Plaintiff work, or have worked, for Defendants but were not paid overtime at the rate of one and one-half times their regular hourly rate when those hours exceeded forty per workweek for meal periods during which they were not

completely relieved of their duties that were interrupted, interruptible, or entirely missed due to work demands.

52.     Although Defendants permitted and/or required Collective members to work in excess of forty hours per workweek, Defendants have denied them full compensation for their hours worked over forty for meal periods that were interrupted due to work demands, or subject to interruption.

53.     Collective members perform or have performed the same or similar work as Plaintiff involving patient care.

54.     Collective members regularly work or have worked in excess of forty hours during a workweek.

55.     Collective members are not exempt from receiving overtime compensation under the FLSA.

56.     Defendants' failure to pay overtime compensation as required by the FLSA resulted from generally applicable policies and practices and did not depend on the personal circumstances of Collective members.

57.     Although Plaintiff and Collective members may have different job titles and/or work in different departments or facilities, this action may be properly maintained as a collective action on behalf of the defined class because, throughout the relevant time period:

       a.   Defendants maintain common scheduling systems and policies with respect to Plaintiff and Collective members, control the scheduling systems and policies implemented throughout their facilities and retain authority to review and revise or approve the schedules assigned to Plaintiff and Collective members;

b.  Defendants maintain common timekeeping systems and policies with respect to Plaintiff and Collective members;

c.  Defendants maintain common overtime policies and practices with respect to Plaintiff and Collective members;

d.  Defendants maintain common payroll systems and policies with respect to Plaintiff and Collective members, control the payroll systems and policies applied to Plaintiff and Collective members, and set the pay rates assigned to Plaintiff and Collective members; and

e.  Defendants control the meal period work policies and practices at issue in this litigation and have the ability to deprive Plaintiff and Collective members of wages owed for meal period work they performed.

58.  The specific job titles or precise job responsibilities of each Collective member does not prevent collective treatment.

59.  Collective members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek for interrupted, interruptible, or missed meal periods.

60.  Although the exact amount of damages may vary among Collective members, the damages for Collective members can be easily calculated, summed, and allocated based on a simple formula.

61.  Plaintiff and Collective members' claims arise from a common nucleus of operative facts; namely, the continued and willful failure of Defendants to comply with its obligation to legally compensate their employees. Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all Collective members. Defendants have a plan, policy or

practice of not paying Plaintiff and Collective members for interrupted, interruptible, or missed meal periods, and for work that is performed while off-the-clock.

62.     As such, the collective of similarly situated Plaintiffs is properly defined as stated above. Plaintiff estimates the Collective, including both current and former employees over the relevant time period, will include upwards of 100 people or more. The precise number of Collective members should be readily available from Defendants' personnel, scheduling, time and payroll records, and from input received from Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b). The names and addresses of the Collective members are discoverable from Defendants' records. Given the composition and size of the Collective, notice may be provided via First Class Mail, e-mail, text message, and other modes of notice similar to those customarily used in representative actions.

## RULE 23 CLASS ACTION ALLEGATIONS

63.     Plaintiff brings causes of action as a class action on behalf of herself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). The **Louisiana Class** that Plaintiff seeks to represent is defined as follows:

> **All former hourly, non-exempt employees, providing patient care, including but not limited to nursing staff, nurses, nursing assistants, nurse aides, technicians, clerks, non-exempt therapists, or other employees with similar job duties employed by any hospital or healthcare facility owned and operated by Defendants in the state of Louisiana at any time beginning three years preceding the filing of this Complaint until resolution of this action (the "Louisiana Class").**

64.     This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

65.    <u>Numerosity</u>:  The potential members of the class are so numerous that joinder of all the members of the Class is impracticable. Plaintiff is informed and believes that the number of Louisiana Class members exceeds 40. This volume makes bringing the claims of each individual member of the class before this Court impracticable. Likewise, joining each individual member of the Louisiana Class as a plaintiff in this action is impracticable. Furthermore, the identities of the Louisiana Class will be determined from Defendants' records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Louisiana Class and Defendants.

66.    <u>Commonality</u>:  There are questions of law and fact common to Plaintiff and the Louisiana Class that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, but are not limited to:

i.    Whether Defendants had a policy and practice of requiring patient care workers to remain on duty during meal periods by subjecting them to interruption;

ii.    Whether Defendants directed, required, requested, and/or permitted Plaintiff and Louisiana Class members to work during unpaid meal periods;

iii.    Whether Defendants knew or should have known that Plaintiff and Louisiana Class members were not compensated for work performed during unpaid meal periods;

iv.    Whether Defendants directed, required, requested, and/or permitted Plaintiff and Louisiana Class members to work while off-the-clock;

v.   Whether Defendants knew or should have known that Plaintiff and Louisiana Class members were not compensated for work performed while off-the-clock;

vi.   Whether Defendants derived a benefit from Louisiana Class members being required to respond to the needs of patients during their unpaid meal periods pursuant to professional codes of conduct and Defendants' policies;

vii.   Whether Defendants intentionally interfered with and exercised dominion and/or control over wages and compensation due to Plaintiff and Louisiana Class members;

viii.   Whether Plaintiff and Louisiana Class members had the legal right to possess wages for work performed during unpaid meal periods and/or work performed while off-the-clock;

ix.   Whether Defendants were unjustly enriched by Plaintiff and Louisiana Class members' unpaid work; and

x.   The proper measure of damages, including whether the reasonable value of such services can be based on the agreed hourly rate of pay.

67.   <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Louisiana Class because Plaintiff's claims arise from the same course of conduct and legal theories as the claims of the Louisiana Class members. Like the Louisiana Class members, Plaintiff worked as a non-exempt employee involved in patient care for Defendants during the relevant time period. Like the Louisiana Class members, Plaintiff was subject to the identical company-wide policy, implemented at all of the facilities associated with or affiliated with Acadia Healthcare Company,

Inc., requiring patient care staff to remain on duty during meal periods and were subject to interruption during such times. Like the Louisiana Class members, Plaintiff was subject to the same professional code of conduct and company timekeeping and payroll policies requiring patient care staff to tend to the care of their patients even during the unpaid meal periods. The other facts outlined above likewise apply equally to both the Plaintiff and Louisiana Class members.

68.     <u>Adequacy of Representation</u>:  Plaintiff seeks relief for the past and prospective state law violations that were perpetrated by Defendants. In that sense, Plaintiff does not have any conflicts of interest with other Louisiana Class members and will prosecute the case vigorously on behalf of the Louisiana Class. Counsel representing Plaintiff is competent and experienced in litigating complex cases and large class actions, including wage and hour cases. Plaintiff will fairly and adequately represent and protect the interests of the Louisiana Class members.

69.     <u>Superiority of Class Action</u>:  A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all proposed Louisiana Class members is not practicable, and questions of law and fact common to the Louisiana Class predominate over any questions affecting only individual members of the Louisiana Class. Each proposed Louisiana Class member has been damaged and is entitled to recovery by reason of Defendants' illegal policies and/or practices. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

70.     In the alternative, the Louisiana Class may be certified because the prosecution of separate actions by the individual members of the Louisiana Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Louisiana Class which would establish incompatible standards of conduct for Defendants.

71.     If each individual Louisiana Class member was required to file an individual lawsuit, Defendants would necessarily gain an unconscionable advantage because Defendants would be able to exploit and overwhelm the limited resources of each member of the Louisiana Class with Defendants' vastly superior financial legal resources.

72.     Requiring each individual Louisiana Class member to pursue an individual remedy would also discourage the assertion of lawful claims by the Louisiana Class members who would be disinclined to pursue these claims against Defendants because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being.

### FIRST CAUSE OF ACTION
**Violations of 29 U.S.C. § 207**
**Failure to Pay Overtime Compensation for On-Duty Meal Periods**
**(FLSA Collective Action)**

73.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

74.     Plaintiff and Collective members, Defendants' employees, are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

75.     The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times their regular hourly rate for all hours worked in excess of forty hours per week.

76.     Throughout the relevant time period, Defendants exercise a policy permitting management to interrupt employees' meal periods at any time it deems it necessary. Under this policy, Defendants require Plaintiff and Collective members to be available to work and/or to be on duty during their meal periods.  As a result, Plaintiff and Collective members perform work during their meal periods for which they were not compensated.

77.     Plaintiff and Collective members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of overtime wages owed for hours worked and from which Defendants derive a direct and substantial benefit.

78.     Defendants cannot satisfy their burden of proof to demonstrate Plaintiff and Collective members receive bona fide meal periods.

79.     Defendants violate and continue to violate the FLSA when they it fails to pay Plaintiff and Collective members under 29 U.S.C. § 207 as non-exempt employees. Because of these violations, Plaintiff and Collective members have suffered a loss of wages.

80.     Defendants' failure to pay overtime to Plaintiff and Collective members, in violation of the FLSA, was willful and not based on a good faith belief that its conduct did not violate the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Accordingly, a three-year limitations period should apply to Plaintiff and Collective members' claims.

81.     Because of Defendants' willful violation, Plaintiff and Collective members are also due an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

82.     Plaintiff and Collective members are further entitled to reasonable attorneys' fees and costs of the action in addition to any judgment awarded.


**SECOND CAUSE OF ACTION**
**Violations of 29 U.S.C. § 207**
**Failure to Pay Overtime Compensation for "Off-the-Clock" Work**
**(FLSA Collective Action)**

83.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

84.     Throughout the relevant time period, Defendants suffer and/or permit Plaintiff to work additional time outside of her shift for work-related tasks. These tasks include, but are not

limited to, conducting shift change reports, monitoring patients, assisting hospital personnel, reviewing or completing charting, and other tasks or services for the benefit of Defendants.

85.     Plaintiff is actively discouraged from logging time outside the parameters set by Defendants. However, due to the demands of the job, Plaintiff routinely performs work-related tasks outside of her scheduled shift, before she clocks in and after she clocks out. Upon information and belief, Defendants treat all putative Collective members similarly with respect to "off-the-clock" work.

86.     Defendants are and have been aware of this off-the-clock work because such work is due to the strict overtime policies set by Defendants, and also because Plaintiff and other putative Collective members have informed their supervisors and other managerial employees of the systematic off-the-clock work problems.

87.     Accordingly, consistent with the policies and procedures set up by Defendants, Plaintiff performs work for which she is not compensated. Defendants' policies and practices favor Defendants at the expense of Plaintiff and putative Collective members.

88.     Defendants violated and continue to violate the FLSA when they fail to pay Plaintiff and putative Collective members for "off-the-clock" work under 29 U.S.C. § 207 as non-exempt employees. Because of these violations, Plaintiff and putative Collective members suffer wage losses during weeks where the total time worked (logged and unlogged) exceeds forty hours.

89.     Defendants' failure to pay overtime to Plaintiff and putative Collective members, is willful and not based on a good faith belief that their conduct did not violate the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Accordingly, a three-year limitations period should apply to Plaintiff and putative Collective members' claims.

90.     Because of Defendants' willful violation, Plaintiff and putative Collective members are also due an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

91.     Plaintiff and putative FLSA Class members are further entitled to reasonable attorneys' fees and costs of the action in addition to any judgment awarded.

### THIRD CAUSE OF ACTION:
**Violation of La. Civ. Code Art. 2315**
**Conversion**
**(Louisiana Class Action)**

92.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

93.     Defendants intentionally interfered with and exercised dominion and control over wages and compensation that the Louisiana Class members had the legal right to possess as herein alleged.

94.     As a result of Defendants' violations of La. Civ. Code Art. 2315, the Louisiana Class members are entitled to recover the wages unlawfully withheld by Defendants to the extent same does not overlap with or duplicate the FLSA damages alleged herein, costs of the action, and pre- and post-judgment interest pursuant to La. Civ. Code Art. 2315.

### FOURTH CAUSE OF ACTION:
**Violations of La. Civ. Code Art. 2298**
**Unjust Enrichment**
**(Louisiana Class Action)**

95.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

96.     Additionally, and in the alternative, Defendants have enriched themselves without cause as a result of refusing to pay the Louisiana Class members all wages to which they are entitled.

97.     Defendants' enrichment was at the Louisiana Class members' expense because they would have received the money owed had Defendants not intentionally and willfully violated federal and state wage laws through its payroll and timekeeping practices as described herein.

98.     The Louisiana Class members allege unjust enrichment in the alternative to their Louisiana state-law conversion claims.

99.     As a result of Defendants' willful violations of La. Civ. Code Art. 2298, the Louisiana Class members are entitled to recover their unpaid wages to the extent same does not overlap with or duplicate the FLSA damages alleged herein, and pre- and post-judgment interest under La. Civ. Code Art. 2298.

## RELIEF SOUGHT

100.    Plaintiff and Collective members are entitled to recover their unpaid overtime wage compensation pursuant to the FLSA.

101.    Plaintiff and Collective members are also entitled to an amount equal to all of their unpaid wages due under the FLSA as liquidated damages.

102.    Plaintiff and Collective members are entitled to recover attorneys' fees and costs as required by the FLSA. 29 U.S.C. § 216(b), La. Rev. Stat. § 23:635, and/or Fed. R. Civ. P. 23.

103.    Plaintiff and Class members are entitled to recover damages flowing from the reasonable value of the services they provided, all monies held by Defendants that rightfully belong to Plaintiff and Class members, the value by which Defendants were unjustly enriched by receiving the unpaid labor, attorney's fees and costs, pre-judgment and post-judgment interest as provided by Louisiana law, and such other relief the Court deems fair and equitable (to the extent same does not duplicate or overlap with the damages owed pursuant to the FLSA).

104.    Plaintiff and Louisiana Class members are entitled to recover damages in an amount equal to their unpaid wages due and/or deductions to their wages unlawfully made, as well as penalty wages, to the extent same does not duplicate or overlap with the damages owed pursuant to the FLSA.

105.    Plaintiff and Louisiana Class members are entitled to declaratory relief stating Defendants' actions as described herein were and are unlawful.

## **JURY DEMAND**

106.    Plaintiff hereby requests a jury trial on all claims and issues for which Plaintiff is entitled to a jury.

## **PRAYER**

107.    For these reasons, Plaintiff, Class and Collective members respectfully request that judgment be entered in their favor awarding the following relief:

i.   An order preventing Defendants from retaliating in any way against Plaintiff and any putative Class or Collective member who joins or elects not to opt-out of the present suit based on their pursuit of these claims alleged herein;

ii.  An order designating this action as a collective action on behalf of the Collective and issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals;

iii. For a declaratory judgment that Defendants violated the Fair Labor Standards Act as alleged herein;

iv.  An order finding Defendants violated the FLSA willfully;

v.   An order awarding Plaintiff and the Collective all unpaid overtime wages due under the FLSA with interest thereon;

vi.   An order awarding Plaintiff and the Collective an equal amount as liquidated damages as allowed under the FLSA;

vii.   An order awarding Plaintiff and the Collective reasonable attorneys' fees, costs, and expenses of this action as provided by the FLSA;

viii.   An order certifying this case as a Class Action under Rule 23 of the Federal Rules of Civil Procedure for all state-law causes of action asserted;

ix.   An order finding that Defendants violated Louisiana law;

x.   An order awarding Plaintiff and the Louisiana Class payment of all unpaid wages, including regular wages and overtime wages, due under Louisiana law to the extent same does not duplicate wages due under the FLSA;

xi.   An order awarding Plaintiff and the Louisiana Class payment of all penalty wages that may be available under Louisiana law;

xii.   An order awarding Plaintiff and the Louisiana Class all attorneys' fees, costs and disbursements as provided by Louisiana law;

xiii.   An order awarding Plaintiff and the Louisiana Class pre- and post-judgment interest as provided by Louisiana law; and

xiv.   Such other and further relief to which Plaintiff, Class and Collective members may be entitled at law or in equity.

Dated: June 24, 2021

/s/ _____

Joseph C. Peiffer (La. Bar No. 26459)
Daniel Centner (La. Bar No. 33055)
PEIFFER WOLF CARR KANE &
CONWAY, APLC
1519 Robert C. Blakes, Sr. Drive
New Orleans, Louisiana 70130
T: 504-523-2434
JPeiffer@pwcklegal.com
DCentner@pwcklegal.com

Carolyn H. Cottrell (*Pro Hac Vice*)
David C. Leimbach (*Pro Hac Vice*)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100; Fax: (415) 421-7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com

William M. Hogg (*Pro Hac Vice*)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
3700 Buffalo Speedway, Suite 960
Houston, Texas 77098
Tel: (713) 338-2560; Fax: (415) 421-7105
whogg@schneiderwallace.com

*Counsel for Plaintiff, Class, and Collective
Members*