UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AMY HAMM,**<br>        **Plaintiff** | **CIVIL DOCKET** |
| **VERSUS** | **NO. 20-1515** |
| **ACADIA HEALTHCARE CO., INC., ET AL.,**<br>        **Defendants** | **SECTION: "E"** |

### ORDER AND REASONS

Before the Court is a motion for sanctions against Plaintiff's counsel under FRCP 11 filed by Defendants Acadia LaPlace Holdings, LLC and Ochsner-Acadia LLC.[1] Plaintiff Amy Hamm opposes,[2] and Defendants filed a reply.[3] Following a reopened deposition of the Plaintiff, Defendants filed a sur-reply,[4] and Plaintiff was permitted to file a response to the sur-reply.[5] For the reasons that follow, the motion is **DENIED**. Nonetheless, counsel for the Plaintiff should be mindful of their obligations under Rule 11 and carefully consider the veracity of any information contained in future filings.

### I.     Background

Amy Hamm was a nurse supervisor at Red River Hospital in Wichita Falls, Texas, for roughly eight years. She then served as a nurse supervisor at River Place Behavioral Health in LaPlace, Louisiana for eight months before voluntarily resigning.[6] At both of these locations, she alleges, the parent companies (who are the defendants in this lawsuit)

---

[1] R. Doc. 98.
[2] R. Doc. 102. Although this motion for sanctions against Plaintiff's counsel and primarily regards the conduct of Plaintiff's counsel, rather than the Plaintiff herself, the Court will refer to counsel as "Plaintiff" throughout for simplicity's sake.
[3] R. Doc. 109.
[4] R. Doc. 126
[5] R. Doc. 127
[6] R. Doc. 98-2 at 3.

1

violated the Fair Labor Standards Act ("FLSA") and various state laws by failing to compensate nurses and other staff for work done during off-the-clock meal breaks.[7] She states that Defendants "employ a payroll policy and practice of not compensating hourly-paid nurses for work performed during their meal periods, subjecting them to interruptions and requiring them to remain on duty during those unpaid meal periods."[8] She seeks to have this action certified as a collective action to be brought on behalf of similarly situated employees who she claims have suffered the same injury.[9]

This motion, however, concerns her counsel's behavior in pursuing these claims. Specifically, defense counsel alleges that, "[d]espite now indisputably knowing that this lawsuit is meritless, Plaintiff's counsel are continuing to pursue ... baseless claims."[10] The genesis of this motion for sanctions under Rule 11 is in Hamm's deposition. During her deposition, defendants say, she "affirmatively den[ied] every single claim that Plaintiff's counsel ... asserted on her behalf" and testified that two documents served in discovery "contained false sworn statements that [Hamm] never reviewed or approved before they were served."[11]

It is clear that Hamm's initial deposition was, at the very least, problematic. Hamm was initially deposed on January 24, 2022.[12] On March 2, 2022, Plaintiff submitted a signed errata sheet to the court reporter pursuant to Rule 30(e).[13] Plaintiff made thirteen corrections to her deposition testimony.[14] Nearly all of these corrections were substantive,

---

[7] *See* R. Doc. 69.
[8] R. Doc. 69 at 7.
[9] R. Doc. 101.
[10] R. Doc. 98 at 1.
[11] R. Doc. 98-2 at 2.
[12] R. Doc. 103-4 at 1.
[13] R. Doc. 103-3.
[14] *Id.*

such as changing "no" to "yes," and the reasons given for these changes were short, generally just "Clarification" or "Correction."[15] Defendants moved to strike the errata sheet from the record or, alternatively, to reopen the Plaintiff's deposition because her changes were substantive.[16] Noting that "Plaintiff's original answers will remain on the record and may be used as impeachment evidence at trial,"[17] the Court denied Defendants' request to strike the deposition but granted their request to reopen the deposition at Plaintiff's cost.[18]

In the meantime, however, Defendants filed this motion for sanctions.[19] The Court, recognizing that the reopened deposition may well impact Defendant's claim for sanctions, permitted Defendants to seek leave to file a sur-reply to this motion following the reopened deposition.[20] Defendants now having done so,[21] the Court considers their arguments.

## II. Law

In pertinent part, Federal Rule of Civil Procedure 11 provides:

> By presenting to the court a pleading, written motion, or other paper … an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.[22]

---

[15] *Id.*
[16] R. Doc. 103-2 at 9-10.
[17] R. Doc. 119 at 2.
[18] *Id.*
[19] R. Doc. 98.
[20] R. Doc. 119 at 3.
[21] R. Doc. 126.
[22] Fed. R. Civ. Pro. 11(b).

The purpose of Rule 11 is to deter baseless filings in the district court and to spare innocent litigants and overburdened courts from the filing of frivolous lawsuits.[23] Under Fifth Circuit precedent, attorneys and litigants who sign a pleading, written motion, or other paper certify that they have complied with these three affirmative duties: (1) the duty to conduct a reasonable investigation into the facts supporting the document; (2) the duty to conduct a reasonable inquiry into the law to ensure the document "embodies existing legal principles or a good faith argument for extension, modification or reversal of existing law"; and (3) the duty to certify that a document is not filed or interposed merely for purposes of delay, harassment, or increasing litigation costs.[24] Courts judge compliance with Rule 11's standards under an objective reasonableness standard, evaluating the circumstances as they existed at the time the challenged filing was signed by the lawyer or litigant.[25] In light of the objective standard of reasonableness applied under Rule 11, an attorney's subjective good faith is not in itself sufficient to immunize him or her from sanctions based on a Rule 11 violation.[26] In deciding a motion under Rule 11, courts within the Fifth Circuit are required to determine whether the signatory has complied with the affirmative duties imposed under the rule.[27] District courts have wide latitude to impose sanctions under Rule 11 as district court rulings under Rule 11 are reviewed for abuse of discretion.[28] District courts possess discretion in determining the nature of the appropriate sanction.[29]

---

[23] *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).
[24] *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1023-24 (5th Cir. 1994).
[25] *See id.* at 1024.
[26] *See Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 873 (5th Cir. 1988).
[27] *See id.* at 875.
[28] *See Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir. 2003).
[29] *See Thomas*, 836 F.2d at 876-77.

### III. Analysis

Defendants' motion for sanctions, reply in support of its motion, and sur-reply in support of its motion, advance many different theories as to why sanctions are warranted in this case. In fact, the Court found itself wondering, at times, what defendants' primary arguments are. Nonetheless, the Court has narrowed the claims to three distinct categories of allegedly sanctionable conduct, namely: a lack of diligence in ensuring the veracity and viability of the initial claims, falsified signatures on documents, and counsel's refusal to voluntarily dismiss the lawsuit.

#### A. Lack of Diligence

The Court first reviews the allegation that Plaintiff's counsel failed to conduct a reasonable investigation into the facts supporting the claims in the initial and amended complaints, the opposition to the motion to dismiss, and the Plaintiff's interrogatory responses. Defendants claim there are "numerous false and frivolous filings and submissions in this case," including in the above-mentioned documents.[30] Among the false and frivolous claims made, they say, are the claims that the auto deduction practice was consistent at both Red River (in Texas) and River Place (in Louisiana) – claims which were stated in the original complaint[31] and, more explicitly, in an affidavit sworn to by Amy Hamm in opposition to a prior motion to dismiss.[32] In her deposition, however, Hamm stated that "I've been pretty consistent with the problems that I was having at Red River did not happen at River Place."[33] Likewise, Hamm testified that, at River Place, she

---

[30] R. Doc. 98-2 at 14.
[31] *See* R. Doc. 1 at 2 ("Defendants deduct 30 minutes from patient care workers' shifts for a meal period, when in fact they remain on duty and subject to interruption during that time."). Notably, this sentence was removed in the amended complaint. *See* R. Doc. 69 at 1-2.
[32] *See* R. Doc. 43-6 at 2 ("Both at Red River and River Place, the wage-and-hour policies and practices are consistent and universal.").
[33] R. Doc. 98-5 at 65.

5

was not discouraged from reporting missed or interrupted meal periods.[34] These claims, among others, contradicted the language in her initial complaint, and therefore merit further investigation by the Court.

The Fifth Circuit has identified six factors by which it may be evaluated whether or not a signatory has conducted a reasonable investigation:

> 1. the time available to the signer for investigation; 2. the extent of the attorney's reliance upon his client for the factual support for the document; 3. the feasibility of pre-filing investigation; 4. whether the signing attorney accepted the case from another member of the bar or forwarding attorney; 5. the complexity of the factual and legal issues; and 6. the extent to which development of the factual circumstances underlying the claim requires discovery.[35]

Defendants argue all of these factors weigh in favor of sanctions. It is certainly true that counsel had ample time for investigation – at the time the complaint was filed, Defendants submit (and Plaintiff does not dispute) that at least 10 and as many as 32 months remained on the statute of limitations for all of Plaintiff's claims.

As to the second factor, Defendants assert that, based on Plaintiff's deposition testimony, her counsel "did not even inquire into whether Plaintiff would factually support many of the false statements and allegations to which they signed their names."[36] Instead, Defendants claim, "it appears … they got the 'basis' for the claims here by copying those that they have previously alleged in other unrelated cases – and their apparently unrestrained desire to assert and obtain the fees from a nationwide collective against Acadia."[37] Putting aside the needless personal attack accusing Plaintiff's counsel of greed or malice, the Court notes this conclusion is neither supported by the deposition nor a good-faith reading of the complaint. Yes, it does appear that Plaintiff's counsel uses

---

[34] *Id.* at 66.
[35] *Childs*, 29 F.3d at 1026 (citations omitted).
[36] R. Doc. 98-2 at 16.
[37] *Id.*

6

similar language in various complaints nationwide,[38] but reuse alone is not sanctionable conduct. Re-use may be possible because there are industry-wide issues, and what matters is not that language is re-used but whether the language is supported by the particular facts of this case. Defendants state: "Plaintiff testified that she did not speak to her attorneys before the various fraudulent and false documents were filed or submitted on her behalf."[39] This is simply untrue. Hamm testified that she reviewed the complaint before it was filed and ensured it was true and accurate.[40] She likewise testified she remembered reviewing the amended complaint and ensuring that it too was accurate.[41] That she also testified in her deposition that some of the statements in the complaint were false may be used against her at trial but does not suggest that she did not speak with her lawyers prior to the filing of the lawsuit.

     Further, the Court is cognizant of the difficulties of a deposition for a non-lawyer. Depositions are long, difficult sessions in which it is easy for the deponent to be confused. This does not excuse falsehoods or reduce the probity of deposition testimony at trial, but it does merit a good-faith reading of certain answers. Clearly, Hamm was confused about the claims in this lawsuit, perhaps because of the dual track on which her claims are proceeding between this district and the Middle District of Tennessee.[42] Hamm also consistently stated that the complained-of injuries took place at Red River, even if not all of them occurred at River Place. Once this Court dismissed Red River from this lawsuit,[43] and once it became clear that certain practices were not present at River Place, Plaintiff

---

[38] *See* R. Doc. 98-2 at 4 n.3.
[39] R. Doc. 98-2 at 16.
[40] R. Doc. 98-5 at 63-64.
[41] *Id.* at 68.
[42] *See* R. Doc. 98-5 at 68-69 ("Q: So you believe that Red River is still part of this lawsuit? A: Yes. … Q: Not a part of your other lawsuit in Tennessee?" … [A:] I have no idea.").
[43] R. Doc. 50.

amended her complaint. At the time the complaint was filed, Hamm had only been working at River Place for a few months. She stated in her deposition that, at the time the complaint was filed, she believed that all wage-and-hour policies were universal because she was told so by an authority figure at Red River.[44] The Court sees no reason to believe Plaintiff's counsel failed to communicate with Hamm concerning the allegations in question prior to the filing of the initial complaint.

The third factor – the feasibility of pre-filing investigation – weighs against sanctions. As Plaintiff notes in opposition to this motion, "[f]actual information regarding the policies and practices of an employer – particularly in the healthcare sector – is generally not publicly available."[45] It was reasonable under the circumstances for counsel to rely on the representations and documentation provided to them by the Plaintiff. The fourth factor weighs in favor of sanctions, as it appears that Schneider Wallace did not accept the case from a forwarding attorney.[46] The fifth factor – the complexity of the factual and legal issues – weighs slightly in favor of sanctions, as there is no reason to suspect that this FLSA action is any more legally complex than the many other such actions in which Plaintiff's counsel is involved, especially given the recycled language in the complaint.[47] The sixth factor weighs against sanctions: as Plaintiff notes, it was not until discovery that counsel "could see … that Plaintiff clocked out on certain occasions, but not others, while working at River Place."[48]

---

[44] *See* R. Doc. 98-5 at 73 "(Q: Okay. So, then, what is it that leads you to allege that the wage-and-hour practices were consistent across all Acadia facilities? … [A:] Because Peggy told me that it was the way they did things through Acadia.").
[45] R. Doc. 102 at 20.
[46] *See* R. Doc. 102-1 ("Plaintiff contacted the Schneider Wallace Firm in November 2019, and signed a retainer at that time.").
[47] *See supra* n.38.
[48] R. Doc. 102-1 at 3.

8

Having considered these factors and the submissions in this case, the Court finds that Plaintiff's counsel did not fail to conduct a diligent investigation prior to filing the initial complaint. The initial complaint required amendment, and it was so amended. More concerning than the language of the initial complaint is Defendant's assertion that even the amended complaint "contain[s] numerous other patently false allegations whose inclusion Plaintiff's counsel do not even try to justify."[49] Defendants identify as false claims that "Plaintiff and nursing staff at River Place worked off-the-clock before and after shifts,"[50] that "Plaintiff and other nursing staff raised the issue of not being paid for interrupted meal breaks or off-the-clock work to management at River Place in order to claim these alleged violations were willful,"[51] and that "Plaintiff and nursing staff were discouraged from reporting missed meal breaks or clocking in when they worked outside scheduled shift times."[52] Hamm did testify to a time rounding policy at River Place, which would match the claims made about off-the-clock work,[53] but the remaining claims do appear to have taken place largely at Red River rather than River Place. The Court is not prepared to dismiss the whole case over these issues but will ensure that no claims will succeed where no foundation is admitted.

### B.   *Falsified Signatures*

Defendants also submit that Plaintiff's counsel either must have known about the falsity of their documents prior to filing or otherwise forged their client's signature on the

---

[49] R. Doc. 109 at 2.
[50] R. Doc. 109 at 3 (citing R. Doc. 69 at ¶¶ 2, 6, 31–33, 61, 83–91).
[51] R. Doc. 109 at 3 (citing R. Doc. 69 at ¶¶ 32, 86).
[52] R. Doc. 109 at 3 (citing R. Doc. 69 at ¶ 30).
[53] *See* R. Doc. 98-5 at 52-53.

9

interrogatory responses presented to Defendants in discovery.[54] They rest this conclusion on testimony offered by Hamm in her deposition – testimony that even Plaintiff's counsel admit is "puzzling."[55] Hamm testified she did not recognize the interrogatory responses document, testified that though her signature appeared to be present on the verification page, she did not recall signing the document, and testified that some of the answers to the interrogatories are not true.[56] Hamm also testified, however, that she recalled answering the questions posed in the interrogatories, and that she gave verbal responses to those questions.[57] Defendants submit this is evidence of sanctionable conduct: "it is difficult to conceive of why Plaintiff's counsel would forge their client's signature on the verification page – *a forgery that they do not deny* – unless they knew that the responses were false and would not be verified."[58] Forgery of a signature would indeed constitute sanctionable conduct. However, the evidence suggests that the signature was not forged – it instead suggests that Hamm was less than diligent in her review of the document. The e-verification for Hamm's signature suggests that Hamm viewed the document on September 9, 2021 at 09:18:59 and that she signed it less than a minute later at 09:19:50.[59] Though Plaintiff's counsel perhaps ought to have noticed this and followed up with Hamm to ensure that she had in fact thoroughly reviewed the interrogatory responses, the Court does not think that their failure to do so is sanctionable.[60]

---

[54] Plaintiffs contend that, in any case, this is outside of the scope of a Rule 11 motion for sanctions. The Court need not decide that at this time, as it finds no sanctionable conduct, but it is worth noting that Rule 26(g) applies a similar obligation to counsel regarding signatures on discovery responses.
[55] R. Doc. 102 at 2.
[56] R. Doc. 98-5 at 74-85.
[57] R. Doc. 98-5 at 75.
[58] R. Doc. 98-2 at 20 (emphasis in original) (citation omitted).
[59] R. Doc. 102-8 at 24.
[60] The Court finds puzzling Defendants' suggestion that the interrogatory response document served on the Defendants is a different document than that presented to the Court (and, by implication, Hamm). See R. Doc. 109 at 8 n.15. The document ID present on the signature pages of both documents (those found in R. Doc. 98-5 and R. Doc. 102-8) are identical, and it does not surprise the Court that a document ID would be

C.     *Continuation of the Lawsuit*

Finally, Defendants submit the very maintenance of this "frivolous" lawsuit is sanctionable conduct. They contend that "fundamental and material parts of [Plaintiff's] alleged claims" are "indisputably false" and remain in the lawsuit. The Court disagrees. Among other things, Hamm stated in her deposition testimony that she was "interrupted when [she] did punch out" for breaks at River Place,[61] which is largely the basis for her claim. As the Court has already noted, it does not appear this lawsuit is frivolous or unfounded. The Court is not ruling on the merits of this claim or any claim – the question is merely whether counsel's conduct is sanctionable. The Court, exercising its discretion, finds that it is not.

Finally, in sur-reply in support of their motion for sanctions, Defendants argue that Plaintiff's counsel induced their client to commit perjury, state that the errata sheet only makes sense as an invention of counsel, and argue that Hamm's answers at the reopened deposition were "wholly inconsistent with her prior sworn testimony and patently absurd."[62] The Court will not address these claims in detail as they are not within the scope of this Rule 11 motion, which concerns filings with this Court rather than litigation tactics, but notes only that the record reflects Hamm's statements that the changes were her own.[63] The Court does not consider Defendants' motion "specious" or "sanctionable" as Plaintiffs would have it, but nothing in the reopened deposition or the sur-reply

---

largely scrubbed before going to opposing counsel. In any case, the language of the interrogatory responses does not change between the versions, which is of more importance than the formatting.
[61] R. Doc. 98-5 at 81-82.
[62] R. Doc. 126 at 5.
[63] *See* R. Doc. 127-3 at 34 (in which Hamm asserts that the errata sheet contains her words and that no one told her what to say).

thereafter filed convinces the Court that Plaintiff's counsel has committed sanctionable conduct under Rule 11 or any other standard.

### IV. Conclusion

Defendant's motion is not wholly without merit. In one reading of Plaintiff's deposition, this lawsuit could have proceeded only against Red River. Its dismissal from this case would therefore be fatal. In another, more good-faith reading of the deposition, Plaintiff was sometimes confused and inexact but not perjurious. Certain claims applied only to Red River, but not all. Plaintiff did not draft her own legal documents but was certainly involved in their creation. Based on a thorough review of the transcript and the filings surrounding this motion, the Court takes the latter view of the whole affair.

It is certainly apparent the Plaintiff was not thorough in her review of the documents being prepared on her behalf, and Plaintiff's counsel perhaps ought to have been more diligent in ensuring Plaintiff's participation in document preparation and review. But it is equally apparent that the role of a lawyer is in part to translate into legal form those allegations and answers which are presented to them by non-lawyer clients; there is no need for Hamm herself to have prepared the documents in question. Plaintiff's counsel are forewarned that the Court will continue to view all pleadings carefully and will be especially attentive to these issues as the case progresses. Defendants' counsel are reminded of their obligation to remain civil and avoid *ad hominem* attacks against opposing counsel – such as allegations that Plaintiff's counsel is motivated by an "unrestrained desire to assert and obtain fees from a nationwide collective against Acadia"[64] – no matter how frustrated they are by the situation. Plaintiff's counsel likewise

---

[64] R. Doc. 98-2 at 16.

should refrain from personal attacks. It is the Court's role, not either counsel's, to admonish parties. In this instance, while circumstances were certainly not altogether tidy and orderly, the Court has not found any sanctionable conduct.

Accordingly,

**IT IS ORDERED** that the motion for sanctions is **DENIED**.

**New Orleans, Louisiana, this 28th day of June, 2022.**

                                                        **SUSIE MORGAN**
                                  **UNITED STATES DISTRICT JUDGE**