UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AMY HAMM,** **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1515** |
| **ACADIA HEALTHCARE CO., INC., ET AL.,** **Defendants** | **SECTION: "E" (3)** |

## ORDER AND REASONS

Before the Court is a motion for distribution of notice pursuant to the Fair Labor Standards Act by Plaintiff Amy Hamm.[1] Defendants Acadia Laplace Holdings and Oschner-Acadia oppose,[2] and Plaintiff filed a reply.[3] For the reasons that follow, the motion is **GRANTED IN PART AND DENIED IN PART**. The Collective shall be certified, but the Court will not equitably toll the statute of limitations. Counsel are ordered to confer regarding the proposed notice and consent forms.

### I.  Background

Amy Hamm was a nurse supervisor at Red River Hospital in Wichita Falls, Texas, for roughly eight years. She then served as a nurse supervisor at River Place Behavioral Health in LaPlace, Louisiana for an additional eight months.[4] At both of these locations, she alleges, the parent companies (who are the defendants in this lawsuit) violated the Fair Labor Standards Act ("FLSA") and various state laws by failing to compensate nurses and other staff for work done during off-the-clock meal breaks.[5] She states that

---

[1] R. Doc. 101.
[2] R. Doc. 113.
[3] R. Doc. 120.
[4] R. Doc. 101-1 at 3-4.
[5] *See* R. Doc. 69.

1

Defendants "employ a payroll policy and practice of not compensating hourly-paid nurses for work performed during their meal periods, subjecting them to interruptions and requiring them to remain on duty during those unpaid meal periods."[6] She seeks to have this action certified as a collective action to be brought on behalf of similarly situated employees who she claims have suffered from this same policy.[7]

Initially, Plaintiff sought to have the Court apply the *Lusardi* standard for certification of a collective action.[8] However, as the Fifth Circuit has rejected the *Lusardi* standard,[9] the Court denied the motion for conditional certification and authorized preliminary discovery as to certain relevant details, as detailed below.[10] That discovery having been concluded, Plaintiff brings this present motion, seeking to have a collective defined as follows:

> All current and former hourly, non-exempt employees involved with patient care, including but not limited to nurses, nursing staff, nursing assistants, nurse aides, technicians, clerks, nonexempt therapists, or other non-exempt employees with similar job duties employed at any facility owned/operated by Defendants during the time period three years prior to the filing of the original Complaint until resolution of this action (the "Collective").[11]

Plaintiff contends Hamm and the putative collective members are similarly situated and the case should proceed as a collective action. Additionally, Plaintiff seeks equitable tolling for the opt-in plaintiffs "as a result of the delay preventing Plaintiff from seeking to distribute notice earlier in the case."[12] Finally, Hamm provides potential notice forms and asks the Court to approve them.

---

[6] R. Doc. 69 at 7.
[7] R. Doc. 101.
[8] R. Doc. 79.
[9] *See Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021).
[10] *See* R. Doc. 85.
[11] R. Doc. 101-1 at 2.
[12] R. Doc. 101-1 at 20.

## II.    Law

Under binding Fifth Circuit precedent, "a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly."[13] In compliance with this dictate, this Court authorized discovery as to the following items:

> Categories of all direct patient care employees (such as registered nurses, licensed practical nurses, aides, medical technicians, medical assistants, therapists, and the like) who are paid on an hourly basis; Time keeping and time reporting policies and procedures for each category; Lunch and other break policies and procedures for each category; Policies and procedures for compensating employees whose lunch or other breaks are interrupted by work duties; Ethical codes and policies applicable to each category requiring employees to remain on-duty to attend to any patient care needs that may arise during break time; and Policies and procedures requiring pre-approval of overtime for each category and disciplinary actions for failure to comply.[14]

Those having been provided by Defendants to the Plaintiff and this Court, the Court can proceed with its duty to "rigorously scrutinize the realm of 'similarly situated' workers."[15]

To determine whether Plaintiff has met her burden of showing the putative collective action members are similarly situated, the Court will consider three factors: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."[16] "'Several courts have held that putative class

---

[13] *Swales*, 985 F.3d at 441.
[14] R. Doc. 85 at 8.
[15] *Swales*, 985 F.3d at 434.
[16] *Badon v. Berry's Reliable Res., LLC*, No. 19-12317 c/w No. 20-584, 2021 WL 933033, at *3 (E.D. La. Mar. 11, 2021) (alteration in original) (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)); *see also Torres v. Chambers Protective Servs., Inc.*, No. 20-CV-212-H, 2021 WL 3419705, at *3 (N.D. Tex. Aug. 5, 2021) (citing *Segovia v. Fuelo Energy L.L.C.*, No. SA-17-CV-1246-JKP, 2021 WL 2187956, at *7 (W.D. Tex. May 28, 2021)).

3

members must show they were affected by a common policy, plan, pattern or practice' to meet the similarly situated requirement."[17] "The key consideration is that to be 'similarly situated,' there must be 'substantial allegations that potential members "were together the victims of a single decision, policy, or plan."'"[18] "[G]eographic commonality is not necessary to meet the 'similarly situated' requirement for a FLSA collective action; instead the focus is on whether the employees were impacted by a common policy."[19]

The fact that members of the putative collective class work in different facilities or have different job titles does not preclude a finding that they are similarly situated.[20] In *Torres v. Chambers Protective Services, Inc.*, the United States District Court for the Northern District of Texas held the fact that the employees "have different supervisors, work on different teams, have some varying job duties, and work in different locations" did not prevent a finding that they were similarly situated.[21] The court reasoned "these differences are separate from the alleged unlawful practice—failure to pay overtime wages"—because "none of these differences diminish [the plaintiff's] evidence" of the alleged unlawful practice.[22] Similarly, in *Loy v. Rehab Synergies, LLC*, the United States District Court for the Southern District of Texas held the fact that the purported collective action members "'worked in five different job titles, reporting to different managers at different facilities at different times within the last six years;' worked different schedules; [and] had different 'productivity requirements'" did not preclude a finding they were

---

[17] *Loy v. Rehab Synergies, LLC*, No. 7:18-cv-00004, 2021 WL 3931926, at *8 (S.D. Tex. Sept. 2, 2021) (quoting *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 535-36 (S.D. Tex. 2008)).
[18] *Caballero v. Kelly Servs., Inc.*, No. H–14–1828, 2015 WL 12732863, at *3 (S.D. Tex. Oct. 5, 2015) (quoting *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010)).
[19] *Loy*, 2021 WL 3931926, at *8 (quoting *Vargas v. Richardson Trident Co.*, No. H–09–1674, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010)).
[20] *See, e.g.*, *Torres*, 2021 WL 3419705, at *6; *Loy*, 2021 WL 3931926, at *11.
[21] *Torres*, 2021 WL 3419705, at *6.
[22] *Id.*

similarly situated because these differences were "not material to the merits questions in this case."[23]

### III. Analysis

#### A. *Viability of the Claim*

Plaintiff submits that hourly, non-exempt employees of Acadia involved in patient care were all subject to a common and violative policy whereby their meal breaks were subject to interruption at any time and were therefore "predominantly or primarily for the benefit of the employer."[24] The Court need not make any determination on the merits of this claim today; "the sole consequence of conditional certification is the sending of court-approved written notice to employees."[25] However, as Defendants note, the Court must ensure that Plaintiff can demonstrate the relevant policy could have "result[ed] in an FLSA violation."[26] The Fifth Circuit has held employees who "were available to handle any conditions that might arise" during a meal break may be said to have been "performing services" for their employer "even when their meal breaks were not interrupted," and therefore a policy by which employees' meal breaks were unpaid violated the FLSA.[27] Defendants retort that their policies provide "[i]f it becomes necessary for employees to remain on duty during their meal breaks or if they are called back to work by management, employees will be paid for the entire meal break."[28] This, however, does not address the issue – the remaining claim, as the Court sees it, is not that Plaintiff was subject to unpaid time after interruption but that all meal breaks are subject

---

[23] *Loy*, 2021 WL 3931926, at *11 (footnote omitted) (internal quotation marks omitted).
[24] *Bernard v. Ibp, Inc.*, 154 F.3d 259, 265 (5th Cir. 1998).
[25] *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).
[26] *Hubbard v. Gen. Dynamics Info. Tech., Inc.*, 2019 U.S. Dist. LEXIS 110431, *23 (S.D. Miss. July 2, 2019).
[27] *Bernard*, 154 F.3d at 266.
[28] R. Doc. 101-5 at 2.

5

to possible interruption and therefore to be considered "on-duty" time. The policy provides: "[a] meal break may be interrupted by management when it is necessary for employees to return to work."[29] Further, defendants admit, "in emergency situations …, a nurse has an ethical duty [to] respond if another provider is not available to provide the needed services, even when on a break."[30] The Court does not here determine that Acadia's policies are in violation of the FLSA, but the claim is certainly viable enough to survive this stage of inquiry.[31]

   B.   "Similarly Situated" Analysis

Plaintiff claims the proposed collective is comprised of "similarly situated" individuals because all individuals included in the proposed collective "provide direct patient care services" and are "required to abide by and adhere to River Place's human resources policies and Code of Conduct," which together enshrine the allegedly offensive policies.[32] There is no dispute that the policies in question apply equally to each member of the proposed collective.[33] Instead, Defendants contend Hamm is not similarly situated to the other potential members of the collective because she was a supervisor at River Place.[34] They also submit that Hamm's apparent inability to find any other River Place

---

[29] R. Doc. 101-5 at 3.
[30] R. Doc. 101-16 at 6.
[31] In Plaintiff's initial deposition testimony, she testified that she did not believe herself to be "on-duty" during her breaks at River Place. In an errata sheet that became the subject of much consternation, *see* R. Doc. 119, Plaintiff modified this testimony. The Court has accepted her modified testimony and so need not address this issue here.
[32] R. Doc. 101-1 at 13.
[33] The Court notes Defendants' suggestion that "involved with patient care" is too vague a description of job duties for this proposed collective. *See* R. Doc. 113 at 7. As such, the Court will add "directly" to the certified collective prior to that phrase. The Court also notes that this appears to have been Plaintiff's intent in presenting the definition. *See* R. Doc. 120 at 7 n.13 ("the collective Plaintiff seeks to send notice to is limited to those workers with direct patient-care duties").
[34] R. Doc. 113 at 7-9.

employees to join this lawsuit demonstrates that she is not similarly situated to the proposed collective.[35] The Court considers each of these arguments in turn.

First, Defendants submit that, as supervisor, Hamm was responsible for enforcing the very policies she now complains about. In her deposition, Hamm testified that: as a supervisor, she was responsible for making sure people got meal breaks,[36] she was responsible for ensuring that employees followed timekeeping policies,[37] and she was not aware of any issues with not being paid for overtime or being told to work off the clock at River Place.[38] None of this testimony approaches the ultimate issue. Hamm's meal break was as susceptible to interruption as those of her supervisees; the claim here concerns unpaid meal breaks – whether or not they were interrupted – rather than unpaid overtime as such. Hamm likewise testified her general inability to take a meal break was because she was a supervisor, and that other nursing staff were generally unaffected by that issue.[39] It remains an open question whether or not breaks were so subject to interruption as to be violative of the FLSA, and this testimony may be probative in that discussion. It does not, however, demonstrate that meal breaks of non-supervisors were never interrupted. In fact, the declarations Defendants provide demonstrate that meal breaks were subject to interruption, albeit infrequently.[40] "Similarly situated does not mean

---

[35] R. Doc. 113 at 9.
[36] R. Doc. 113-1 at 6.
[37] R. Doc. 113-1 at 28.
[38] R. Doc. 113-1 at 28-29.
[39] R. Doc. 113-1 at 35.
[40] *See* R. Doc. 113-2 at 3 ("On a few rare occasions, I have either been unable to take a meal break or have had my meal break interrupted to perform emergency work duties."), R. Doc. 113-4 at 3 ("When I did take a meal break, it was very rare that my meal break was interrupted to perform emergency work duties."), and R. Doc. 113-5 at 3 ("On very rare occasions my meal break is interrupted to perform emergency work duties.").

identically situated."[41] Hamm and her supervisees were subject to the same possibility of break interruption. They were therefore similarly situated.

Alternatively, Defendants claim that the "notable absence of a single other patient care employee at River Place supporting or willing to join this lawsuit shows that Plaintiff is not similarly situated with her proposed collective."[42] In support of this claim, they cite several district court decisions – one in which it was held that certification was unwarranted where the Plaintiff "failed to identify any other potential plaintiffs, failed to obtain affidavits from any potential plaintiffs, and failed to provide evidentiary support for the existence of a widespread plan or policy,"[43] another in which the Court held that "Plaintiffs' inability to procure affidavits from potential opt-in plaintiffs strongly suggests that there is no class of similarly situated Lease Supervisors managers/operators who are willing to participate in this collective action,"[44] and one more, strongest of all, which states that "[a]ffidavits asserting that other potential plaintiffs wish to opt into the lawsuit are a nearly universal prerequisite to notice and conditional certification of an FLSA collective action."[45] As Plaintiff notes, however, Hamm's employment at River Place ended nearly two years ago, so she has not been able to remain in contact with other potential members of the collective. Further, in light of the new *Swales* standard, the Court denied Hamm's request to receive contact information for potential collective members.[46] As a result, the Court does not find the lack of any supporting affidavits to be determinative.

---

[41] *Crain v. Helmerich & Payne Int'l Drilling Co.*, 1992 U.S. Dist. LEXIS 5367, *4 (E.D. La. April 16, 1992) (citations omitted).
[42] R. Doc. 113 at 9.
[43] *Farrow v. Ammari of La., Ltd.*, 2016 U.S. Dist. LEXIS 69299, *7 (E.D. La. May 25, 2016).
[44] *Mallory v. Lease Supervisors, LLC*, 2018 U.S. Dist. LEXIS 114106, *8 (E.D. La. July 10, 2018).
[45] *Mason v. Amarillo Plastic Fabricators*, 2015 U.S. Dist. LEXIS 95624, *10 (N.D. Tex. July 22, 2015).
[46] R. Doc. 85 at 9.

C.    *Equitable Tolling*

A cause of action under the FLSA "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."[47] An action is commenced for the purposes of calculating the statute of limitations when the complaint is filed.[48] In a collective action, however, this holds true only for named plaintiffs who also file their written consent to become a party plaintiff on that date.[49] For named plaintiffs who do not file their written consent when the complaint is filed or for opt-in plaintiffs, the action is commenced "on the subsequent date on which such written consent is filed in the court in which the action was commenced."[50]

The Fifth Circuit has adopted a strict view of the FLSA's limitations period, stating "[w]e cannot alter the express terms of the statute."[51] However, principles of equitable tolling apply to cases brought under the FLSA because "the doctrine . . . is 'read into every federal statute of limitations.'"[52] "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable."[53] "Equitable tolling applies only in rare and exceptional circumstances," and courts most frequently grant requests for equitable tolling "where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from

---

[47] 29 U.S.C. § 255(a).
[48] 29 U.S.C. § 256.
[49] *Id.*
[50] *Id.*
[51] *Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1130 n.5 (5th Cir. 1983).
[52] *Israel Antonio-Morales v. Bimbo's Best Produce, Inc.*, No. 08-5105, 2009 U.S. Dist. LEXIS 51833, at *1 (E.D. La. Apr. 20, 2009) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S. Ct. 582, 90 L. Ed. 743 (1946)).
[53] *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (internal quotation marks and citation omitted).

9

asserting his rights."[54] Courts also grant this remedy when, "despite all due diligence, a plaintiff is unable to discover essential information bearing on the existence of his claim."[55] The party invoking equitable tolling bears the burden of justifying the need for equitable tolling of the limitations period,[56] but the decision to ultimately invoke equitable tolling in a particular instance is left to the discretion of the district court, subject to appellate review only for abuse of discretion.[57]

The Plaintiff asserts that equitable tolling is justified because of the "extraordinary circumstances" attendant to the various delays attached to the litigation of this claim, including delays related to the motion to dismiss on jurisdictional grounds, the continuations of the preliminary conferences, the amendment of the complaint, and the delays associated with the process according to *Swales*. Because of these delays, Plaintiff submits, "[p]atient care workers have been unable to receive notice of their rights to assert their claims and have therefore been prevented from asserting their rights in this lawsuit."[58] As this Court has previously noted, however, "delays in certifying a class do not present extraordinary circumstances justifying equitable tolling."[59] The policies on which the claim in this suit are based are known to every potential class member and there is no reason to believe that any putative member has been actually prevented from asserting their rights in this lawsuit or any other. The Court will not toll the statute of limitations for opt-in plaintiffs.

---

[54] *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (internal quotation marks and citations omitted).
[55] *Pacheco v. Rice*, 966 F.2d 904, 906-07 (5th Cir. 1992).
[56] *See Mejia*, 2014 U.S. Dist. LEXIS 107363, 2014 WL 3853580, at *1; *Wilson v. Sec'y, Dep't of Veterans Affairs on Behalf of Veterans Canteen Servs.*, 65 F.3d 402, 404 (5th Cir. 1995), as amended on denial of reh'g (Nov. 1, 1995); *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir. 1992).
[57] *Teemac*, 298 F.3d at 456.
[58] R. Doc. 101-1 at 21.
[59] *White v. Integrated Elec. Techs., Inc.*, 2015 U.S. Dist. LEXIS 90529, *9 (E.D. La. July 13, 2015) (collecting cases).

10

D.   *Proposed Notice Forms*

Defendants request, in the event the Court grants this motion, they be granted 14 days to confer with Plaintiff regarding their objections to the proposed notice form. As Plaintiff agrees to this proposal, the Court adopts it as its own. The parties are urged to discuss the language in good faith.

## IV.   Conclusion

Accordingly, **IT IS ORDERED** that the motion for distribution of notice is **GRANTED IN PART AND DENIED IN PART**. The collective shall be conditionally certified according to the following definition:

> All current and former hourly, non-exempt employees directly involved with patient care, including but not limited to nurses, nursing staff, nursing assistants, nurse aides, technicians, clerks, nonexempt therapists, or other non-exempt employees with similar job duties employed at any facility owned/operated by Defendants during the time period three years prior to the filing of the original Complaint until resolution of this action (the "Collective").

**IT IS FURTHER ORDERED** that Plaintiff's request for equitable tolling is **DENIED**.

**IT IS FURTHER ORDERED** that counsel for each side shall meet and confer regarding the notice and consent forms. Within fourteen (14) days from the issuance of this order, the parties must either agree upon notice language or Defendants shall filed objections and a competing notice form. Plaintiffs will have an additional seven (7) days from any objections or competing notice form filed with this Court to seek leave to reply in support of their proposed notice.

**New Orleans, Louisiana, this 13th day of July, 2022.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

11