UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AMY HAMM, on behalf of herself and all others similarly situated | * | CIVIL ACTION |
| | * | NO. 20-1515 |
| VERSUS | | |
| | * | SECTION "E" (2) |
| ACADIA HEALTHCARE CO., INC., ET AL. | | |

**ORDER AND REASONS**

Plaintiffs' October 18, 2023 and October 31, 2023 Motions to Compel (ECF Nos. 220, 224) are pending before me. The parties filed Opposition and Reply Memoranda. ECF Nos. 225, 229, 240, 243. Plaintiffs requested oral argument, which was scheduled as requested but later cancelled in light of counsel's stated unavailability to attend the scheduled hearing. *See* ECF Nos. 221, 225. Further, the court has determined that the motions may be resolved without oral argument.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Plaintiffs' October 18, 2023 Motion to Compel (ECF No. 220) is GRANTED IN PART AND DENIED IN PART and Plaintiffs' October 31, 2023 Motion to Compel (ECF No. 224) is DENIED for the reasons stated herein.

**I.    BACKGROUND**

On May 22, 2020, Plaintiff Amy Hamm brought suit on behalf of herself and all other similarly situated individuals seeking payment for all hours worked, including overtime and meal periods from Defendants Acadia Healthcare Company, Inc., Red River Hospital, LLC, and Ochsner-Acadia, LLC. ECF Nos. 1, 69 ¶¶ 1,4,7. On July 13, 2022, the Court conditionally certified the collective action consisting of all current and former hourly, non-exempt employees directly involved with patient care at any facility owned/operated by Defendants during the three year period before and through resolution this case. ECF No. 129 at 1, 11. The collective action notice period closed

1

on December 27, 2022, with 67 opt-ins.  ECF No. 161-1 at 1-2.  Plaintiff did not file a motion for Rule 23 certification.  ECF No. 171-1.  After agreeing that the Rule 23 class certification decision must be made before proceeding with other issues in this hybrid FLSA collective/Rule 23 class action, the court amended the scheduling order to add deadlines related to Rule 23 class certification and FLSA decertification, as well as to add a deadline to file amended pleadings.  ECF Nos. 182, 188, 189.  January 10, 2024 the deadline for filing any motion for Rule 23 class certification or FLSA decertification.  ECF No. 193 at 2-3.  All discovery must be completed by December 8, 2023.  ECF No. 215-1 at 3-5.

Plaintiffs filed their first motion to compel on September 21, 2020.  ECF No. 36.  Since then, both this Court and Judge Morgan have addressed various discovery disputes pertaining to jurisdictional, pre-certification, decertification, and class certification discovery.  *See, e.g.*, ECF Nos. 38, 182, 191, and 204.  Pertinent to Plaintiffs' pending motions to compel, on June 1, 2023, this Court granted in part and denied in part Plaintiff's Motion to Compel and ordered Defendants to supplement their responses as detailed therein within twenty-one days.  ECF No. 191.  On April 12, 2023, Plaintiffs issued their third set of Requests for Production and Interrogatories.  ECF No. 220-5 at ¶ 3.  Defendants served responses on May 12, 2023.  ECF No. 220-7.  Plaintiffs' October 18, 2023 motion to compel involve their third set of discovery requests as well as Epic medical charting data, the latter of which the undersigned first addressed in my June 1, 2023 Order and Reasons.

A.  **Plaintiff's Motions to Compel**

On October 18, 2023, Plaintiffs filed a motion seeking to compel Defendants to

1. Supplement Request for Production ("RFP") Set 3 Responses;
2. State whether any responsive materials are being withheld/waive previously asserted objections;
3. Produce emails responsive to RFP 57;
4. Produce badge data responsive to RFP Set 3 Nos. 1 & 22 (No. 64 & 85);
5. Produce supervisory personnel files sought in RFP Set 3 No. 8 (No. 71);
6. Produce safety huddle forms solicited in RFP Set 3 No. 14, (No. 77);

      7. Produce Pyxis drug disbursement system record in accordance with RFP Set 3 No. 18 (No. 81);
      8. Provide HealthStream documents responsive to RFP Set 3 No. 25 (No. 88); and
      9. Provide a more comprehensive production of the Epic data.

Plaintiffs argue that the documents are necessary to support their claim of meal break interruption and Defendants' objections to the requests must be stricken for failure to substantiate each objection as required by FED. R. CIV. P. 34(b)(2)(C).

Defendants oppose the motion, arguing that it constitutes another instance of Plaintiffs' abuse of the discovery process and because the requests are unduly burdensome and seek irrelevant or minimally relevant documents. ECF No. 225. Defendants further indicate that they have already agreed to produce the Pyxis data for opt-in nurses and are working to produce HealthStream training documents, which are possessed by a third party. *Id*. at 10-13. In Reply, Plaintiffs assert that the requests are proportional given their limited temporal scope, confirm their receipt of the HealthStream documents, and repeat their initial arguments. ECF No. 240.

Plaintiffs filed another Motion to Compel on October 31, 2023, seeking to compel production of "all incident reports involving or worked by the Opt-ins during the Relevant Time Period." ECF No. 224. Plaintiffs indicate that their incident report request stemmed from Defendant's Rule 30(b)(6) deposition testimony during which corporate representative Jason Krause testified that Defendants utilize incident reports to highlight unusual incidents that require specific actions based on a particular code. ECF No. 224-3 at 4-5. Plaintiffs argue that the reports are "extremely relevant" to their theory that the nature of Defendants' facility requires collective and class members to remain effectively "on call" during their breaks. *Id*. at 5. Plaintiffs further repeat the argument raised in their first motion to compel regarding Defendants' purported failure to substantiate their burden and proportionality objections and assert that Defendants' claim that the term "incident reports" is vague and ambiguous and "borders on the absurd." *Id*. at 6.

3

Defendants oppose the motion, asserting that Plaintiffs filed their second motion to compel without engaging in a fulsome meet and confer regarding the incident reports. ECF No. 229. Defendants indicate that, since they became aware of any purported issue regarding incident reports, they have begun to look into the documents and believe same are irrelevant, contain substantial amounts of personally identifiable patient information, and will be extremely burdensome to produce given the reports are kept only in paper form at various locations throughout the facility. *Id*. at 6 n.3.

In Reply, Plaintiffs dispute the assertion that the parties failed to meet and confer over the production of incident reports and, to the extent Defendants now contend that a further meet and confer would be fruitful, proposes that the court continue its ruling on the motion for two week to allow that process to occur, though Plaintiffs do not believe that further conferral would be fruitful in light of Defendants' argument that the reports are irrelevant, contain patients' identifiable information, and will be extremely burdensome to produce. ECF No. 243.

Plaintiffs later filed a Notice of Supplemental Authority for their Motions to Compel attaching excerpts of Jolandra Tate's November 20, 2023 deposition transcript. ECF No. 249. The attachment includes testimony referencing emails from "the CFO saying, okay, these are all the people that didn't clock out for lunch or didn't clock in on time" and code whites, for which incident reports were purportedly issued. ECF No. 249-1.

## II.   APPLICABLE LAW

### A. The Scope of Discovery

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information

4

within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at the trial stage.[1] At the discovery stage, relevance includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[2] Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[3] If relevance is in doubt, a court should allow discovery.[4]

Rule 26's advisory committee comments make clear that the parties and the court have a collective responsibility to ensure that discovery is proportional. The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." FED. R. CIV. P. advisory committee notes to 2015 amendment. Thus, it bears the burden of making a specific objection and coming forward with specific information to address the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[5]

"The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of

---

[1] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted).
[2] *Id.* (citations omitted).
[3] *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *3 (E.D. La. Nov. 21, 2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)).
[4] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'r, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987) (internal quotations omitted)).
[5] *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 2016).

discovery." FED. R. CIV. P. advisory committee's notes to 2015 amendment. Rule 26(b)(2)(C)(i)–(iii) directs the Court to limit the frequency or extent of discovery otherwise allowed, if it determines: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery had ample opportunity to obtain the information; or (3) the proposed discovery is outside the scope of Rule 26(b)(1).

### B. Rule 37's Meet and Confer Requirement

In connection with a discovery motion, Rule 37(a)(1) of the Federal Rules of Civil Procedure requires:

> The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

To ensure compliance with this Rule, this Court expressly requires the parties to provide detailed information in the required Rule 37 certification.[6] These instructions further direct that the "meet and confer [must be] either in person or by telephone, not simply via email exchange."[7]

Defendants assert that the parties did not engage in a good faith meet-and-confer regarding Plaintiffs' request for incident reports before the October 31, 2023 motion was filed. Plaintiffs dispute the contention. The failure to engage in a fulsome meet and confer on each disputed issue prior to filing a discovery motion constitutes sufficient reason in itself to deny the motion.[8] However, in the interests of expediency and judicial economy, the court may address the matter notwithstanding that failure.

---

[6] *Motions & Oral Argument*, *The Honorable Donna Phillips Currault*, UNITED STATES DISTRICT COURT EASTERN DISTRICT OF LOUISIANA, http://www.laed.uscourts.gov/judges-information/judge/honorable-donna-phillips-currault (last visited October 21, 2023).
[7] *Id.*
[8] *Shaw Grp. Inc. v. Zurich Am. Ins. Co.*, No. 12-257, 2014 WL 4373197, at *3 (M.D. La. Sept. 3, 2014) (stating the Rule 37 certification is a prerequisite); *see also Greer v. Bramhall*, 77 F. App'x 254, 255 (5th Cir. 2003) (finding the district court did not abuse its discretion in denying motion to compel for failing to follow Rule 37); *D.H. Griffin Wrecking Co., Inc. v. 1031 Canal Dev., L.L.C.*, No. 20-1051, 2020 WL 8265341, at *3 (E.D. La. Apr. 16, 2020) (citing cases).

### III. ANALYSIS OF SPECIFIC REQUESTS

#### A. Failure to Identify Withheld Documents

Plaintiffs again ask the court to strike Defendants' objections to its discovery requests because Defendants universally fail to assert whether any responsive materials are being withheld in reliance on their objections.[9] The 2015 Amendments to Rule 34 expressly require that "[a]n objection . . . state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2). Plaintiffs cite no authority to support the notion that the appropriate remedy for a party's failure to comply with Rule 34(b)(2)'s duty to specifically state whether any documents have been withheld on the basis of an objection is to find the objection waived rather than to order a supplemental response. Accordingly, to the extent Defendants have failed to do so, they must supplement the responses within fourteen (14) days to indicate whether they have withheld any responsive materials based on any objection, as required by FED. R. CIV. P. 34(b)(2).[10]

#### B. Requests for Production Nos. 64 and 85- Badge Data

Although Plaintiffs indicate in their motion that they seek to compel production of badge data in response to Requests for Production Nos. 64 and 85,[11] their Rule 37 Certificate indicates that these issues have been resolved. ECF No. 220 ¶ 4, at 4. Further, Plaintiffs fail to brief either request in their memorandum, indicating that these matters are no longer at issue. Accordingly, the court will not address Request Nos. 64 and 85.

---

[9] ECF No. 220-1 at 13-14.
[10] *Baker v. Walters*, No. 22-552, 652 F. Supp. 3d 768, 776-77 (N.D. Tex. 2023) (noting that Rule 34(b), in combination with Rule 26(g)(1), is structured so that both the requesting party and the court may be assured that all responsive, non-privileged materials are being produced, except to the extent a valid objection has been made) (citing *Heller v. City of Dallas*, 303 F.R.D. 466, 487 (N.D. Tex. 2014); FED. R. CIV. P. 34, advisory committee notes, 2015 amendments ("Rule 34(b)(2)(C) is amended to provide that an objection to a Rule 34 request must state whether anything is being withheld on the basis of the objection. This amendment should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections.")).
[11] *See* ECF No. 220 at 1.

C. **Request for Production No. 57- Emails**

**REQUEST:** All emails and communications to or from any of Defendants' employees, managers, supervisors, executives, principals, or agents that include any of the following terms:[12]

**RESPONSE:** Defendants will produce all emails currently in its possession, if any exist, sent between May 22, 2017 to the present by and between Plaintiff Amy Hamm and her supervisor(s) that contain any of the following terms: [omitted]. To the extent further documents are requested, Defendants incorporate by reference their objections to Request No. 1 with respect to the discovery of information related to any "Putative Class Members" as defined by Plaintiff. Defendants also object to Request No. 57 on the grounds that the production of "All emails and communications to or from any of Defendants' employees" may include tens if not hundreds of thousands of irrelevant documents and communications made by and between unknown employees or agents of Defendants. The request for the production of all said documents is therefore overly broad, unduly burdensome, and not proportional to the needs of the litigation.

Defendants have confirmed that they searched for emails to or from both the named plaintiffs and all opt-in plaintiffs from May 22, 2017 to date, but they did not locate any relevant, responsive emails.[13] Defendants' proportionality objection as to any and all emails, without regard to whether any named or opt-in plaintiff is involved, is sustained in part.

Plaintiff's argument that emails among managers and supervisors are relevant to willfulness does not change this conclusion. First, what another manager or supervisor who had no role or authority over any named Plaintiffs or Opt-in Plaintiffs may or may not have known is not relevant to any claim or defense in this case. As such, electronic searches of email records of uninvolved supervisors or managers is not proportional to the needs of this case. It is proper, however, to require Defendants' electronic search to include a search of the designated search terms in the emails of relevant managers or supervisors of the named or opt-in plaintiffs. While a manager or supervisor's mere knowledge that an employee was working through lunch may not be sufficient to establish

---

[12] List omitted. *See* ECF No. 220-6 at 30-33.
[13] ECF No. 225 at 6.

8

willfulness,[14] Plaintiffs are entitled to discovery necessary to establish whether the managers or supervisors voluntarily, deliberately, or intentionally violated the FLSA rather than merely negligently did so.[15]

    D. **Request for Production No. 77- Safety Huddle Forms**

    **REQUEST:** All safety huddle forms for the Opt-ins during the Relevant Time Period.

    **RESPONSE:** LaPlace objects to this Request on the grounds that the term "safety huddle form" is vague and ambiguous such that LaPlace is impermissibly required to speculate as to Plaintiff's intended meaning. LaPlace further objects to this Request on the grounds that the discovery of "[a]ll safety huddle forms" is not reasonably calculated to lead to the discovery of admissible evidence, and is unduly burdensome, overly broad, and not proportional to the needs of the litigation. Documents relating to **safety meetings attended by employees of LaPlace** are wholly irrelevant to Plaintiff's claims or LaPlace's defenses in the present lawsuit concerning the sole question of whether meal breaks were impermissibly interrupted as no employee would attend a safety meeting during a meal break.

Plaintiffs contend that these forms are relevant because they demonstrate patient outbursts, emergencies, or other similar issues that employees must address. This case, however, presents an FLSA claim for work performed during meal breaks, not a claim for any and all off-the-clock work. Further, Defendants have confirmed that safety meetings were not scheduled during meal breaks, do not show where an employee was at any certain time, and merely show which patients may be a safety risk during a given shift. Given that the safety huddle forms are replete with private patient information, are maintained only in paper form, and are scattered across the facility, the burden and expense of locating, redacting and producing the forms far outweigh any potential benefit. Moreover, Plaintiffs may obtain the information desired, i.e., evidence demonstrating that they were expected to remain effectively "on call" during their breaks, through less burdensome means. Accordingly, Defendants' objection is sustained.

---

[14] 29 U.S.C. §255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).
[15] *Steele v. Leasing Enter., Ltd.*, 826 F.3d 237, 248 (5th Cir. 2016) (negligent violation is not willful).

E. **Request for Production No. 81- Pyxis Records**

**REQUEST:** All Pyxis drug disbursement system records for the Opt-ins for the Relevant Time Period.

**RESPONSE:** LaPlace objects to this Request on the grounds that the discovery of "all Pyxis drug disbursement system records" seeks confidential patient information and is not reasonably calculated to lead to the discovery of admissible evidence, and is unduly burdensome, overly broad, and not proportional to the needs of the litigation. Drug disbursement records for are confidential to those third parties and protected from disclosure. Moreover, such records are wholly irrelevant to Plaintiff's claims or LaPlace's defenses in the present lawsuit concerning the sole question of whether meal breaks were impermissibly interrupted.

Plaintiffs have accepted Defendants' proposal to produce disbursement system records for opt-in nurses only,[16] but indicate that same still had not been produced as of November 13, 2023. To the extent these responses are still outstanding, same must be produced, with redactions sufficient to protect any identifying patient information, within fourteen (14) days of this Order.

F. **Request No. 88- HealthStream Records**

**REQUEST:** All documents the Opt-ins had access to in the HealthStream online learning platform during the Relevant Time Period.

**RESPONSE:** LaPlace directs Plaintiff to its objections and responses to Request No. 87 ( discovery of "all documents . . . in the HealthStream online learning platform" is not reasonably calculated to lead to the discovery of admissible evidence, and is unduly burdensome, overly broad, and not proportional to the needs of the litigation. Such documents are wholly irrelevant to Plaintiff's sole remaining claim of whether meal breaks were impermissible interrupted or LaPlace's defenses to that claim).

Given the parties' mutual representations that this request has been satisfied, Plaintiffs' motion is denied as moot as to Request No. 88.

---

[16] Defendants assert that Pyxis records do not exist for opt-in plaintiffs who hold any technician positions, which plaintiffs allegedly constitute "the vast majority of the remaining opt-ins." ECF No. 225 at 11.

G. **Epic Data**

Plaintiffs seek to compel a "comprehensive production" of Epic electronic medical charting data for each of the collective members. ECF No. 220-1 at 11.

On June 1, 2023, this Court ordered Defendants to produce three months' of Epic charting data for Plaintiff Amy Hamm only. ECF No. 191 at 11. In doing so, the court noted the disproportionately broad nature of Plaintiffs' request for all charting data relating to each Plaintiff's putative class and collective members. *Id.* Plaintiffs now argue, over four months later, that a "review of this data reveals that a full production is necessary" because the sample Epic data contains the exact time at which notes were entered into the system, thus showing when nurses were completing their charting responsibilities. Plaintiffs assert that this data allows for a direct comparison with Plaintiffs' punch records to ascertain if the charting was done off-the-clock or during an unpaid meal period.

In opposition, Defendants indicate that Epic data is organized in the facility's system by each patient, not by the employees caring for those patients, and the data is not maintained in any format where it can be sorted or organized by the employee who enters a note into the system. As such, Defendants assert that they spent hours and multiple phone calls with charting system vendor's software engineers to create an ad hoc process by which they were able to pull the small sampling of data for Plaintiff Hamm's entries from across the entire patient charting database. Given the heavy burden of production and the fact that the requested records cannot provide the time at which a given action being noted occurred, Defendants argue that the request is disproportionate to the needs of the case.

Notably, although Plaintiffs contend that the three months of data reinforces their relevance argument, they notably ***do not*** argue that the three months of data produced for Plaintiff Hamm actually established any evidence of work during her meal period, which is the relevant issue in this

11

case. Absent any basis to establish that the 3 month sampling of Epic data has resulted in the discovery of relevant evidence, and considering the burden as explained by Defendants' description of the data collection process, and the minimal relevance to the remaining FLSA claim,[17] Defendants' objection is sustained.

### H. Request No. 71- Supervisory Personnel Files

> **REQUEST:** The complete personnel file of each and every supervisory employee you identified in response to Interrogatory No. 22 from Plaintiff's Interrogatories to Acadia LaPlace Holdings, LLC, Set Three.
>
> **RESPONSE:** LaPlace refers Plaintiff, without limitation, to: the Opt-In Plaintiffs' personnel files previously produced at Hamm_Ochsner-Acadia_000680–004994, the Opt-In Plaintiffs' pay records previously produced at Hamm_Ochsner-Acadia_004995–006746, and the Opt-In Plaintiffs' timesheet reports previously produced at Hamm_Ochsner-Acadia_006747– 008021, which all identify the specific supervisors for the Opt-In Plaintiffs during the various times they were employed. To the extent further documents are requested, LaPlace objects to this Request on the grounds that the discovery of such information is not reasonably calculated to lead to the discovery of admissible evidence, and is unduly burdensome, overly broad, and not proportional to the needs of the litigation. Producing every document related to all individuals who could "recommend[] or provide significant input into decisions affecting the Opt-In's employment" would arguably require LaPlace to identify for every Opt-In Plaintiff every single individual who worked at the same time as such Opt-Ins and could therefore "provide input" into decisions "affecting [] employment," but the identities of these individuals is not relevant to Plaintiff's claims in this lawsuit. This request would also improperly require LaPlace to produce thousands of irrelevant documents containing personal information.

As issued, this request far exceeds the ultimate and necessary boundaries of discovery.[18] To allow Plaintiffs access to the "complete personnel file" of "each and every supervisory employee" identified by Defendants would be to sanction an unnecessary fishing expedition.[19] Plaintiffs have

---

[17] ECF No. 129 at 4-5.
[18] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quotation omitted).
[19] *See Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*, No. 16-17277, 2017 WL 3011144, at *4 (E.D. La. July 14, 2017) (citations omitted) (noting that, while relevancy in the discovery process is broader than in the context of admissibility, courts have recognized this tenet should not be misapplied so as to allow fishing expeditions in discovery); *see also Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011); *Ganpat v. E. Pac. Shipping, PTE, Ltd.*, No. 18-13556, 2020 WL 1046336, at *3 (E.D. La. Mar. 4, 2020).

since narrowed this request to seek only (1) the last known contact information for these individuals; (2) any information in the files related to "trainings, discipline, or other issues, topic, or discipline related to meal breaks, off the clock work, and/or overtime." ECF No. 220-1 at 12-13.

Defendants have produced HealthStream training documents regarding FLSA compliance;[20] thus, Plaintiff's request for training information from personnel files is cumulative. Further, considering the proportionality factors, and given the wealth of irrelevant and confidential information contained within each supervisor's personnel file, Defendants' relevance and proportionality objections to production of supervisors' personnel files are sustained in part. Defendants must, however, provide the names, last known addresses, and phone numbers for each of its identified supervisors. In addition, Defendants must produce any disciplinary action based on FLSA violations received by any relevant supervisor. Defendants need not produce any further information from the supervisors' personnel files.

I. **Request No. 79 - Incident Reports**

**REQUEST:** All incident reports involving or worked by the Opt-ins during the Relevant Time Period.

**RESPONSE:** LaPlace objects to this Request on the grounds that the term "incident reports" is vague and ambiguous such that LaPlace is impermissibly required to speculate as to Plaintiff's intended meaning. Defendant further objects that the discovery of "all incident reports" involving the Opt-ins is not reasonably calculated to lead to the discovery of admissible evidence, and is unduly burdensome, overly broad, and not proportional to the needs of the litigation. This request is not limited to "incidents" that have any relationship whatsoever to Plaintiff's sole remaining claim in this lawsuit, and all such documents of which LaPlace is aware that may fall under the term "incident reports" are wholly irrelevant to Plaintiff's claims or LaPlace's defenses in the present lawsuit concerning the sole question of **whether meal breaks were impermissibly interrupted.**

Defendants' objection is sustained. For the same reasons as set forth with regard to safety huddle forms, the burden of producing paper forms categorized by month, year, and patient, rather

---

[20] *See* ECF Nos. 220-1 at 10, 240 at 9.

than by employee, far outweighs the likely benefit. Plaintiffs may obtain the desired information, i.e., when and/or at what frequency their meal breaks have been interrupted, through more convenient, less burdensome, and less expensive means. Plaintiffs' Notice of Supplemental Authority provides clear examples of less burdensome methods for same.

## IV. CONCLUSION

For the foregoing reasons, while Plaintiffs are entitled to discovery of relevant, proportional information, many of the requests in dispute exceed the boundaries of discovery and are not proportional to the needs of the case. Accordingly,

IT IS ORDERED that Plaintiff's October 18, 2023 Motion to Compel (ECF No. 220) is GRANTED IN PART AND DENIED IN PART as stated herein. Defendants must supplement their discovery responses as ordered herein within fourteen (14) days of this Order.

IT IS FURTHER ORDERED that Plaintiff's October 31, 2023 Motion to Compel (ECF No. 224) is DENIED.

New Orleans, Louisiana, this  28th  day of November, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE