UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMY HAMM, ET AL., **Plaintiffs** | CIVIL ACTION |
| VERSUS | NO. 20-1515 |
| ACADIA HEALTHCARE CO., INC., ET AL., **Defendants** | SECTION: "E" (2) |

## ORDER AND REASONS

Before the Court is a motion to decertify Plaintiffs' FLSA collective action (the "Motion to Decertify") filed by Acadia LaPlace Holdings, LLC and Ochsner-Acadia, LLC (the "Defendants").[1] Amy Hamm and Joye Wilson (the "Plaintiffs") filed an opposition.[2] The Defendants filed a reply[3] and a supplemental memorandum in support of their Motion to Decertify.[4]

## BACKGROUND

This is a Fair Labor Standards Act ("FLSA") case filed by Plaintiffs Amy Hamm and Joye Wilson on behalf of themselves and those similarly situated to them.[5] Plaintiff Hamm worked as a nurse at Red River Hospital in Wichita Falls, Texas, from February 2015 to December 2019, and then at River Place Behavioral Health in LaPlace, Louisiana ("River Place"), from December 2019 to September 2020.[6] Plaintiff Wilson worked as a mental health technician at River Place from 2018 to January 2020.[7] The Plaintiffs filed an amended complaint against the Defendants, as parent companies of the hospitals

---

[1] R. Doc. 274.
[2] R. Doc. 287.
[3] R. Doc. 297.
[4] R. Doc. 334.
[5] R. Doc. 202.
[6] *Id.* at pp. 7-8.
[7] *Id.* at p. 8.

1

where they were employed, alleging the Defendants violated the FLSA and Louisiana state law by failing to properly compensate their employees for work performed.[8]

Relevant to the instant motion, the Plaintiffs assert two claims as a putative collective action under Section 216(b) of the FLSA.[9] Specifically, Plaintiffs claim the Defendants violated 29 U.S.C. § 207 by: (1) "fail[ing] to pay overtime compensation for on-duty meal periods," and (2) "fail[ing] to pay overtime compensation for 'off-the-clock' work."[10] On March 7, 2022, Plaintiffs moved to certify their FLSA claims as a collective action (the "Motion to Certify"),[11] and on July 13, 2022, the Court issued an Order and Reasons, certifying the collective action (the "July 2022 Order").[12] The Defendants now seek to decertify the Plaintiffs' collective action, claiming "[n]ow that the collective has been formed and discovery completed, [] the overwhelming and undisputed evidence shows that the named and opt-in plaintiffs are not sufficiently similar to be combined into a collective action."[13]

## **LEGAL STANDARD**

The FLSA requires employers to pay their employees "one-and-a-half times their normal wages for hours worked in excess of forty [hours] per week."[14] An employee may sue an employer for violating the overtime compensation provision of the FLSA either individually, or collectively on behalf of himself or herself and "other employees similarly

---

[8] *Id.* at p. 1.
[9] *See* R. Doc. 202. Section 216(b) of the FLSA allows employees to proceed in a collective action when they are "similarly situated." *See* 29 U.S.C. § 216(b).
[10] R. Doc. 202 at pp. 18-20. Section 207, the FLSA provision governing overtime compensation, generally requires employers pay their employees one and one-half times their regular rate of pay for all hours worked in excess of forty hours in a week. 29 U.S.C. § 207(a)(1); *see also Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 633 (5th Cir. 2001).
[11] R. Doc. 101. At the time, Amy Hamm was the only named Plaintiff. *Id.*
[12] R. Doc. 129.
[13] R. Doc. 274-1 at p. 1.
[14] *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013) (citing 29 U.S.C. § 207(a)).

situated."[15] Unlike a class action under Federal Rule of Civil Procedure 23, "which requires putative plaintiffs to opt out," an FLSA collective action "benefits and binds only those employees who affirmatively 'opt in' to the suit."[16] Thus, once a plaintiff satisfies the burden of establishing employees in a proposed action are similarly situated,[17] those individuals must give "consent in writing to become" a "party plaintiff" to the collective action.[18] A district court may "facilitat[e] notice to potential plaintiffs" for case management purposes by requiring the defendant to provide names and contact information of everyone who might be part of a plaintiff's collective action.[19]

Until January 12, 2021, courts in this district generally applied "the widely used *Lusardi* test"—a two-step approach to determine whether to certify a collective action under the FLSA.[20] At the first "notice and conditional certification" stage of the *Lusardi* test, the court determined whether the putative collective action members were "similarly situated," such that the action should be "conditionally certified" and the putative members given notice of the action, upon consideration of only the pleadings and affidavits submitted by the parties.[21] This first stage applied "a fairly lenient standard" under which "'courts appear[ed] to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan.'"[22] The second stage of the *Lusardi* test was "typically precipitated by a motion for

---

[15] 29 U.S.C. § 216(b).
[16] *Bancroft v. 217 Bourbon, LLC,* 21-545, 2022 WL 19762095, at *3 (E.D. La. Jan. 26, 2022).
[17] *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430, 443 & n.65 (5th Cir. 2021).
[18] 29 U.S.C. § 216(b).
[19] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).
[20] *See Swales*, 985 F.3d at 434 (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D. N. J. 1987)). *See also Dardar v. Pit Stop Eatery of Houma, LLC*, 20-1605, 2021 WL 5513417, at *2 (E.D. La Mar. 30, 2021) (collecting cases); *Bancroft*, 2022 WL 19762095, at *3.
[21] *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).
[22] *Id.* at 1214 & n.8 (citations omitted).

'decertification' by the defendant usually filed after discovery," which allowed the district court "much more information on which to base its decision, and [to] make[] a factual determination of the 'similarly situated' question."[23] If the district court found the plaintiffs were "not similar situated" at the second stage, the court would then decertify the class and dismiss the opt-in plaintiffs' claims without prejudice, with only the class representatives (i.e., the original plaintiffs) proceeding to trial on their individual claims.[24] "On the other hand, if the district court found that the claimants were similarly situated, it [would] allow[] the representative action to proceed to trial."[25]

In *Swales v. KLLM Transport Services, L.L.C.*, the Fifth Circuit rejected the *Lusardi* approach and provided clarification on "the gatekeeping framework for assessing" "the threshold dispute of any wage-claim collective" under the FLSA—i.e., whether potential members of the collective action are "similarly-situated" within the meaning of Section 216(b).[26] The *Swales* decision instructs district courts to "rigorously scrutinize the realm of 'similarly situated' workers" by "identify[ing], at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated'" and "authorize *preliminary* discovery accordingly."[27] Then, "[a]fter considering all available evidence, the district court may conclude [whether] the Plaintiffs and Opt-ins are too diverse a group to be 'similarly situated,'" or whether plaintiffs have sufficiently satisfied their burden of establishing similarity.[28] While district courts have "broad, litigation-management discretion," the *Swales* decision mandates the certification decision be made "as early as possible" and advises courts to

---

[23] *Id.*
[24] *Bancroft*, 2022 WL 19762095, at *3 (citation omitted).
[25] *Id.* (citation omitted).
[26] 985 F.3d at 433.
[27] *Id.* at 434, 441 (emphasis added).
[28] *Id.* at 443.

4

evaluate "whether merits questions can be answered collectively" when determining whether to certify an FLSA collective action.[29] In sum, district courts in the Fifth Circuit "must rigorously scrutinize the realm of 'similarly situated' workers, and must do so from the outset of the case, not after a lenient, step-one 'conditional certification.'"[30] "Only in that way can the district court ensure the requested opt-in notice will go to those who are actually similarly situated to the named plaintiffs."[31]

As affirmed by a post-*Swales* opinion of the Fifth Circuit, to determine whether a plaintiff has satisfied the burden of showing the putative collective action members are similarly situated, the district court "may [] find it useful to consider" three factors: "(1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."[32] Several courts in the Fifth Circuit have held that "'putative class members must show they were affected by a common policy, plan, pattern or practice' to meet the similarly situated requirement."[33] "[G]eographic commonality is not necessary to meet the 'similarly situated' requirement for an FLSA collective action; instead the focus is on whether the employees were impacted by a common policy."[34] The fact that members of the putative collective class

---

[29] *Id.* at 436, 441-43.
[30] *Id.* at 434.
[31] *Id.*
[32] *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 336-37 (5th Cir. 2023) (quoting *Swales*, 985 F.3d at 437).
[33] *Loy v. Rehab Synergies, LLC*, 18-4, 2021 WL 3931926, at *8 (S.D. Tex. Sept. 2, 2021) (citations omitted) (post-*Swales* order denying motion to decertify a collective that was conditionally certified pre-*Swales*), *aff'd*, 71 F.4th 329 (5th Cir. 2023).
[34] *Id.* (quoting *Vargas v. Richardson Trident Co.*, 09–1674, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010)).

5

work in different facilities or have different job titles does not preclude a finding that they are similarly situated.[35]

## LAW AND ANALYSIS

In this case, prior to hearing Plaintiffs' Motion to Certify, the Court found that "limited discovery [was] needed" to evaluate "whether the employees in [the] proposed collective action [were] similarly situated" within the meaning of Section 216(b).[36] In compliance with *Swales*, the Court expressly denied Plaintiffs' request to apply the two-step *Lusardi* standard and, instead, authorized the parties to conduct preliminary discovery to identify "what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'"[37] After the preliminary discovery period concluded, the Court issued its July 2022 Order, granting in part and denying in part Plaintiffs' Motion to Certify and certifying the FLSA collective action defined as follows:

> All current and former hourly, non-exempt employees directly involved with patient care, including but not limited to nurses, nursing staff, nursing assistants, nurse aides, technicians, clerks, nonexempt therapists, or other non-exempt employees with similar job duties employed at any facility owned/operated by Defendants during the time period three years prior to

---

[35] *See Loy*, 71 F.4th at 334 (affirming district court's certification of collective when, "[r]egardless of job title and facility, all Plaintiffs were subject to productivity requirements").
[36] R. Doc. 85 at p. 4.
[37] *Id.* at p. 8 (quoting *Swales*, 985 F.3d at 441). Specifically, the Court permitted Plaintiffs to propound interrogatories and requests for production of documents on the following topics:
>   Categories of all direct patient care employees (such as registered nurses, licensed practical nurses, aides, medical technicians, medical assistants, therapists, and the like) who are paid on an hourly basis;
>   Time keeping and time reporting policies and procedures for each category;
>   Lunch and other break policies and procedures for each category;
>   Policies and procedures for compensating employees whose lunch or other breaks are interrupted by work duties;
>   Ethical codes and policies applicable to each category requiring employees to remain on-duty to attend to any patient care needs that may arise during break time; and
>   Policies and procedures requiring pre-approval of overtime for each category and disciplinary actions for failure to comply. *Id.*

the filing of the original Complaint until resolution of this action (the "Collective").[38]

Contrary to the Defendants' position at an earlier stage of this litigation, during which they advocated for an interpretation of *Swales* that "explicitly forbids" "the two-step process . . . from *Lusardi*" and mandates the "one-step 'rigorous' analysis outlined in the [*Swales*] opinion,"[39] the Defendants' now urge the Court to undertake a post-discovery decertification inquiry reminiscent of the second stage of the *Lusardi* test. Defendants argue evidence obtained during the preliminary discovery phase[40] reveals differences between the jobs, meal break experiences, and claims of Plaintiffs and opt-in members, establishing the members of the collective action are not "similarly situated" under Section 216(b).[41] Although Defendants characterize *Swales* as "plac[ing] a higher burden at a court's initial certification inquiry," they contend the Fifth Circuit "neither removed a party's ability to decertify a collective nor altered the 'similarly situated' analysis courts must undertake at the decertification stage."[42]

---

[38] R. Doc. 129 at p. 11.
[39] R. Doc. 81 at pp. 1-2.
[40] The operative scheduling order established the deadline for the completion of depositions and discovery for FLSA decertification on December 8, 2023. R. Doc. 265 at p. 2.
[41] R. Doc. 274-1 at p. 4. The Defendants contend the collective members "held different jobs with varying duties and levels of responsibility that caused them to have materially different meal break experiences," and "even among plaintiffs within the same job position, their meal break practices varied significantly depending on their shift, on which unit of the facility they worked, on their gender, and on [when] they were employed at River Place." *Id.* at p. 2. Specifically, the Defendants claim meal break experiences between the collective Plaintiffs varied "depending upon numerous factors unique to each individual's employment, including: (1) which of several different jobs they held; (2) which of three different shifts . . . they worked; (3) which of four different units at the facility they worked in; (4) which supervisor they had; (5) their gender; and (6) during which of the different phases in the operations of the facility they were employed." *Id.* at pp. 5-7. The Defendants argue "[t]hese significant distinctions in job duties and how they affected meal break practices prevent members of the collective from being similarly situated from one another." *Id.* at p. 12. In addition to the differing jobs and meal break experiences between the Plaintiffs, the Defendants contend the Plaintiffs "assert wholly different theories for unpaid wages from each other," pointing to evidence the Defendants argue indicates some Plaintiffs claim River Place "automatically deducted thirty minutes of time for a meal break regardless of whether they even took a break," while other plaintiffs' claim arise from "having to work off-the-clock before or after their shifts" or from "being unable to take a break at all rather than being interrupted during breaks." *Id.* at pp. 3, 7-8.
[42] *Id.* at p. 9 (citations omitted).

7

In opposition, Plaintiffs argue the Defendants' Motion to Decertify is moot because "[t]he Court['s] [July 2022 Order] has already answered the question" posed therein by "determin[ing] that Plaintiffs are similarly situated under the rigorous *Swales* approach," and certifying the FLSA collective action.[43] Plaintiffs contend several cases on which the Defendants' Motion to Decertify relies are inapposite to this case because they concern the decertification of FLSA collective actions that were conditionally certified under the first step of the *Lusardi* test before the Fifth Circuit issued the *Swales* opinion, whereas this Court's July 2022 Order certified the collective action in this case under the one-step *Swales* framework.[44] For example, the Defendants claim a Fifth Circuit opinion issued post-*Swales*—*Loy v. Rehab Synergies, L.L.C.*[45]—determined "the *Lusardi* second step decertification factors to be the same post-*Swales*."[46] A review of that decision reveals the district court in that case "'conditionally-certified' the collective action" "pursuant to the two-step *Lusardi* approach," but by the time the appellant filed its motion for decertification, the Fifth Circuit had decided *Swales*, which "rejected *Lusardi*'s 'conditional certification' step."[47] Thus, in reviewing the trial court's denial of the appellant's motion to decertify, the Fifth Circuit in *Loy* applied the *Swales* standard in lieu of the second step of the *Lusardi* test, but only because the district court already had

---

[43] R. Doc. 287 at pp. 5-6. The Plaintiffs also offer arguments in opposition to the merits of the Defendants' Motion to Decertify. Specifically, Plaintiffs claim: (1) "Plaintiffs and collective members share a core, common job duty: direct patient care," which "led to the same FLSA violations: patient care workers' breaks were regularly missed and/or interrupted and, thus, subject to interruption"; (2) "FLSA claims all arise from River Place's policies/practices, ethical and professional obligations of healthcare workers, the nature of River Place as a mental health institution, and/or understaffing"; and (3) Plaintiffs' claims are based on common legal theories—"that their breaks were interrupted and subject to interruption, making them *de facto* 'on call' during attempted meal periods." *Id.* at pp. 7, 11, 15, 20.
[44] *Id.* at p. 6.
[45] 71 F.4th 329 (5th Cir. 2023).
[46] R. Doc. 274-1 at p. 9 (citing *Loy*, 71 F.4th at 335).
[47] *Loy*, 985 F.3d at 335 n.1.

8

conditionally certified the collective action *before* the *Swales* court expressly rejected the *Lusardi* approach.[48]

In their reply memorandum, the Defendants advance the unsupported proposition that "[a]t the decertification stage, even post-*Swales*, it is still Plaintiffs' burden to prove and maintain through the litigation that the collective members are similarly situated."[49] Noting that no court has ever held *Swales* prohibits decertification of an FLSA collective, the Defendants contend the *Swales* court neither "remove[d] a party's ability to decertify a collective, nor did it alter the 'similarly situated' analysis required at the decertification stage."[50] Instead, the Defendants interpret *Swales* as merely criticizing district courts' application of the *Lusardi* test insofar as "[the] courts did not apply a rigorous enough standard when assessing whether a plaintiff is 'similarly situated' at the outset of the case" under that approach.[51]

The Fifth Circuit has not ruled on whether a defendant may bring a motion to decertify after the initial certification of an FLSA collective action under the *Swales* framework. *Swales* did explicitly "reject *Lusardi*'s two-step certification rubric" in favor of determining whether a group of employees are "similarly situated" "as early as possible."[52] Further, *Swales* repeatedly emphasizes this analysis should occur "at the

---

[48] The Defendants cite one district court decision, which has a similar procedure posture to *Loy* and thus is not instructive on the instant Motion to Decertify. In *Moore v. MW Servicing, LLC*, 20-217, 2023 WL 4936239 (E.D. La. Aug. 2, 2023), Judge Greg G. Guidry evaluated the merits of a motion to decertify an FLSA collective action conditionally certified under the first step of *Lusardi* pre-*Swales*. *Id.* at *2. The Defendants also cite *Torres v. Chambers Protective Servs.*, 20-212, 2021 WL 3419705, (N.D. Tex. Aug. 5, 2021), for the proposition that, "[e]ven though *Swales* invalidated the *Lusardi* approach, Courts still use these factors to determine whether putative collective-action members are similarly situated at the outset of the case as required by *Swales*. *Id.* at *3 n.3 (collecting cases). This Court's approach in the July 2022 Order is consistent with the *Torres* court's guidance. *See* R. Doc. 129.
[49] R. Doc. 297 at p. 2.
[50] *Id.*
[51] *Id.* at pp. 3-4 (citing *Swales*, 985 F.3d at 434).
[52] *Swales*, 985 F.3d at 434, 441.

9

outset of litigation."[53] In ultimately reaching its conclusion, the Fifth Circuit observed "the word 'certification,' much less 'conditional certification,' appears nowhere in the FLSA."[54] Also conspicuously absent from the text of the FLSA is the word "decertification."[55]

Having considered the parties' arguments and the operative Fifth Circuit law, the Court finds once certified under the *Swales* framework, after an opportunity to conduct preliminary discovery and fully brief the issues, there is no justification for a motion to decertify and to allow such a motion would be a waste of judicial resources. The Court finds this result was not intended by the Fifth Circuit. Accordingly, the Court will deny the Defendants' motion to decertify the Plaintiffs' FLSA collective action, which the Court's July 2022 Order certified in accordance with *Swales*.[56]

---

[53] *Id.* at 433, 434, 441, 442, 443.
[54] *Id.* at 434.
[55] *See* 29 U.S.C. § 216(b). The Defendants argue "[p]ost-*Swales* FLSA decertification should be permitted just as decertification of a Rule 23 class is permitted and appropriate if, after the initial certification, evidence is discovered showing that proceeding on a collective basis is inappropriate because the plaintiffs do not satisfy the appropriate standard." R. Doc. 297 at p. 4. However, *Swales* distinguished the Rule 23 class certification process from the FLSA collective certification process.
> Unlike Rule 23 class certification, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." The [Supreme] Court concluded that "[w]hatever significance 'conditional certification' may have in § 216(b) proceedings, it is not tantamount to class certification under Rule 23."

*Swales*, 985 F.3d at 440 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75, 78 (2013)). This Court agrees that the processes are materially different. Rule 23(c)(1)(C) expressly permits "[a]n order that grants or denies class certification [to] be altered or amended before final judgment," whereas Section 216(b) of the FLSA authorizes no such decertification. *Compare* FED. R. CIV. P. 23(c)(1)(C) *with* 29 U.S.C. § 216(b). Further, "Section 216(b)'s opt-in mechanism differs from Rule 23 class actions, where members are bound by the judgment or settlement unless they affirmatively opt out." *Swales*, 985 F.3d at 435 (citing *Hoffman-La Roche*, 493 U.S. at 173).
[56] Even if the Defendants are correct and they should be allowed to move to decertify the collective similar to a motion to decertify a class under Rule 23, the motion in this case would be denied. The Court has already found "[t]here is no dispute that the policies in question appl[ied] equally to each member of the proposed collective." R. Doc. 129 at p. 6. In their opposition to Plaintiffs' Motion to Certify, the Defendants argued Hamm was not similarly situated to other potential members of the collective action because she was a supervisor at River Place. *See* R. Doc. 113 at pp. 7-9. However, in the July 2022 Order, the Court held "Hamm and her supervisees were subject to the same possibility of break interruption. They were therefore similarly situated." R. Doc. 129 at pp. 6, 9. The parties' briefing on the instant Motion to Decertify does not raise any *new* arguments that challenge the Court's prior findings. *See* R. Doc. 274; R. Doc. 297. Indeed, the arguments now raised by the Defendants were raised during the collective certification stage. *See* R. Doc. 188 at p. 4 n.29; R. Doc. 129 at pp. 6-7. Accordingly, the Court finds that the Defendants' arguments that the members of the collective are not similarly situated are without merit. The Defendants have produced no evidence that proceeding on a collective basis is inappropriate.

10

**CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that the Defendants' Motion to Decertify is **DENIED**.[57]

**New Orleans, Louisiana, this 6th day of September, 2024.**

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[57] R. Doc. 274.