UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMY HAMM, ET AL.,<br>　　　Plaintiffs | CIVIL ACTION |
| VERSUS | NO.  20-1515 |
| ACADIA HEALTHCARE<br>CO., INC., ET AL.,<br>　　　Defendants | SECTION: "E" (2) |

### <u>ORDER AND REASONS</u>

Before the Court is a motion for class certification ("Motion to Certify") filed by Amy Hamm and Joye Wilson ("Plaintiffs").[1] Acadia LaPlace Holdings, LLC and Ochsner-Acadia, LLC ("Defendants") filed an opposition.[2] Plaintiffs filed a reply.[3] On April 24, 2024, the Court held a hearing on the remaining portion of Plaintiffs' Motion to Certify[4] and thereafter, Plaintiffs filed a post-hearing memorandum in support of the motion[5] and Defendants filed a post-hearing memorandum in opposition.[6] On September 13, 2024, the Court issued an order and reasons finding Plaintiffs satisfied the requirements of Federal Rule of Civil Procedure 23(a) but deferring determination of Plaintiffs' Motion to Certify pending further briefing.[7] Plaintiffs then submitted a supplemental memorandum in support of the remaining portions of their Motion to Certify[8] and Defendants filed a

---

[1] R. Doc. 270. Plaintiffs filed their Motion to Certify Class and memorandum in support on behalf of themselves and those similarly situated to them. R. Doc. 270-1 at p. 2.
[2] R. Doc. 292.
[3] R. Doc. 295.
[4] R. Doc. 319.
[5] R. Doc. 333.
[6] R. Doc. 334.
[7] R. Doc. 338.
[8] R. Doc. 339.

supplemental memorandum in opposition.[9] The parties filed additional memoranda addressing the proposed class definition.[10]

## **BACKGROUND**

Plaintiff Amy Hamm ("Hamm") worked as a nurse at Red River Hospital in Wichita Falls, Texas, from February 2015 to December 2019, and then at River Place Behavioral Health in LaPlace, Louisiana ("River Place"), from December 2019 to September 2020.[11] Plaintiff Joye Wilson worked as a mental health technician at River Place from 2018 to January 2020.[12]

The Plaintiffs filed an amended complaint asserting four claims against the Defendants, as parent companies of River Place, alleging the Defendants violated the Fair Labor Standards Act ("FLSA") and Louisiana state law by failing to properly compensate their employees for work performed.[13] Specifically, the Plaintiffs assert two causes of action in a putative collective action under Section 216(b) of the FLSA, on behalf of themselves and those similarly situated to them, in which they allege the Defendants violated 29 U.S.C. § 207 by: (1) "fail[ing] to pay overtime compensation for on-duty meal periods," and (2) "fail[ing] to pay overtime compensation for 'off-the-clock' work."[14]

---

[9] R. Doc. 342.

[10] R. Doc. 351, R. Doc. 352, R. Doc. 353, and R. Doc. 356.

[11] R. Doc. 202 at pp. 7-8.

[12] *Id.* at p. 8.

[13] *Id.* at p. 1.

[14] *Id.* at pp. 18-20. Section 216(b) of the FLSA allows employees to proceed in a collective action when they are "similarly situated." *See* 29 U.S.C. § 216(b). Section 207, the FLSA provision governing overtime compensation, generally requires employers pay their employees one and one-half times their regular rate of pay for all hours worked in excess of forty hours in a week. 29 U.S.C. § 207(a)(1); *see also Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 633 (5th Cir. 2001). The Court certified Plaintiffs' FLSA collective action on July 13, 2022 after the parties completed preliminary discovery on issues relevant to the FLSA collective certification. R. Doc. 129. After the completion of discovery, the Defendants moved to decertify the FLSA collective. R. Doc. 274. On September 6, 2024, the Court denied the Defendants' motion. R. Doc. 337. On November 18, 2024, the Court denied Defendants' motion for certification of interlocutory appeal on the question of whether a party maintains the ability to move for decertification post-*Swales* v. *KLLM Transport Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021). R. Doc. 345.

The Plaintiffs also assert two Louisiana law causes of action for conversion and unjust enrichment, on behalf of themselves and others similarly situated, as a Rule 23 class action, but only "to the extent [the claims] do not overlap with or duplicate the FLSA damages alleged."[15] Plaintiffs claim damages for unpaid "gap time" wages under Louisiana causes of action for conversion and unjust enrichment, [16] "Plaintiffs maintain that they are owed compensation for all their breaks, not just the ones that were factually interrupted."[17]

On January 10, 2024, the Plaintiffs filed their Motion to Certify a putative class.[18] On August 5, 2025, Plaintiffs filed a supplemental motion in support of the motion to certify in which they clarify and refine the class they seek to certify as

> all current and former hourly, non-exempt Mental Health Technicians ("MHTs"), Behavioral Health Associates ("BHAs"), nurses, non-exempt therapists, and intake coordinators employed by any Defendants at the River Place Behavioral Health Hospital at any time until the date of the Court's order granting certification.[19]

The Plaintiffs contend their claims "are perfectly suited for class treatment,"[20] because the class satisfies the requirements of Rules 23(a) (i.e., numerosity, commonality, typicality, and adequacy) and 23(b)(3) (i.e., predominance and superiority).[21] In opposition, the Defendants argue Plaintiffs' "state common law Rule 23 class claims are

---

[15] R. Doc. 202 at p. 21.
[16] R. Doc. 270-1 at p. 2. The Court held that the FLSA does not preempt Plaintiffs' state law unjust enrichment and conversion causes of action. R. Doc. 338 at pp. 6-9. The Court found that Plaintiffs' state law causes of action are related to "gap time," which the FLSA does not cover. *Id.* at pp. 8-9.
[17] R. Doc. 295 at p. 7.
[18] Plaintiffs clarified in a letter to the Court that "[w]hile the operative First Amended Complaint . . . asserted claims that class members engaged in pre- and post-shift 'off the clock' work, Plaintiffs abandoned this theory and move to certify only a class of employees who are owed straight time wages unpaid meal breaks. See Attachment A to this Order and Reasons.
[19] R. Doc. 352. The putative class action is limited to employees at the River Place Behavioral Health Hospital.
[20] R. Doc. 270-1 at p. 3.
[21] *Id.* at p. 2.

preempted by the FLSA" and, alternatively, "Plaintiffs have not met a single" element under Rules 23(a) or 23(b)(3).[22] The Court held a hearing on the Plaintiffs' Motion to Certify on April 24, 2024 (the "April 24 Hearing"),[23] at which time the parties offered expert testimony.[24] At the conclusion of the April 24 Hearing, the Court took the parties' arguments on the Motion to Certify under advisement.[25] On September 13, 2024, the Court issued an order and reasons finding Plaintiffs have satisfied the requirements of Rule 23(a) but deferring determination of the remaining portions of the Motion to Certify.[26]

With respect to the Rule 23(a) analysis, the Court found that Plaintiffs met the numerosity requirement because, although only 67 individuals opted into the FLSA collective action, "fear of retaliation and the relatively small value of individual damages artificially underestimates the size of the membership of the opt-in FLSA collective action relative to the size of the putative class."[27] Second, the Court found that Plaintiffs satisfied the commonality requirement because Plaintiffs' conversion and unjust enrichment causes of action depend on common issues of fact and law related to several of Defendants' policies and practices.[28] Third, the Court found Plaintiffs proved typicality because "the named Plaintiffs and proposed class members advance the same legal and remedial theories" with respect to Defendants' failure to compensate employees.[29] Fourth, the Court found Plaintiffs met the adequacy of representation requirement

---

[22] R. Doc. 292 at pp. 1-2.
[23] R. Doc. 319.
[24] *See* R. Doc. 303-1 (Petersen Report); R. Doc. 311-1 (Krock Report).
[25] R. Doc. 319.
[26] R. Doc. 338.
[27] *Id.* at pp. 9-12.
[28] *Id.* at pp. 12-15.
[29] *Id.* at pp. 15-16.

because of Hamm's continued, active participation in this litigation and Plaintiffs' counsel's competency and zealousness.[30]

The Court deferred a decision as to the predominance and superiority requirements of Rule 23(b)(3) because it could not adequately analyze predominance as Plaintiffs had not provided "an adequate trial plan or explanation as to how this case may be tried on a class basis."[31] On superiority, the Court deferred making a decision because, although Plaintiffs demonstrated several relevant factors weighed in their favor, Plaintiffs did not offer "any persuasive argument concerning whether there are likely to be difficulties encountered in the management of this class action."[32] The Plaintiffs were granted leave to file a supplemental memorandum including a detailed trial plan.[33]

## LAW

### I. The Putative Class brings conversion and unjust enrichment causes of action under Louisiana law.

If certified, the putative class will bring Louisiana state law causes of action for unjust enrichment and conversion.[34] Under Louisiana cases, a conversion occurs when:

> (1) possession is acquired in an unauthorized manner; (2) the chattel is removed from one place to another with the intent to exercise control over it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the chattel is altered or destroyed; (6) the chattel is used improperly; or (7) ownership is asserted over the chattel.[35]

---

[30] *Id.* at pp. 17-19.
[31] *Id.* at pp. 19-27.
[32] *Id.* at pp. 24-27.
[33] *Id.* at p. 27.
[34] R. Doc. 270-1 at pp. 2, 30.
[35] *Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 98-0343 (La. 12/1/98), 721 So. 2d 853, 857; *see also id.* at 856 ("The Civil Code itself does not identify causes of action for 'conversion.' However, causes of action for conversion have been inferred from the Codal articles providing that the right of ownership, possession, and enjoyment of movables are protected by actions for the recovery of the movables themselves, actions for restitution of their value, and actions for damages.").

The intent to exercise control requirement is "not conscious wrongdoing, but rather, an intent to exercise a dominion or control over the goods that is inconsistent with another's rights."[36]

Other cases have expressed the elements for conversion a little more succinctly as (1) ownership over the withheld property by the plaintiff; (2) inconsistent possession by the defendant; and (3) the defendant's possession constitutes a "wrongful withholding."[37] Under any of these cases, it does not matter "what subsequent application was made of the converted property, or that defendant derived no benefit from his act."[38] In this case, Plaintiffs' conversion claims are premised on their allegation that "River Place acquire[d] possession of the class [members'] chattels (wages) in an unauthorized manner."[39]

To support a claim for unjust enrichment under Louisiana Civil Code art. 2298,[40] a plaintiff must show five elements: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and the resulting impoverishment; (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) there must be no other remedy at law available.[41] "The Louisiana Supreme Court has observed that '[t]he mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment.'"[42] "This is because [t]he

---

[36] *Tubos de Acero de Mex., S.A. v. Am. Intern. Inv. Corp.*, 292 F.3d 471, 479 (5th Cir. 2002) (citing *La. State Bar Ass'n v. Hinrichs*, 486 So. 2d 116, 121 (La. 1986)).

[37] *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 406-07 (E.D. La. 2016) (citing *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 484 (5th Cir. 1986)).

[38] *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 760 (La. 1985).

[39] R. Doc. 270-1 at pp. 40-41.

[40] LA. CIV. CODE art. 2298.

[41] *See JP Mack Indus. LLC v. Mosaic Fertilizer, LLC*, 970 F. Supp. 2d 516, 520-21 (E.D. La. 2013) (citing *Carriere v. Bank of La.*, 95-3058 (La. 12/13/96), 702 So. 2d 648).

[42] *Id.* at 521 (alteration in original) (citing *Walters v. MedSouth Record Mgmt., LLC*, 10-0351 (La. 6/4/10), 38 So. 3d 241, 242 (La. 2010) (per curiam)).

unjust enrichment remedy is *only* applicable to fill a gap in the law where no express remedy is provided."[43] As the Louisiana Supreme Court explained in *Carriere v. Bank of Louisiana*, "[t]he existence of a 'remedy' which precludes the application of unjust enrichment does not connote the ability to recoup [the] impoverishment by bringing an action . . . [i]t merely connotes the ability to bring the action or seek the remedy."[44] In other words, "[i]t is not the success or failure of the other causes of action, but rather the *existence* of other cause of action, that determines whether unjust enrichment can be applied."[45]

## II.    A Class Action must meet the requirements of Federal Rule of Civil Procedure 23.

The party seeking to certify a class bears the burden of demonstrating the case is appropriate for class treatment.[46] Class certification is within the district court's "sound discretion," and the decision is essentially a factual inquiry.[47] The class certification decision should not reach the merits of a plaintiff's claims.[48] It may be necessary, however, for a district court to look beyond the pleadings to understand the claims,

---

[43] *Perez v. Utility Constructors, Inc.*, 2016 WL 5930877, at *1 (E.D. La. Oct. 12, 2016) (emphasis added) (internal citations and quotations omitted).

[44] 702 So. 2d at 673.

[45] *Zaveri v. Condor Petroleum Corp.*, 27 F. Supp. 3d 695, 702 (W.D. La. 2014) (emphasis added) (citing *Garber v. Badon & Rainer*, 07-1497 (La. App. 3 Cir. 4/2/08), 981 So. 2d 92, 100, *writ denied*, 08-1154 (La. 9/19/08), 992 So. 2d 943). Although the parties do not seek to dismiss either of the Plaintiffs' state law causes of action at this time, it appears the Plaintiffs do not have a right to recover under a theory of unjust enrichment because they seek to recoup "non-overtime wages [] earned for work done during purported off-duty meal breaks and otherwise being effectively 'on call' during such periods," which the Defendants purportedly failed to pay, under a theory of conversion. R. Doc. 270-1 at p. 2. The Court need not address the viability of Plaintiffs' unjust enrichment and conversion causes of action in this Order and Reasons.

[46] *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479 n.4 (5th Cir. 2001); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").

[47] *Bell v. Ascendant Sols., Inc.*, 422 F.3d 307, 311 (5th Cir. 2005); *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 502-03 (5th Cir. 2004).

[48] *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996).

defenses, substantive law, and relevant facts to make a meaningful certification decision.[49] The district court must "conduct a rigorous analysis" under Rule 23 before certifying a class and must make specific findings regarding how the case satisfies or fails to satisfy the requirements of Rule 23.[50]

### A.    Rule 23(a)

To certify a class, the court must first consider whether the prerequisites of Rule 23(a) have been met. Rule 23(a) states:

> **(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all parties is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.[51]

### B.    Rule 23(b)(3)

If all four prerequisites of Rule 23(a) are satisfied, a district court may permit the action to be maintained as a class, so long as the action falls within any one or more of the three categories established by Rule 23(b). In this case, Plaintiffs seeks to certify the class pursuant to Rule 23(b)(3).[52] Rule 23(b)(3) provides in pertinent part:

> **(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition . . . (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular

---

[49] *Id.*
[50] *Id.* at 740.
[51] Fed. R. Civ. P. 23(a).
[52] R. Doc. 270-1 at p. 2.

forum; (D) the difficulties likely to be encountered in management of a class action.[53]

Thus, when read together, Rules 23(a) and 23(b)(3) establish six requirements for claims to be certified as a class action: (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority.[54] The Court has held that Plaintiffs have established the first four requirements.[55] The Court will now address predominance and superiority.

### C.    Predominance under Rule 23(b)(3)

The predominance inquiry depends on "whether the questions of law or fact common to class members predominate over any questions affecting only individual members."[56] Although predominance shares some features with Rule 23(a)'s commonality requirement, "[t]he predominance requirement" "is 'far more demanding'" "because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"[57] The predominance analysis

> entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class. Although this inquiry does not resolve the case on its merits, it requires that the court look beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law." Such an understanding prevents the class from degenerating into a series of individual trials.[58]

---

[53] FED. R. CIV. P. 23(b)(3).

[54] *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 603 (E.D. La. 2006).

[55] R. Doc. 338.

[56] FED. R. CIV. P. 23(b)(3).

[57] *Gene and Gene LLC v. BioPay LLC*, 521 F.3d 318, 326 (5th Cir. 2008) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (5th Cir. 1997)).

[58] *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003) (internal citations omitted) (citing *Castano*, 84 F.3d at 744).

Cases in which there are issues that cannot be tried across the whole class are not necessarily inappropriate for class treatment,[59] but class certification is generally disfavored in such circumstances. The predominance criterion requires that the Court "meaningfully consider how [p]laintiffs' claims would be tried."[60] Absent a "rigorous" analysis, "'it [is] impossible for the court to know whether the common issues would be a 'significant' portion of the individual trials,' much less whether the common issues predominate."[61] The Court must "adequately analyze and balance the common issues against the individualized issues."[62]

The Fifth Circuit has instructed "district courts to consider rigorously how they plan to 'adjudicate common class issues in the first phase and then later adjudicate individualized issues in other phases' of the multi-phase trial before the final decision is made to certify a class."[63] Analysis of a plaintiff's proposed trial plan is key on this point.[64] A plaintiff's "failure to provide a trial plan 'severely undermines [plaintiffs'] contention that common issues predominate.'"[65]

---

[59] *See Madison v. Chalmette Refining, L.L.C.*, 637 F.3d 551, 557 (5th Cir. 2011) ("We do not suggest that class treatment is necessarily inappropriate. As Chalmette Refining acknowledged at oral argument, class treatment on the common issue of liability may indeed be appropriate. But our precedent demands a far more rigorous analysis than the district court conducted.").

[60] *Id.* at 556; *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, No. 11-2777, 2013 WL 6072702, at *8 (E.D. La. Nov. 18, 2013) (quoting *Funeral Consumers Alliance, Inc. v. Service Corp. Intern.*, 695 F.3d 330, 348 (5th Cir. 2012)) ("The predominance inquiry requires courts 'to consider how a trial on the merits would be conducted if a class were certified.'").

[61] *Madison*, 637 F.3d at 557 (citation omitted).

[62] *Id.*

[63] *Chavez v. Plan Benefit Servs., Inc.*, 108 F.4th 297, 316 (5th Cir. 2024) (citing *In re Deepwater Horizon*, 739 F.3d 790, 816 (5th Cir. 2014)), *cert. denied sub nom. Plan Benefit Servs. v. Chavez*, No. 24-426, 2024 WL 5011734 (U.S. Dec. 9, 2024).

[64] *Id.; see also Chalmette Refining*, 637 F.3d at 556-57; *MP Vista, Inc. v. Motiva Enterprises, LLC*, 286 F.R.D. 299, 308, 311-13 (E.D. La. 2012).

[65] *Bauer v. Dean Morris, L.L.P.*, No. 08-5013, 2011 WL 3924963, at *6 (E.D. La. Sept. 7, 2011) (quoting *Altier v. Worley Catastrophe Response, LLC*, No. 11-241, 2011 WL 3205229, at *16 (E.D. La. July 26, 2011)).

### D.    Superiority under Rule 23(b)(3)

Rule 23(b)(3) lists four factors to be considered in determining whether class action procedure is superior:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the difficulties likely to be encountered in the management of a class action.

"Determining whether the superiority requirement is met requires a fact-specific analysis and will vary depending on the circumstances of any given case."[66] Generally, the "most compelling rationale for finding superiority in a class action [is] the existence of a negative value suit."[67] Also, "the absence of other litigation concerning these same claims indicates that the individual class members have little interest in pursuing independent actions."[68]

### E.    Rule 23(c)(4) & (5)

Rule 23(c)(4) & (5) supply tools for class action management. Under Rule 23(c)(4), "an action may be brought or maintained as a class action with respect to particular issues."[69] Rule 23(c)(5) allows a class to "be divided into subclasses that are each treated as a class."[70]

"The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of

---

[66] *Chalmette Refining*, 637 F.3d at 555.
[67] *Castano*, 84 F.3d at 748.
[68] *See In re Reliant Energy ERISA Litig.*, No. 02-2051, 2005 WL 2000707, at *4 (S.D. Tex. Aug. 18, 2005); *Leon v. Diversified Concrete, LLC*, No. 15-6301, 2016 WL 6247674, at *7 (E.D. La. Oct. 26, 2016).
[69] FED. R. CIV. P. 23(c)(4).
[70] *Id.* at (c)(5).

(b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial."[71] In *Chavez v. Plan Benefit Servs., Inc.*, the Fifth Circuit instructed district courts to consider Rules 23(c)(4) and (c)(5) for trial management purposes when common questions of law and fact predominate over the class.[72]

### F.    Standard of review

The Fifth Circuit reviews a district court's order on class certification under the abuse of discretion standard of review.[73] "An abuse of discretion occurs only when all reasonable persons would reject the view of the district court. Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation."[74]

## ANALYSIS

### III.    Plaintiffs satisfy the requirements of Rule 23(b)(3).

The Court already has found that Plaintiffs meet Rule 23(a)'s requirements.[75] Plaintiffs assert the proposed class also meets the requirements of Rule 23(b)(3).[76] "Class certification under Rule 23(b)(3) requires Plaintiffs to demonstrate that 'questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"[77] "From this rule, courts have reduced the analysis to two inquiries: predominance and superiority."[78]

---

[71] *Castano*, 84 F.3d at 745 n.21.
[72] 108 F.4th at 318.
[73] *Cleven v. Mid-Am. Apartment Communities, Inc.*, 20 F.4th 171, 176 (5th Cir. 2021) (citing *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016)).
[74] *Id.* (first quoting *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 638 (5th Cir. 2012); then *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 836 (5th Cir. 2012)).
[75] R. Doc. 338.
[76] R. Doc. 270-1 at p. 2.
[77] *Chavez*, 108 F.4th at 316 (citing FED R. CIV. P. 23(b)(3)).
[78] *Id.* (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626-29 (5th Cir. 1999)).

In the Court's first order[79] on Plaintiffs' Motion to Certify, the Court deferred its determination of these two issues and allowed Plaintiffs an opportunity to file a supplemental brief[80] including a proposed trial plan they argue establishes predominance and superiority under Rule 23(b)(3). The Court also allowed Defendants to file a supplemental brief[81] "specifically addressing issues related to the proposed trial plan,"[82] The parties also filed additional memoranda addressing the proposed class definition.[83]

### A. Common issues of fact and law predominate over issues affecting individual putative class members.

The putative class seeks to bring Louisiana state law causes of action for unjust enrichment and conversion.[84] The Court finds that, if the class is certified, determination of the causes of action will present the following common questions of fact and law: what is the Defendants' policy and practice with respect to requiring MHTs, BHAs, nurses, non-exempt therapists, and intake coordinators to be on call during meal breaks; are there ethical and legal obligations that require MHTs, BHAs, nurses, non-exempt therapists, and intake coordinators to be on call during meal breaks; whether MHTs, BHAs, nurses, non-exempt therapists, and intake coordinators are effectively on call during meal breaks and are entitled to pay for their meal breaks regardless of whether or not their break actually was interrupted;[85] and alternatively, whether MHTs, BHAs, nurses, non-exempt therapists, and intake coordinators are effectively on call and are entitled to be paid for their meal breaks only if the meal break actually was interrupted.[86]

---

[79] R. Doc. 338.
[80] R. Doc. 339
[81] R. Doc. 342.
[82] R. Doc. 338 at p. 27.
[83] R. Doc. 351, R. Doc. 352, R. Doc. 353, and R. Doc. 356.
[84] R. Doc. 270-1 at pp. 2, 30-31.
[85] The River Place policy provides that, "A meal break may be interrupted by management when it is necessary for employees to return to work." R. Doc. 101-5 at p. 3.
[86] R. Doc. 270-1 at p. 35.

The Court now turns to the elements of Plaintiffs' unjust enrichment and conversion causes of action to determine whether these common issues of fact and law predominate over questions affecting only individual class members.

### 1. Unjust Enrichment

Plaintiffs' second amended complaint alleges Defendants are liable for unjust enrichment because Defendants "enriched themselves without cause as a result of refusing to pay the Louisiana Class members all wages to which they are entitled."[87] As mentioned above, a claim for unjust enrichment has five elements: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and the resulting impoverishment; (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) there must be no other remedy at law available.[88]

### a. Enrichment

Plaintiffs allege Defendants enriched themselves without cause by refusing to pay the putative class members wages to which the putative class members are entitled.[89] Defendants' meal break policy is relevant to the Court's predominance analysis. In response to a request for admission, Defendants admitted their meal break policy "applies to its hourly, non-exempt patient care workers."[90] The policy provides that "Employees are encouraged to remain at the facility during meal breaks."[91] The policy further provides

---

[87] R. Doc. 202 at ¶¶ 100-03.
[88] *See JP Mack Indus. LLC*, 970 F. Supp. 2d at 520-21 (citing *Carriere*, 702 So. 2d 648); La. Civ. Code art. 2298.
[89] R. Doc. 202 at ¶ 100.
[90] R. Doc. 101-17 at p. 2; R. Doc. 101-16 at pp. 4-7.
[91] R. Doc. 101-5 at p. 3.

"[e]very effort should be made to provide an unpaid meal break for employees, and they should be paid when that break is unavoidably missed or interrupted," and that

> [i]f it becomes necessary for employees to remain on duty during their meal breaks or if they are called back to work . . . , employees will be paid for the entire meal break if less than 30 minutes or, if possible, another meal break will be scheduled during the shift.[92]

The meal break policy further states "[a] meal break may be interrupted by management when it is necessary for employees to return to work. If a meal break is interrupted, it becomes time worked and will be paid unless another 30 minute meal break is given during the work shift."[93] The policy directs employees to notify a supervisor when they are unable to take a meal break and states that "[i]f the meal break cannot be rescheduled, the supervisor will edit the time record and add the comment 'no meal break.' The employee and their supervisor will sign the authorization form to edit the recorded time."[94]

Defendants' meal break policy applies to all its hourly, non-exempt patient care workers.[95] Whether Defendants were enriched without cause through withholding wages from the putative class members for meal breaks is determinable on a class-wide basis and is a common issue predominating over individualized inquiries.

### b.   Impoverishment

Plaintiffs allege the putative class members who were not paid for meal breaks did not receive the payment they had a right to receive and, as a result, suffered an

---

[92] *Id.* at p. 2.
[93] *Id.* at p. 3.
[94] *Id.*
[95] R. Doc. 101-17 at p. 2; R. Doc. 101-16 at pp. 4-7.

impoverishment.[96] Whether Defendants' alleged conduct impoverished the putative class members is determinable on a class-wide basis and predominates over individual issues.

### c. A connection between the enrichment and the impoverishment

The Plaintiffs allege there is a connection between the alleged enrichment and the impoverishment because Defendants' enrichment through withholding wages that the putative class members are entitled to directly caused the alleged impoverishment.[97] The existence of this connection is determinable on a class-wide basis and predominates over individualized issues.

### d. Absence of "justification" or "cause"

Plaintiffs allege the enrichment was without justification or cause because the putative class members are legally entitled to the withheld wages. The absence of justification or cause for Defendants' withholding of wages may be determined on a class-wide basis and predominates over individualized issues.

### e. No other remedy at law

Whether there is any other remedy at law available for the putative class is a question that may be answered for the entire putative class because the putative class is collectively bringing identical causes of action.[98]

### 2. Conversion

Plaintiffs' second amended complaint alleges Defendants are liable for conversion because Defendants "intentionally interfered with and exercised dominion and control over wages and compensation that the Louisiana Class members had the legal right to

---

[96] R. Doc. 202 at ¶ 101.
[97] *Id.* at ¶¶ 101-02.
[98] R. Doc. 202 at ¶¶ 99-103.

possess as herein alleged."[99] For Plaintiffs to succeed on their conversion claim, they must prove (1) ownership over the wages; (2) Defendants' possession of the wages was inconsistent with the putative class's ownership over the wages; and (3) Defendants' possession is a "wrongful withholding" of the wages.[100]

### a.    The putative class's ownership of the wages

Plaintiffs allege ownership over the wages that Defendants did not pay the putative class for unpaid meal periods.[101] Whether the putative class members own the wages that Defendants did not pay them for work done during unpaid meal periods may be determined on a class-wide basis and predominates over individual issues.

### b.    Defendants' possession of the wages

If Defendants did withhold wages to which the putative class members are entitled under Defendants' meal break policy, then Defendants' possession of these wages, through their withholding of the wages, is inconsistent with the putative class members' ownership. Whether Defendants possessed the unpaid wages in a manner inconsistent with the putative class's ownership may be decided on a class-wide basis and predominates over individual issues.

### c.    Wrongful withholding

The crux of the "wrongful withholding" inquiry is whether the putative class is entitled to wages for unpaid meal periods. Like the other elements of Plaintiffs' conversion claim, this element too may be decided on a class-wide basis and presents a predominant common.[102]

---

[99] *Id.* at ¶¶ 97-98.
[100] *First Am. Bankcard*, 178 F. Supp. 3d at 406-07 (citing *Chrysler Credit Corp., Inc.*, 783 F.2d at 484).
[101] R. Doc. 202 at ¶ 97.
[102] *Id.*

### 3. Individualized issues regarding damages do not predominate over common issues of fact and law.

Defendants argue, including citation to deposition testimony, that the putative class contains individuals who have different jobs and who work in one of five River Place units, have different job duties, and have different experiences with meal break interruptions and missed meal breaks.[103] Although these variables are numerous, each variable impacts only the frequency and duration of each putative class member's meal break interruptions and not whether class members are entitled to pay for their work.

First, even if putative class members have differing experiences with meal break interruptions, this does not affect whether the putative class members are on call and entitled to pay. Second, because these variables relate to how many interruptions each individual experienced and the duration of those interruptions, rather than to whether or not the individual experienced an interruption, these variables are relevant to damages, not to Defendants' liability.

*Chavez* is instructive and counsels that "the necessity for individual damages calculations does not preclude class certification under Rule 23(b)(3)."[104] In *Chavez*, the district court certified a class action under Rule 23(b)(3).[105] The Fifth Circuit upheld the district court's finding that common questions of law or fact predominated over the class.[106] "[A]ll the claims and defenses in the class involved 'concepts of duty, breach, causation, and loss.'"[107] Common questions included whether the defendant "owed a duty

---

[103] R. Doc. 292 at pp. 7-9, 18-26; R. Doc. 342 at pp. 7-8, 11-12, 13-14, 18-19.
[104] 108 F.4th at 317-20.
[105] *Id.* at 316.
[106] *Id.* at 317-20.
[107] *Id.* at 317 (citing *In re Enron Corp. Secs., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 579 (S.D. Tex. 2003)).

to" the plaintiffs and "whether that duty was breached."[108] The district court "observed" that the second question, whether the duty was breached, "was significant and likely dispositive over the entire class's claims."[109] Further, the district court "aptly recognized that trying this case separately would inevitably lead to the redundant production of evidence that is common across the class."[110] Thus, the Fifth Circuit affirmed the district court's finding of predominance.

While the Fifth Circuit in *Chavez* affirmed the district court's decision that the class satisfied Rule 23(b)(3), the action was remanded because "the district court failed to sufficiently address concerns regarding the variability of individualized damages in the suit."[111] The Fifth Circuit explained that "the predominance inquiry can still be satisfied under Rule 23(b)(3) if the proceedings are structured to establish liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members."[112]

In this case, like in *Chavez*, common issues predominate over individualized issues. For each putative class member, the common and predominant issue is whether he or she should be compensated for meal periods. The elements of the putative class's conversion and unjust enrichment causes of action underscore this point. First, the putative class's conversion claim depends on the putative class's ability to prove Defendants acquired possession of the putative class's wages in an unauthorized manner by not paying the putative class their wages. Second, the putative class's unjust enrichment claim depends on the putative class's ability to show that Defendants

---

[108] *Id.*
[109] *Id.*
[110] *Id.*
[111] *Id.* at 318.
[112] *Id.* (internal quotation marks omitted) (quoting *In re Deepwater Horizon*, 739 F.3d at 817).

unjustifiably enriched themselves, to the putative class's impoverishment, by not paying the putative class for their wages. Both Plaintiffs' conversion and unjust enrichment causes of action hinge on the putative class demonstrating Defendants failed to pay the putative class their wages even though compensation was owed. The putative class must collectively show Defendants breached a duty to pay the putative class members' wages. As a result, Defendants' liability for conversion and unjust enrichment is a common issue of law predominating over individualized issues similar to the predominating common issues of duty and breach in *Chavez*.[113]

For the above reasons, common issues of law or fact predominate over those affecting individual putative class members.[114] Each putative class member is challenging Defendants' conduct and treatment of the putative class as a whole. The predominant issue for the putative class is whether Defendants are liable to the putative class for failure to pay the putative class members their wages. Legally, the entire putative class is bringing the same claims for their unpaid labor.

The individual issues in this case relate to the putative class's damages. As in *Chavez*, such individualistic damage claims do not prevent this Court from finding that

---

[113] *Id.* at 317.

[114] *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 298 (5th Cir. 2001) ("Although calculating damages will require some individualized determinations, it appears that virtually every issue prior to damages is a common issue. The plaintiffs' suit boils down to one basic factual claim: the Pilots' Association took a single act that caused every plaintiff to lose seniority. Every aspect of liability in the case involves this common issue."); *Musmeci v. Schwegmann Giant Super Mkts.*, No. 97-2757, 2000 WL 1010254, at *5 (E.D. La. July 20, 2000) (finding the predominance requirement met because "all of the plaintiffs seek essentially the same relief . . . under the same legal theories."), *amended*, 2000 WL 1185510 (E.D. La. Aug. 18, 2000); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 484 (E.D. La. 2020) ("This [predominance] requirement is satisfied because the common questions of liability substantially outweigh any questions pertinent to individual Class Members alone. Further, the relevant evidence necessary to establish plaintiffs' claims is common to all Class Members.").

Plaintiffs have established predominance because "the necessity for individual damages calculations does not preclude class certification under Rule 23(b)(3)."[115]

Defendants argue *McClean v. Health Sys., Inc.*, No. 11-3037, 2012 WL 607217 (W.D. Mo. Feb. 23, 2012) is analogous and shows why certification is improper in this case.[116] In *McClean*, the plaintiffs motioned the court to certify a class of approximately 3,500 hourly, non-exempt employees who worked for defendant Health Systems, Inc., which managed sixty nursing home facilities across the state of Missouri.[117] The plaintiffs intended to bring breach of contract and unjust enrichment causes of action for the defendant's alleged "uniform, system-wide policy that automatically deducts a thirty minute meal period from each employee's pay for shifts of six hours or more regardless of whether the employee actually takes a meal break or works through the meal period."[118]

*McClean*, which is persuasive authority only from the Western District of Missouri, is distinguishable. The key differences between the *McClean* putative class and the putative class in this case are (1) the size of the *McClean* putative class (3,500) versus the putative class in *Hamm* (500 or fewer), and (2) the number of facilities in which the *McClean* putative class members work (65) versus the number of facilities in which the *Hamm* putative class members work (1). In this case, the number of putative class members is approximately one-seventh as large and the putative class members work in one hospital rather than 65.[119] Because the members of the putative class in this case all work in the same facility they are more likely to be subject to similar policies, practices,

---

[115] 108 F.4th at 317-20; *see also Slocum v. Int'l Paper Co.*, No. 16-12563, 2019 WL 2192099, at *4-10 (E.D. La. May 21, 2019).
[116] R. Doc. 342 at pp. 11-12.
[117] 2012 WL 607217, at *1-2.
[118] *Id.*
[119] R. Doc. 338 at p. 10; R. Doc. 270-1 at p. 2.

and procedures. As a result, Plaintiffs' proposed putative class is more concentrated and cohesive than the *McClean* putative class.

Plaintiffs have established that questions of fact and law common to class members predominate over any questions affecting only individual class members.

### B.    A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

As the Court has already stated, several factors weigh in Plaintiffs' favor on superiority. There is no other pending litigation concerning this controversy and, most importantly, there is a high probability that litigation of individual claims of the putative class members would lead to a collection of negative value suits.[120]

Defendants' arguments on superiority focus on manageability concerns.[121] Defendants attack Plaintiffs' plan to rely on representative evidence and statistical data because of each putative class member's "unique factual circumstances."[122] As explained above, the differences between the putative class members will impact the amount of damages rather than liability.[123] Moreover, there is no inherent problem with Plaintiffs' plan to use representative and statistical evidence. In the words of the United States Supreme Court,

> A representative or statistical sample, like all evidence, is a means to establish or defend against liability. Its permissibility turns not on the form a proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action.[124]

---

[120] R. Doc. 338 at p. 26.
[121] R. Doc. 342 at pp. 15-19.
[122] *Id.* at pp. 14-17.
[123] *See supra* at pp. 18-22.
[124] *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454-55 (2016) (citing FED. R. EVID. 401, 403, & 702).

In fact, because Plaintiffs seek to bring a class action in which "Defendants' records will not show time worked or interruptions that occurred during unpaid meal periods,"[125] this is exactly the type of case in which representative evidence and statistical data is needed "to fill an evidentiary gap created by the employer's failure to keep adequate records."[126] If Defendants wish to argue the inaccuracy or unrepresentativeness of Plaintiffs' evidence, they may do so.[127] However, such arguments do not address the relevance of Plaintiffs' evidence or the manageability of Plaintiffs' class action.

Defendants cite *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567 (E.D. La. 2008) for the point that "representative proof cannot be simply extrapolated to a broader and much larger proposed class as Plaintiffs propose."[128] In *Johnson*, which involved the decertification of an FLSA collective action, the trial judge did not definitively rule that representative proof may not be used in a class action. Instead, the trial judge found that "the evidence of opt-in plaintiffs' job experiences presented at trial, in particular the . . . survey results and plaintiffs' testimony, reveal[ed] substantial variations among the opt-in plaintiffs."[129] "[T]he 'representative' testimony [was] not representative of plaintiffs' experience."[130] In this case, the factual record is not developed enough for the Court to make a ruling similar to the ruling in *Johnson*. Unlike in *Johnson*, the Court in this case has not held a bench trial and has not had the opportunity to review Plaintiffs' representative proof.[131] Any potential issues related to the weight the jury may give to Plaintiffs' use of representative proof do not destroy superiority at this juncture.

---

[125] R. Doc. 339 at pp. 13-14.
[126] *Bouaphakeo*, 577 U.S. at 456-57.
[127] *Id.* at 457.
[128] R. Doc. 342 at p. 16.
[129] *Johnson*, 561 F. Supp. 2d at 578.
[130] *Id.* at 579.
[131] *Id.* at 570-71; R. Doc. 303-1.

Next, Defendants look to *Espenscheid v. DirectSat USA, LLC*, No. 09-625, 2011 U.S. Dist. LEXIS 56062 (W.D. Wis. May 23, 2011) to support their contention that "[c]ourts have . . . rejected trial plans that merely . . . bifurcate trial into liability and damages and propose to establish liability through representative proof."[132] Like *Johnson*, *Espenscheid* is distinguishable. In this case, Plaintiffs have retained Jeffrey S. Petersen, Ph.D ("Dr. Petersen") to analyze representative class evidence and perform statistical analysis.[133] The approximately 500 member putative class in this case is smaller than the 2,000 person class in *Espenscheid* and the putative class in this case works or worked in one hospital[134] as compared to the putative class in *Espenscheid*, which included individuals from across the country.[135]

Defendants argue Plaintiffs' trial plan does not explain how Plaintiffs' will establish class-wide liability and that this reveals manageability issues.[136] The Court disagrees. Plaintiffs' trial plan lays out the putative class's claims and the evidence the putative class will use to meet each element of its claims.[137] Plaintiffs argue Defendants' liability "can be proven on a class-wide basis because Defendants' employment policies, practices, and procedures apply uniformly to the class."[138] Plaintiffs argue "the very nature of direct patient care service provides a common and unifying set of employment circumstances" because all putative class members, as "direct-patient care employees," follow "ethical

---

[132] R. Doc. 342 at pp. 17-18.
[133] R. Doc. 339 at p. 15. Dr. Petersen has not yet gathered class evidence or performed statistical analysis. *See* R. Doc. 303-1.
[134] Although the putative class members work in any of River Place's five units, Defendants' Human Resources Director admitted there is no substantive difference in job duties between the respective units. Additional Deposition Excerpts of Doug Hilbun. R. Doc. 287-5 at pp. 35-36.
[135] R. Doc. 270-1 at p. 3 & n.6; 2011 U.S. Dist. LEXIS 56062, at *17-18.
[136] R. Doc. 342 at pp. 17-19.
[137] R. Doc. 339.
[138] *Id.* at pp. 8-9.

codes and policies that obligate them to remain on-duty during their unpaid meal breaks to attend to any patient care needs that might arise during that break time."[139]

Based on the above "common evidence," in the form of survey data, representative testimony, documentary evidence, Defendants' pay/meal break data, and expert testimony, Plaintiffs argue they "can present their claims and defenses in a class trial."[140] Plaintiffs contend the above evidence negates the need for "granular class member testimony."[141] Plaintiffs maintain they may use their common evidence[142] to defeat Defendants' affirmative defenses.[143]

After evaluation of Plaintiffs' bifurcated trial plan, the Court is convinced this case does not present overwhelming manageability concerns. "[T]here are no unique jurisdictional, choice-of-law, or liability issues."[144] Defendants have not shown "that individual class members have an interest sufficient to make individual actions desirable."[145] Although "there is a possibility that some damages calculations would be burdensome," "the economies of class treatment of the numerous common issues weigh in favor of class treatment."[146] In conclusion, Plaintiffs have satisfied Rule 23(b)(3)'s superiority requirement.[147]

---

[139] *Id.* at p. 9.

[140] *Id.*

[141] *Id.* at pp. 17-18.

[142] *Id.* at p. 17.

[143] *Id.* at p. 18.

[144] *Musmeci*, 2000 WL 1010254, at *6 (finding that superiority was met in the absence of unique jurisdiction, choice-of-law, and liability issues); *see also Mullen*, 186 F.3d at 628 (affirming a district court's ruling that superiority was met where the class was not a "million-person class," there were no complex choice-of-law issues, and there was no novel cause of action).

[145] *Bertulli*, 242 F.3d at 299.

[146] *Id.* ("In order to demonstrate that the district court's finding of superiority was an abuse of discretion, defendants must not merely show that individual actions are feasible; they must show that individual class members have an interest sufficient to make individual actions desirable.").

[147] Plaintiffs represent that, if class certification is granted, they will be able to provide an additional trial plan setting forth in more detail how the case can be tried on a class basis. R. Doc. 295 at p. 11.

## IV.    Concerns regarding trial administration are manageable under Rule 23(c)(4) and (5).

Having determined the putative class meets Rule 23(b)(3)'s predominance and superiority requirements, the Court now must address potential manageability concerns. The Court must decide whether a class action is the most efficient means to administer the trial of these issues.[148] *Chavez* instructs district courts to turn to Rule 23(c)(4) and (c)(5) for help when common issues of law and fact predominate but there are potential manageability concerns, such as individualistic damage determinations.[149]

In *Chavez*, the Fifth Circuit affirmed the district court's finding that common issues predominated but remanded based on the district court's failure to "seriously" consider "the administration of the trial."[150] The Fifth Circuit found the district court in *Chavez* abused its discretion "[b]y failing to adequately analyze and determine whether liability and damages should be bifurcated" under Rule 23(c)(4) and (c)(5).[151] For example, the Fifth Circuit held the district court could have used Rule 23(c)(4) to divide "common and individual issues" and try them in "multi-phase trials, under Rule 23(c)(4), which permits district courts to limit class treatment to 'particular issues' and reserve other issues for individual determination."[152] The Fifth Circuit approved the use "of subclasses or bifurcation of issues, pursuant to rule 23(c)(4) or 23(c)(5), as a remedy for manageability obstacles."[153]

In this case, Plaintiffs' supplemental brief in support of their Motion to Certify describes Plaintiffs' proposed trial plan. The Plaintiffs first "propose bifurcating

---

[148] *See Chavez*, 108 F.4th at 318-20.
[149] *Id.* at 318-20.
[150] *Id.* at 318.
[151] *Id.* at 319.
[152] *Id.* at 318 (quoting *In re Deepwater Horizon*, 739 F.3d at 816).
[153] *Id.* at 320 (citing *In re Deepwater Horizon*, 739 F.3d at 817).

proceedings between liability and damages" because a bifurcated trial will eliminate "any need to consider damages evidence if Defendants prevail, and also helps prevent juror confusion allowing the jury to decide narrowly tailored issues."[154]

Defendants argue that Plaintiffs' trial plan makes manageability issues related to a potential trial in this case "abundantly clear."[155] Defendants opine that Plaintiffs' trial plan does not "explain how [Plaintiffs'] can account for the varying meal break experiences."[156] Moreover, Defendants assert Plaintiffs' trial plan does not address how the Court will try Plaintiffs' case as a class action.[157] Although Plaintiffs propose bifurcating the trial, indicate their intent to "rely upon representative testimony to establish liability," and represent they will use survey data to estimate damages, Defendants object to this trial plan as inadequate because it "provides no actual basis for determining class-wide liability or any specific individual's harm."[158] Specifically, Defendants object to Plaintiffs' trial plan on grounds that it estimates liability across the class.[159]

Plaintiffs describe the evidence they will present at trial to prove the putative class members were "'on call' during their meal breaks."[160] This evidence includes "the representative testimony of witnesses regarding both the merits of Plaintiffs' claims and Defendants' defenses, Defendants' common policies procedures [sic] as laid out in Defendants' common overtime and meal break and patient care and neglect documents, expert testimony, and representative evidence and statistical sampling."[161]

---

[154] R. Doc. 339 at pp. 7-8.
[155] R. Doc. 342 at pp. 14-15.
[156] *Id.*
[157] *Id.*
[158] *Id.*
[159] *Id.*
[160] R. Doc. 339 at p. 9.
[161] *Id.* at p. 10.

Plaintiffs summarize the testimony they plan to present during the first phase of trial[162] as representative testimony "from the named Plaintiffs, a representative sample of other class members, Defendants' managers and supervisors, and custodians of records."[163] Plaintiffs state the "testimony will focus on Defendants' expectations that patient-care employees remain available" for work "during their unpaid meal break."[164]

Plaintiffs then list some of the documentary evidence they will offer, such as several of Defendants' written policies.[165] Plaintiffs claim the policies apply to all putative class members.[166]

Next, Plaintiffs discuss the statistical and survey evidence they plan to present at trial.[167] Plaintiffs will attempt to meet their burden of proof through survey and statistical evidence.[168] Plaintiffs collect cases to show they may use survey and statistical evidence to prove liability and damages in a class action.[169]

Although there are numerous common questions, the class members' damage calculations give rise primarily to individual questions that are not capable of class-wide resolution. Accordingly, in line with Plaintiffs' suggestion,[170] the Court concludes the best method for managing this class action is bifurcation of the trial.[171] Accordingly, the Court

---

[162] *Id.* at pp. 10-12.
[163] *Id.*
[164] *Id.*
[165] *Id.* at pp. 12-13.
[166] *Id.*
[167] *Id.* at pp. 13-18.
[168] *Id.* at pp. 13-18.
[169] *Id.* at p. 14.
[170] R. Doc. 339 at pp. 7-8.
[171] *Slocum*, 2019 WL 2192099, at *9-10; *In re Deepwater Horizon*, 739 F.3d at 816-17; *see also Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed.").

will certify an issues class to determine Defendants' liability. Even a wide disparity among class members as to the amount of damages does not preclude class certification.[172]

During phase one of trial, the jury will determine Defendants' liability to the putative class members for conversion and unjust enrichment and will answer the common questions of fact and law identified above.

If the jury finds Defendants liable, the trial will proceed to phase two. During phase two of trial, the jury will assess damages. Proceeding in this way the Court hopes to achieve "economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results,"[173] thereby satisfying Rule 23(b)(3).

## **CONCLUSION**

**IT IS ORDERED** that Plaintiffs' Motion to Certify a class action to pursue causes of action for unjust enrichment and conversion under Louisiana law is **GRANTED**.[174] The class is defined as follows:

> All current and former hourly, non-exempt Mental Health Technicians ("MHTs"), Behavioral Health Associates ("BHAs"), nurses, non-exempt therapists, and intake coordinators employed by any Defendants at the River Place Behavioral Health Hospital at any time until the date of the Court's order granting certification.

**IT IS FURTHER ORDERED** that this trial be bifurcated and that the issues of liability and damages will be tried separately.

**IT IS FURTHER ORDERED** that the firm of Schneider Wallace Cottrell Kim LLP is named class counsel.[175]

---

[172] *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003) (citing *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791, 798 (10th Cir. 1970)).
[173] FED. R. CIV. P. 23(b)(3) advisory committee's notes.
[174] R. Doc. 270.
[175] The Court found the Plaintiffs had met their burden of demonstrating the firm is sufficiently competent to zealously litigate the claims. R. Doc. 338, p. 19.

**IT IS FURTHER ORDERED**, to fulfill the requirements of Rule 23(c)(2)(b), that the parties meet and jointly draft and submit to the Court a proposed notice of class certification **no later than September 15, 2025**.

**New Orleans, Louisiana, this 2nd day of September, 2025.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**